FILED

STATE OF NORTH CAROLINA ᴎᴀʀ 17 ⊃ 2· OḬN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG᠁ᴇᴀᴮᴜᴿᴳ 20 ᴜᴮᴳ     23 CVS ___4182___

BY_____

| HUBERT SIMPSON, on behalf of himself and all other persons similarly situated, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) | **VERIFIED COMPLAINT** |
| v. | ) | **(JURY TRIAL REQUESTED)** |
| | ) | |
| CAROTHERS HOLDING COMPANY, LLC, doing business as York Memorial Cemetery, a/k/a York Memorial Park, STONEMOR GP, LLC, STONEMOR, NORTH CAROLINA, LLC STONEMOR NORTH CAROLINA FUNERAL SERVICES, INC., STONEMOR, NORTH CAROLINA SUBSIDUARY. LLC, STONEMOR PARTNERS, LP, Defendants. | ) ) ) ) ) ) ) ) ) ) ) | |

Plaintiff, complaining of Defendants, alleges and say that the Plaintiff is a natural person over the age of eighteen years and brings this action on behalf of himself and all other persons similarly situated.

## INTRODUCTION

1. As a matter of common law and public policy, North Carolina has held in great reverence the resting places of the dead as hallowed ground. *Mills v. Cemetery Park Corp.*, 242 N.C. 20 (1955). Our Courts have long held that the preservation of the sanctity of grave sites is a proper service of the police power of the State of North Carolina. *Shields v. Harris*, 190 N.C. 520, 527, 130 S.E. 189, 192 (1925).

1

2. The Plaintiffs is the heir at law and intended beneficiary of specific family members buried at Defendant, York Cemetery, commonly referred to as "York" in the Charlotte-Mecklenburg Community, and all other individuals similarly situated.

3. Each of the Plaintiff's decedents entered into a contract with the Defendants for the purpose of establishing the final burial site of the individual decedents of the Plaintiff, so as to insure the permanent legacy and history for their respective families.

4. The contracts between the decedents of the Plaintiff and Defendants, are valid and enforceable.

5. In this regard, the contracts entered into between the decedents of the Plaintiff and York Cemetery were for the direct and intentional benefit of the Plaintiff, to specifically establish a final resting place to guarantee and assure the family legacy of the Plaintiff and his family.

6. The Defendants, are engaged in the business of providing funeral services to the predominately African American community. Since its founding, upon information and belief, York has been associated with the burial of more than 28,000 persons. The acts of each Defendant are imputed to the acts of the other Defendants under the Law of Agency.

7. The consuming public who are the primary purchasers of cemetery plots at York Cemetery are members of the African American community in Mecklenburg County and beyond.

8. The demographics of greater Mecklenburg County is one third African American.

9. Mostly all African Americans within Mecklenburg County have a personal affiliation or association with York Cemetery because of the vastness and numerosity of African Americans from this community who are buried there.

2

## CLASS OF PERSONS REPRESENTED BY PLAINTIFFS

10. The Plaintiffs bring this action on behalf of himself, and all other person similarly situated and represent the categories of class of persons who are identified as:

(A). All persons who purchased internment rights or services at York Memorial Cemetery from January 1, 1969, to the present; and/or;

(B). All persons who entered into Agreements authorizing their family members or other relations to be interred at York Memorial Cemetery from January 1, 1969, to the present; and/or;

(C). The authorized representative(s) of deceased persons who would have otherwise been a member of those persons set forth in Category (A) or Category (B) above.

(D) The number of persons constituting this class are so numerous as to make it impracticable to bring them all before the court, the named Plaintiff, will insure the adequate representation of all persons similarly situated.

11. This class of persons represents and affect a substantial population of the African American community in Charlotte-Mecklenburg County, North Carolina. Such class of persons include the gamut of members of the African American community ranging from prominent historical Civil Rights leaders of the 1960's, to business leaders, as well as educators, cafeteria workers, domestic workers and even infants

12. The misdeeds of the Defendants are evidenced by their systematic practices as set forth below are further exacerbated because it has drastically deprived members of this Class from

3

the necessary common law rights of the preservation of grave
sites and their locations for the benefit of loved ones.

13. These acts are exacerbated because the African
American community historically lacks the ability to determine
the origin of their roots in America, including, Charlotte
Mecklenburg County. The proper designation of burial sites in
the African American community is of utmost significance to
the historical legacy and posterity of this Class of persons.

14. The acts of these Defendants has resulted in the eternal loss of opportunity for this Class
to know and feel confident that the final resting place of their beloveds are indeed the
final resting places of their loved ones.

15. These acts of Defendants further constitute the loss of the property rights of this Class to
reclaim heritage after their loved ones have endured the sorrows and struggles of this
world.

16. Further, to many Members of this Class, the purchase and ownership of a burial site, is
the only real property in fee simple, that Members of this Class have ever owned or ever
will own.

17. The Plaintiff and all other persons similarly situated who comprise this Class relied upon
and believed that the public information widely disseminated by the Defendants was
truthful, honest, fair, and ethical. This belief was the sole reason in making their decision
to purchase lots at Defendant's cemetery.

18. The Plaintiff, on behalf of himself and all others similarly situated as the Plaintiff,
possess information that the Defendants during the entire time of its existence and up to
the present have failed to disclose and have intentionally concealed thousands of material

4

and substantial facts that relate to all grave sites at York Memorial Cemetery, including, but not limited to:

(a) desecrating of graves by conducting exploratory digging of graves with and without backhoes in efforts to identify persons buried in grave sites; (b) by failing to obtain authorization or consent of the next of kin of members of this Class to conduct exploratory digs with and without backhoes in efforts to locate and identify persons buried in grave sites in violation of North Carolina General Statute § 14-149, et seq.; (c) the cutting of patches of ground no less than three inches by three inches and at least three feet deep from grave sites; (d) failing to obtain authorization or consent of members of this Class to remove patches of earth of no less in size of 3 inches by 3 inches by three feet deep in violation of North Carolina General Statute § 14-149, et seq.; (e) conducting sonograms to locate the buried resulting in the discovery and revelation of graves encroaching other graves; (f) failing to inform members of this Class that sonograms reveal that grave sites have been encroached upon by other grave sites; (g) placing markers on the wrong gravesite of the persons identified on the markers because Defendant does not have accurate records to reflect where bodies are buried; (h) failing to inform members of this Class that markers are placed on the wrong grave sites; (i) failing to inform members of this Class that bodies will not be buried according to the burial sites purchased and identified in the contracts of sale; (j) failing to inform members of this Class that the location of the burial sites of their deceased cannot be identified; (k) by digging up bones of deceased persons while digging other graves for burial because bodies have been previously buried in the wrong burial plots; (l) failing to inform the families of

5

the bones which were dug up as to what has taken place; (m). puncturing vaults numerous times while probing to identify persons buried; (n). failing to notify members of Class that vaults of their loved ones have been punctured; (o). double selling grave sites and failing to maintain records of the double sales; (p). failing to inform members of this Class of the likelihood that plots purchased may be or had been double sold; (q). failing to maintain records of deeds which correlate with purchased grave sites; (r). failing to inform members of this Class that records of deeds have not been maintained to correlate the purchased grave sites; (s). locating buried bodies which cannot be identified because of improper record keeping; (t). failing to inform members of this Class that burials cannot be identified at the Cemetery because of poor record keeping; (u). burying babies on top of each other over a period of years, to the extent that an area of the cemetery is commonly referred to among workers as "the hill of babies"; (v). failing to disclose to family members searching for the grave site location of their deceased babies, that babies were buried on top of each other in an area commonly referred to as "the hill of babies"; (w). failing to disclose to family members searching for the location of their deceased babies that the location of the deceased baby could never be determined; (x). double selling tandem sites;(y). failing to disclose to members of this Class that tandem grave sites had been double sold; (z) failing to disclose to members of this Class that members of the same family would not be placed in tandem burial sites next to each other because tandem sites had been double sold; (aa). discovering grave sites with burials already having taken place while undergoing the process to prepare for the burial of the respective owners of the particular grave sites; (bb). failing to inform this Class of persons that grave

6

sites possessed the burials of bodies which are routinely discovered while undergoing the process to prepare for the burial of respective owners of the particular grave sites; (cc). burying persons in grave sites different from the contracted plots although this practice created persons not being buried next to their loved ones as contracted; (dd). failing to inform Members of this Class that persons were not buried next to their loved ones as the original contracts allowed.

19. Upon information and belief, Defendant, York Memorial Cemetery, has sold more than 40,000 burial plots.

## NAMED PLAINTIFF

The representative member of this Class is as follows:

20.    Plaintiff, Hubert Simpson, is a citizen and resident of Charlotte, North Carolina.

21.    Said Plaintiff has a multiplicity of family members buried at Defendant Cemetery which include his mother, aunts, uncles, cousins and great aunts and uncles.

22.    Throughout the burial of all of Plaintiff's family members, Defendants, jointly and severally, represented that each member of the family would be treated with dignity, respect and the utmost care and most importantly, that the sanctity of their burial plots would be protected.

23.    The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of his deceased family members at Defendant Cemetery.

24.    At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

25.    None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

7

26.     The Plaintiff does not want his mother and other family members to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

## DEFENDANTS

27.     The Defendants holds themselves out as a member of "Dignity Memorial Funeral Home, Cemetery Cremation" and deliberately holds themselves out with the promise that the members of the consuming public will be treated honorably, respectfully and with dignity.

28. Former employees of the Defendants represent that the Defendants have engaged in systemic and prolonged acts to the harm of the persons who constitute this Class.

29. Former employees also jointly and severally represent that the resulting cumulative effect of the wrongful acts by the Defendants from January 1, 1969, to the present impact every grave site as there do not exist objective methods or records for the Defendants to positively confirm the exact burials according to their contractual agreements of those buried at York Memorial Cemetery.

30 Former employees also have personal knowledge and represent that these Defendants have intentionally and deliberately concealed from this Class that Defendants have engaged in the acts as set forth in this Complaint. These willful and orchestrated acts of concealment, which materially affect the rights of Members of this Class are continuous in effect, up to and including the date of this filing.

31. Former employees represent to this Class that the Defendants skillfully and artfully coordinated the acts of further concealment through themselves, jointly and severally, to the extent that virtually all members of this Class are unaware of these wrongful acts.

8

32. Former employees additionally represent that the Defendants directed employees including themselves, to intentionally and directly conceal from families the existence of the wrongful acts of the Defendants, to this class of persons, which are complained of in this Complaint, as a condition of continued employment. These former employees represent that they did not contest the Defendants instructions to conceal the acts complained of in this Complaint in order to keep their jobs.

33. The acts of the Defendants are in total disrespect of the sanctity of the deceased and the love, affection and honor of the members of this Class throughout the Charlotte-Mecklenburg Community and beyond.

34. The acts, which the Defendants have engaged in have caused irreparable and immeasurable harm to the defined class as stated throughout this Complaint and include but are not limited to the following:

(a). Desecrating graves by conducting exploratory digs of graves (including backhoes) in efforts to locate buried bodies in violation of North Carolina General Statute § 14-149, et seq.;

(b). Failing to obtain authorization or consent of the next of kin of members of this Class of the buried for the use of backhoes on grave sites in violation of North Carolina General Statute § 14-149, et seq.;

(c). Cutting out patches of earth covering graves in sizes no less than 3 inches by 3 inches and three feet deep in violation of North Carolina General Statute § 14-149, et seq.;

(d). Failing to obtain authorization or consent from members of this class to remove patches of earth of no less in size of 3 inches by 3 inches and three feet deep in violation of North Carolina General Statute 14-149, et seq.;

9

(e). Conducting sonograms to locate the buried resulting in the discovery and revelation of graves encroaching other graves;

(f). Failing to inform members of this Class that sonograms reveal that grave sites have been encroached upon by other grave sites;

(g)    Placing markers on the wrong gravesite of the persons identified on the markers because Defendants do not have accurate records to reflect where bodies are buried;

(h)    Failing to inform members of this Class that markers are placed on the wrong grave sites;

(i). Failing to inform members of this Class that bodies will not be buried according to the burial sites purchased and identified in the contracts of sale;

(j). Failing to inform members of this Class that the location of the burial sites of their deceased cannot be identified;

(k). By discovering bones of deceased persons while digging graves for burial because of bodies been previously buried in the wrong burial plot;

(l). Failing to inform the decedents families of the bones which were dug up;

(m). Puncturing vaults numerous times while probing to identify persons buried;

(n) Failing to notify members of this Class that vaults have been punctured;

(o). Double selling grave sites and failing to maintain records of the double sales;

(p). Failing to inform members of this Class of the likelihood that plots purchased may be or had been double sold;

(q). Failing to maintain records of deeds which correlate with purchased grave sites;

(r). Failing to inform members of this Class that records of deeds have not been maintained to correlate with the purchased grave sites;

10

(s). Locating buried bodies which cannot be identified because of improper record keeping;

(t). Failing to inform members of this Class that burial sites cannot be properly identified at the Cemetery;

(u). Burying babies on top of each other over a period of years, to the extent that the area was commonly referred to among workers as "the hill of babies";

(v). Failing to disclose to family members searching for the gravesite location of their deceased babies, that babies were buried on top of each other in an area commonly referred to as "the hill of babies";

(w). Failing to disclose to family members searching for the location of their deceased babies that the location of the deceased children could never be determined;

(x). Double selling tandem grave sites;

(y). Failing to disclose to members of this Class that tandem grave sites had been double sold;

(z) Failing to disclose to members of this Class that members of the same family would not be placed in tandem grave sites next to each other because tandem grave sites had been double sold;

(aa). Discovering grave sites with bodies already having taken place while undergoing the process to prepare for the burial of the respective owners of that particular gravesite;

(bb). Failing to inform this Class that the likelihood of bodies being routinely discovered while undergoing the process to preparing for the burial of respective owners of the particular grave sites;

(cc). Burying persons in grave sites different from the contracted plots although this practice created persons not being buried next to their loved ones as contracted;

11

(dd). Failing to inform Members of this Class that persons were not buried next to their loved ones as the original contracts provided;

(ee). Failing to insure that Lot Books match physical locations of grave sites;

(ff). The failure to inform any members of this Class that Lot Books do not match physical grave sites;

(gg). Unilaterally, changing contracts to different lots because the lots contracted for have been previously sold;

(hh). The failure to inform any members of this Class that lots sold in contracts have to be changed because they have been previously sold;

(ii). The owners of lots in Lot Books do not match persons who are actually buried in the physical graves;

(jj). The failure to inform any members of this Class that Lot Books do not match persons who are buried in the physical graves;

(kk). Depiction of lots in Lot Books where the lots do not exist on the Map Books;

(ll). The failure to inform this class of depiction of lots in lot books where the lots do not exist on the Map Books;

(mm). Map books depict lots which cannot be physically located;

(nn). Failure to inform members of this class that markers located on grave sites which are empty;

(oo). The failure to inform member of this class to maintain records of burials in the Lot Books;

(pp). Exploratory digs to try to locate the names of the deceased by looking for the nameplates on vaults;

12

(qq). Failure to obtain any authorization from any next of kin for any exploratory digging of graves in efforts to identify nameplates on vaults;

(rr). Failure to notify members of this class that exploratory digs where occurring in an effort to identify nameplates on vaults;

(ss). Failure to maintain contracts for the sales of burial plots;

(tt). The ongoing discovery of markers which do not reflect the proper person buried therein;

(uu). Failure to notify members of this Class that markers were discovered which did not reflect the proper person buried therein;

(vv). Overlapping of burial plots;

(ww). Failure to notify members of this Class that some burial plots overlapped;

(xx). Encroachment of burial sites;

(yy). Failure to notify members of this Class that some burial sites had been encroached upon;

(zz). Contracts which fail to correlate with the subject burial plots;

(aaa). Failure to notify members of this Class that there existed Contracts which did not correlate with the subject burial plots;

(bbb). Lost Deeds which are too numerous to calculate;

(ccc). Failure to notify members of this Class of the fact that there were numerous lost Deeds, in a number too large to count;

(ddd). Map Books which reflect burial lots which do not exist;

(eee). Failure to notify members of this Class of the existence of Map Books which

13

reflect lots which do not exist;

(fff). Lot Books which establish more lots than the actual number of lots which exist;

(ggg). Failure to notify members of this Class of the existence of Lot Books which

establish more lots than the actual number of lots which exist;

(hhh). Markers which encroach other grave sites;

(iii). Failure to notify members of this Class that Markers encroached upon other grave

sites;

(jjj). The impossibility to calculate the numerous listings of John Does on Interment

cards because of the lack of records to identify the names of persons buried in

grave-sites;

(kkk). Lack of deeds to correlate with burial spaces;

(lll). Failure to notify members of this Class of the lack of deeds to correlate with burial

sites;

(mmm). The impossibility to calculate the numerous desecration of vaults because

of water damage during exploratory digs;

(nnn). The failure to inform members of any families of the desecration of the vaults of

their loved ones because of the exploratory digs;

(ooo). The finding of vaults during exploratory digs where no record of burial exists;

(ppp). The failure to inform any members of this class of the finding of vaults during

exploratory digs;

(qqq). The determination that the burial of persons at wrong grave sites is not a priority;

14

(rrr). The failure to inform any members of this class that the determination of persons at the wrong grave sites are not a priority;

(sss). The determination to not notify members of this Class that the burial locations of their Decedents could not be found so as not to cause any trouble for Defendant;

(ttt). The failure to notify members of this Class that the burial locations of their Decedents could not be found;

(uuu). Failure to maintain records to establish the transfer of burial sites;

(vvv). The failure to notify members of this Class that the Defendant did not maintain records to establish the transfer of burial sites;

(www). The inability to identify the location of burial sites to disinter deceased persons, if necessary;

(xxx). The failure to notify members of this Class that the Defendant did not have the ability to identify the location of burial sites to disinter deceased persons, if necessary.

76. Former employees of the Defendants have represented to the Plaintiff that the acts complained of above have affected the efficacy of the burial of persons identified as the Class.

77. Despite having full knowledge of and intentionally orchestrating the concealment of its fraudulent and reprehensible business practices, the Defendants continues to hold themselves out to the public as trustworthy and competent and efficient in maintaining the sanctity of the deceased. The false and fraudulent representations in soliciting business by the Defendants include but are not limited to the following statements to the consuming public:

15

a. That choosing and purchasing burial plots from Defendants will ensure that families will be buried together;

b. That choosing and purchasing burial plots from Defendants will give peace of mind in knowing that your family will always be together for generations to come;

c. That choosing and purchasing burial plots from Defendants will ensure your legacy and family heritage plans;

d. That choosing and purchasing burial plots from Defendants will ensure that financial arrangements have been made to cover your burial costs;

e. That choosing and purchasing burial plots from Defendants ensures that arrangements and preparations have been made for end of life services;

f. That choosing and purchasing burial plots from Defendants ensures that final services are planned so you are the author of your story;

g. That choosing and purchasing burial plots from Defendants ensures that you have planned ahead if a loved one at the time of the painful time of loss of loved ones;

h. That choosing and purchasing burial plots from Defendants avoids woes about what loved ones wanted;

i. That choosing and purchasing burial plots from Defendants ensures that your final wishes are fulfilled;

j. That choosing and purchasing burial plots from Defendants gives you peace of mind that that this has been taken care of ahead of time;

k. That choosing and purchasing burial plots from Defendants ensures that wishes will be followed;

16

l. That choosing and purchasing burial plots from Defendants provides instructions on how you will be memorialized;

m. That choosing and purchasing burial plots from Defendants provides that your family memory will remain alive;

n. That choosing and purchasing burial plots from Defendants ensures that your preferences will be accommodated.

o. That choosing and purchasing burial plots from Defendants will keep your family together through the generations.

78. The former employees of Defendants have also represented that Defendants have engaged and continue to engage in orchestrated corporate practices and policies to fraudulently and intentionally conceal and cover up these practices in the following ways:

(a). By mandating that all employees not admit to any member of the Class that buried bodies could not be located;

(b). By never notifying any member of the Class that any grave sites had been disturbed by the use of a backhoe;

(c). By never seeking authorization from any member of the Class to use a backhoe on their loved ones' grave site;

(d). By never obtaining authorization from any member of this Class to cut out patches of grave sites;

(e). By telling members of this Class that continuous research was being conducted when inquiries regarding burial deeds were made although Defendant knew that no such efforts were taking place;

17

(f). By telling members of this Class that continuous research was being conducted to locate Contracts for the purchase of burial plots, although Defendant knew that no such research efforts were taking place;

(g). By telling members of this Class that continuous research was being conducted to locate grave sites although Defendant knew that no such efforts were taking place;

(h) . By failing to advise members of this Class that research to locate burial deeds are futile;

(i). By failing to advise members of this Class that research to locate contracts are futile;

(j). By failing to advise members of this Class that research to locate grave sites are futile;

(k). By failing to advise members of this Class that burial deeds cannot be located by Defendant;

(l). By failing to advise members of this Class that contracts cannot be located by Defendant;

(m). By establishing policies and procedures to not return calls to members of this Class when inquiries were made regarding discrepancies relating to burials;

(n). By creating an atmosphere that job security of employees is based upon employees failing to communicate the truth to members of this Class about any of the situations as set forth above;

(o). By forbidding employees to advise any members of this Class that grave markers of their loved ones are placed on empty graves;

18

(p). By forbidding employees to advise any members of this Class that grave markers of their loved ones are not placed where the bodies of their loved ones are buried;

(q). By directing employees to only be concerned with the discrepancies of Defendant on an individual basis with members of this Class and not as systemic and vast irregularities which affect this entire Class;

(r). By mandating employees to consistently "put off" answering inquiries by members of this Class regarding burial sites of loved ones in hopes that the statute of limitations to seek legal redress will run on individual members of this Class.

79. The former employees of the Defendants represent to the Plaintiffs that the acts complained of throughout this Complaint have caused the accuracy of all grave sites of York to be compromised.


## CAUSES OF ACTION

### COUNT I-UNFAIR AND DECEPTIVE TRADE PRACTICES

Paragraphs 1-79 above are realleged and incorporated into this Count by reference.

80. The Defendants have affirmatively represented to members in this Class, jointly and severally, as well to the general consuming population the following:

   a. The affirmative promise that choosing and purchasing burial plots will ensure that families will be buried together;

19

b. The affirmative promise that choosing and purchasing burial plots will give peace of mind in knowing that your family will always be together for generations to come;

c. The affirmative promise that choosing and purchasing burial plots will ensure your legacy and family heritage plans;

d. The affirmative promise that choosing and purchasing burial plots will ensure that financial arrangements have been made to cover your burial costs;

e. The affirmative promise that choosing and purchasing burial plots ensures that arrangements and preparations have been made for end of life services;

f. The affirmative promise that choosing and purchasing burial plots ensures that final services are planned so you are the author of your story;

g. The affirmative promise that choosing and purchasing burial plots ensures that you have planned ahead for a loved one at the of the painful time of loss of loved ones;

h. The affirmative promise that choosing and purchasing burial plots avoids woes about what loved ones wanted;

i. The affirmative promise that choosing and purchasing burial plots ensures that your final wishes are fulfilled;

j. The affirmative promise that choosing and purchasing burial plots gives you peace of mind that that this has been taken care of ahead of time;

k. The affirmative promise that choosing and purchasing burial plots ensures that wishes will be followed;

l. The affirmative promise that choosing and purchasing burial plots provides instructions on how you will be memorialized;

     m. The affirmative promise that choosing and purchasing burial plots provides that
        your family memory will remain alive;

     n. ¹The affirmative promise that choosing and purchasing burial plots ensures that
        your preferences will be accommodated.

81. Former employees of the Defendants represent that by and through these specific
directives of the Defendants, the Defendants in the specific and respective time periods in
which they were employed, have and continue to engage in numerous and various acts of
intentionally and deliberately deceiving this Class in all ways and manners as set forth
above.

82. Former employees represent that the concealment of material facts, directed by
Defendants as set out above were made to intentionally deceive members of this Class.

83. Former employees represent that the false representations of Defendants as set forth above
were made with the intent, purpose and desire to deceive.

84. Said representations were made in commerce and do affect commerce.

85. Said public dissemination of materials as well as representations made to Plaintiff and the
general consuming public are the proximate cause of the injuries to the Plaintiff as well as
the class of persons which the Plaintiff represents.

86. This Class has in fact, by the actions of the Defendants, been deceived as this Class has
reasonably relied upon the truthfulness of the representations and the good faith of the
Defendant in making said representations.

87. This Class has suffered injuries including the loss of the ability to maintain peace and
contentment as well as the sanctity of their deceased loved ones which totally and
completely frustrates the purpose of their relationship with York Cemetery.

88. This Class has suffered actual, special and punitive damages, jointly and severally, in

excess of $25,000.00 under this Count.

## COUNT II - BREACH OF CONTRACT

89. Paragraphs 1 through 89 above are realleged and incorporated into this Count by reference.

90. The named Plaintiffs became aware of the breaches of contracts enumerated above within three years of the filing of this Complaint. *Chisum v. Campagna*, 2021 - NCSC-7 No. 406A19)

91. The members of this Class individually or as third party beneficiaries have a valid contractual relationship with Defendants. The consideration by the members of this Class was the payment of money to the Defendants for the purpose to be buried according to the agreement between the parties.

92. All contracts contain the same language regarding specific burial plots, locations of burial plots, and the responsibilities of the Defendant to bury persons in the plots purchased on behalf of members of this Class.

93. Upon the filing of this lawsuit, the other members of this Class will receive knowledge of the Breach of Contracts by Defendants, as enumerated above.

94. The Defendants breached its contractual responsibilities by the actions of the Defendant as set forth above.

95. This Class have suffered actual, special and punitive damages, jointly and severally, in excess of $25,000.00 under this Count, jointly and severally under this Count.

## COUNT III- NEGLIGENCE

22

96. Paragraphs 1 through 95 above are realleged and incorporated into this Count by reference.

97. The Defendants owed and presently owe a duty to this Class to maintain the Common Law right to preserve the sanctity and sepulcher of grave sites, as it is the Public Policy of North Carolina to protect the burying places of the dead.

98. The Defendants have breached these duties as set forth above.

99. The proximate cause of injuries to this Class is due to the failure to meet the duties of the Common Law of North Carolina as set forth in Common Law *Mills v. Cemetery Park Corp.*, 242 N.C. 2 (1955).

100. The Defendants are liable to this Class for its breach of this Common Law duty. This Class is entitled to actual, special and punitive damages in an amount in excess of $25, 000.00, jointly and severally.

## COUNT IV-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

101. Paragraphs 1 through 100 above are realleged and incorporated into this Count by reference.

102. The former employees represent that Defendants engaged negligently in conduct as set forth above.

103. The Defendants knew or should have known that such conduct was reasonably foreseeable and would cause this Class to suffer severe emotional distress and mental anguish.

104. The conduct by these Defendants have caused harm to this Class as well as the Charlotte community and beyond, to suffer severe emotional distress and mental anguish;

23

105. This Class has suffered actual, special and punitive damages in excess of $25, 000.00, jointly and severally under this Count.

## COUNT V- TRESPASS TO REAL PROPERTY

106. Paragraphs 1 through 105 above are realleged and incorporated into this Count by reference.

107. Members of this Class have purchased in fee simple or are the third-party beneficiaries to the purchase to maintain title and possess title to burial sites purchased in fee simple at York Memorial Cemetery with the right to actual possession at the time of their authorized burials.

108. The Defendants have purposefully, wantonly, intentionally, deliberately, recklessly and maliciously engaged in the unlawful entry upon the burial sites owned by this Class under the circumstances as set forth in the above Paragraphs.

109. The unauthorized entry and disturbance into the burial sites of persons by this Defendant constitutes trespass upon the real property owned by members of this Class as a matter of law.

110. The Plaintiffs have suffered actual, special and punitive damages, in excess of $25,000.00 under this Count, jointly and severally under this Count.

## COUNT VI-BREACH OF THIRD PARTY BENEFICIARY TO CONTRACT

111. Paragraphs 1 through 110 above are realleged and incorporated into this Count by reference.

24

112. There is the existence of valid contracts between each of the respective Plaintiffs, individually, and the Defendants.

113. Each of the respective contracts is valid and enforceable.

114. Each of the respective contracts was entered into by the decedents of each of the Plaintiffs for the direct benefit of each of the respective Plaintiffs.

115. The valid contracts between Plaintiffs decedents and Defendants were made to ensure the final resting place and historical legacies of the persons buried for the benefit of their next of kin.

116. The Plaintiffs are the intended and direct third party beneficiaries of these valid agreements.

117. The Defendants have breached its agreements with Plaintiffs as set forth in the Paragraphs above.

118. The Plaintiffs have suffered actual, special and punitive damages, in excess of $25,000.00 under this Count, jointly and severally under this Count.

## COUNT VII-INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

119. Paragraphs 1 through 119 above are realleged and incorporated into this Count by reference.

120. The Defendants have intentionally and willfully conspired to commit the acts complained of in the above Paragraphs and are continuously engaging in extreme and outrageous conduct which exceeds all bounds of human decency expected to be tolerated by a decent society.

25

121.     The sentiment of all civilized peoples, since the earliest Biblical times, has held in great reverence the resting places of the dead as hallowed ground. (Mills, *supra)*

122.     The Defendants conduct has been and continues to be reckless and indifferent to the harm, detriment and physical loss to the Plaintiffs.

123.     The Defendants knew and should have known the likelihood that their acts, jointly and severally, would cause severe emotional distress.

    124.    The conduct of Defendants has and will continue to cause permanent and severe emotional distress to this Class.

125.     This Class has suffered actual, special and punitive damages, in excess of $25,000.00 under this Count, jointly and severally under this Count.

## COUNT VIII-RACKETEER INFLUENCE and CORRUPT ORGANIZATIONS ACT (N.C.G.S. CHAPTER 75-D1)

126.     Paragraphs 1 through 126 above are realleged and incorporated into this Count by reference.

127.     Defendants did conspire with one another to engage in a pattern of racketeering activity to maintain control of property of Plaintiff and Plaintiff's' decedents, and all other persons similarly situated, by covering up the acts complained of above and below.

26

128. Defendants coerced together a pattern of racketeering activity to commit acts which could be chargeable by indictment for violations of N.C.G.S. 14-7.20, 14-100, 14-148, 14-149, and the Common Law of the State of North Carolina.

129. The patterns of racketeering activities by Defendants has occurred and continues through the date of the filing of this action. Defendants have and continue to cover up on a regular basis the wrongful acts complained of above, through the date of the filing of this action.

130. On a regular basis Defendants mandates that its employees fail to disclose the wrongful acts described above by making employees adhere to the following practices of terms of employment;

    (a)    To not disclose to any member of this class the existence of the wrongful and illegal acts complained of above;

    (b)    To not disclose the acts complained of above by the Plaintiffs to any third party;

    (c)    To continue to make false assurances to satisfy members of this Class in hopes that Statutes of Limitations will expire. Before legal action is pursued

131. These acts constitute unlawful organized activity.

132. The Defendants have forbidden its employees to disclose any of these unlawful and wrongful acts complained of above for pecuniary gain.

133. All acts of the Defendants are an interrelated, pattern of organized unlawful activity, with the purpose and effect to derive pecuniary gain.

134. Further, Defendants made these false statements to the members of this class with the

27

intent to either discourage Plaintiff's attempts to locate the remains of their decedents to such an extent that Plaintiff forego further inquiries, or to forestall Plaintiff's' inquiries with the hopes that the Plaintiff will abate such inquires.

135. That Defendants have continuously employed such dilatory and fraudulent actions on a continuous basis, year after year, and continue to do so as of the time of the filing of this action.

136. That as a result of such conspiracy. Plaintiff suffered injury to their property interests and infliction of emotional distress.

137. That as a result of such conspiracy, Defendants have obtained pecuniary gain as a result of the racketeering activity.

138. Plaintiff and members of this class are innocent persons and are victims of Defendant's racketeering activities are entitled to compensation as provided in N.C.G.S. 75-D (1)-8 (c).


## COUNT X- SPECIFIC PERFORMANCE

139. Paragraphs 1 through 139 above are realleged and incorporated into this Count by reference.

140. That the purchase of burial plots in fee simple is a real estate transaction.

141. That the purchase of burial plots is a unique transaction as each piece of real property is unique.

28

142.    That this Class of Plaintiffs' are the purchasers or third-party beneficiaries of purchasers
        of burial plots from the Defendants, jointly and severally.

143.    That there is no adequate remedy at law for this Class of Plaintiffs.

144.    That each member of this Class is entitled to the conveyance by Defendant to them of the
        specific burial plot purchased for the benefit of their loved ones and the exact location of
        their loved one, according to the terms of their respective contractual agreement, jointly
        and severally.

        **WHEREFORE,** the Plaintiff, on behalf of himself and all others similarly situated, pray
for the following relief:

        a   That this action be deemed a Class Action pursuant to Rule 23 of the North
            Carolina Rules of Civil Procedure;

        b   That the Plaintiff have and recover treble damages under Count I of Complaint,
            jointly and severally;

        c   That the Plaintiff have and recover actual, special and punitive damages an amount
            in excess of $25,000.00 under Count II of the Complaint, jointly and severally.;

        d   That the Plaintiffs have and recover actual, special and punitive damages an
            Amount in excess of $25,000.00 under Count III of the Complaint, jointly and
            severally.;

        e   That the Plaintiffs have and recover actual, special and punitive damages an
            in excess of $25,000.00 under Count IV of the Complaint, jointly and severally.;

        f   That the Plaintiffs have and recover actual, special and punitive damages an
            Amount in excess of $25,000.00 under Count V of the Complaint, jointly and

                                            29

severally.;

g   That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count V of the Complaint, jointly and severally.;

h   That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count VI of the Complaint, jointly and severally.;

i   That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count VII of the Complaint, jointly and severally.;

j   That the Plaintiffs have and recover actual, specific and punitive damages an amount in excess of $25,000.00 under Count VIII of the Complaint jointly and severally;

k   That the Plaintiffs have and recover the Equitable Remedy of Specific Performance under Count X of the Complaint, jointly and severally;

l   For a trial by jury;

m   That the costs in this action be taxed to the Defendant, jointly and severally;

n   For such other and further relief as the Court may deem fit, just and proper.

This 17th day of March, 2023.

Pamela A. Hunter
715 East 5th Street, Suite 106
Charlotte, North Carolina 28202
704-376-7709

N. Clifton Cannon, Jr.
355 South New Hope Road, Suite B
Post Office Box 551154
Gastonia, North Carolina 28055
704-867-9070

Kimberly Best
Post Office Box 37154
Charlotte, North Carolina 28237

## VERIFICATION

I, **HUBERT SIMPSON,** being duly sworn, depose and say; that I have read the

foregoing **COMPLAINT**, and I know the contents thereof to be true, expect as to those facts

alleged to be upon information and belief; and as to those facts, I believe them to be true.

**HUBERT SIMPSON**

### COUNTY OF MECKLENBURG

Subscribed and sworn to before me this 17th day of March 2023.

**NOTARY PUBLIC**

May 5, 2026
**MY COMMISSION EXPIRES:**

