FILED

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

NATALIA LITTLE, JACQUELINE ALLISON, )
KAY MORRISON SANDERS, )
PONTERRANCE THOMAS, TANYA L. )
WILSON, )
)
)
)
Plaintiffs, )
v. )
)
)
CAROTHERS HOLDING COMPANY, LLC, doing )
business as York Memorial Cemetery, a/k/a York )
Memorial Park, STONEMOR GP, LLC, STONEMOR, )
NORTH CAROLINA, LLC, STONEMOR NORTH )
CAROLINA FUNERAL SERVICES, INC., )
STONEMOR NORTH CAROLINA SUBSIDUARY,)
LLC, STONEMOR PARTNERS, LP )
)
Defendants. )
)
)

**VERIFIED COMPLAINT
(JURY TRIAL REQUESTED)**

Plaintiffs, complaining of Defendants, allege and say that the Plaintiffs are natural persons over the age of eighteen years:

## INTRODUCTION

1.      As a matter of common law and public policy, North Carolina has held in great reverence the resting places of the dead as hallowed ground. *Mills v. Cemetery Park Corp.*, 242 N.C. 20 (1955) Our courts have held that the preservation of the sanctity of grave sites is a proper service of the police power of the State of North Carolina. *Shields v. Harris*, 190 N.C. 520, 527, 130 S.E. 189, 192 (1925).

1

2. The plaintiffs are the heirs at law and intended beneficiaries of specific family members buried at Defendants, York Cemetery, commonly referred to as "York" in the Charlotte-Mecklenburg County Community.

3. Each of the Plaintiffs decedents entered into a contract with Defendants for purposes of establishing the final burial site of the individual decedents of the Plaintiffs, so as to insure permanent legacy and history for their respective families.

4. The contracts between the decedents of the Plaintiffs and Defendants, York, are valid and enforceable.

5. In this regard, the contracts entered into between the decedents of the individual Plaintiffs and York Cemetery were for the direct and intentional benefit of each of the respective Plaintiffs, to specifically, establish a final resting place to guarantee and assure the family legacy of each of the Plaintiffs and their respective families.

6. The Defendants, commonly referred to as "York Cemetery", or "York", is a corporation organized under the laws of the State of North Carolina in 1940 and is engaged in the business of providing funeral services to the predominately African American community. Upon information and belief, within the Charlotte-Mecklenburg County area, since its founding, York has been associated with the burial of more than 28,000 persons. The acts each of the Defendants are imputed to the other Defendants, jointly and severally under the Law of Agency.

7. The consuming public who are the primary purchasers of cemetery plots at York Cemetery are members of the African American community in Mecklenburg County and beyond.

8. The demographics of greater Mecklenburg County is one third African American. The

2

eternal legacy of hundreds of African Americans families within the Charlotte-Mecklenburg community and beyond, is irreparably harmed because of the action complained of in this Complaint.

9. Mostly all African Americans within Mecklenburg County have a personal affiliation or association with York Cemetery because of the vastness and numerosity of African Americans from this community who are buried there.

10. The misdeeds of the Defendants as evidenced by their systemic practices as set forth below are exacerbated because it has drastically deprived the Plaintiffs from the necessary common law rights of the preservation of grave sites and their locations for the benefit of loved ones.

11. These acts are exacerbated because the African American community historically lacks the ability to determine the origin of their roots in America, including, Charlotte Mecklenburg County. The proper designation of burial sites in the African American community is of utmost significance to the historical legacy and posterity of Plaintiffs.

12. The acts of the Defendants have resulted in the eternal loss of opportunity for the Plaintiffs to know and feel confident that the final resting place of their beloveds are indeed the final resting places of their loved ones.

13. These acts of Defendants further constitute the loss and damage of the property rights of the Plaintiffs to reclaim heritage after their loved ones have endured the sorrows and struggles of this world.

14. The irreparable injury which the Defendants have caused for the Plaintiffs continues through the date of this filing and will continue into the perpetuity because of the intentional and concealed acts of the Defendants to conceal from the Plaintiffs, the direct

3

and intended beneficiaries of their decedents, their unforgivable acts, all for the purpose of seeking economic and pecuniary gain.

15. Further, to some of the Plaintiffs, the purchase and ownership of a burial site, is the only real property in fee simple, that some Plaintiffs have ever owned or ever will own.

16. The Plaintiffs relied upon and believed that the public information widely disseminated by the Defendants that their final resting place would be according to their respective agreements and not be disturbed, was truthful, honest, fair, ethical. This belief was the sole reason in making their decision to purchase lots at Defendant's cemetery.

17. The Plaintiffs, upon information and belief, possess information that the Defendants, during the entire time of its existence, up to the present, have failed to disclose and have intentionally concealed thousands of material and substantial facts that relate to all grave sites at York Memorial Cemetery, including, but not limited to:

(a) desecrating of graves by conducting exploratory digging of graves with and without backhoes in efforts to identify persons buried in grave sites; (b) by failing to obtain authorization or consent of the next of kin of Plaintiffs to conduct exploratory digs with and without backhoes in efforts to locate and identify persons buried in grave sites in violation of North Carolina General Statute § 14-149, et seq.; (c) the cutting of patches of ground no less than three inches by three inches and at least three feet deep from grave sites; (d) failing to obtain authorization or consent of Plaintiffs to remove patches of earth of no less in size of 3 inches by 3 inches by three feet deep in violation of North Carolina General Statute § 14-149, et seq.; (e). conducting sonograms to locate the buried resulting in the discovery and revelation of graves encroaching other graves; (f) failing to inform Plaintiffs that sonograms reveal that grave sites have been encroached

4

upon by other grave sites: (g) placing markers on the wrong gravesites of the persons identified on the markers because Defendants do not have accurate records to reflect where bodies are buried; (h) failing to inform Plaintiffs that markers are placed on the wrong grave sites; (i). failing to inform Plaintiffs that bodies will not be buried according to the burial sites purchased and identified in the contracts of sale; (j). failing to inform Plaintiffs that the location of the burial sites of their deceased cannot be identified; (k). by digging up bones of deceased persons while digging other graves for burial because bodies have been previously buried in the wrong burial plots; (l). failing to inform the families of the bones which were dug up as to what has taken place; (m). puncturing vaults numerous times while probing to identify persons buried; (n). failing to notify Plaintiffs that vaults of their loved ones have been punctured; (o). double selling grave sites and failing to maintain records of the double sales; (p). failing to inform Plaintiffs of the likelihood that plots purchased may be or had been double sold; (q). failing to maintain records of deeds which correlate with purchased grave sites; (r). failing to Plaintiffs that records of deeds have not been maintained to correlate the purchased grave sites; (s). locating buried bodies which cannot be identified because of improper record keeping; (t). failing to inform Plaintiffs that burials cannot be identified at the Cemetery because of poor record keeping; (u). burying babies on top of each other over a period of years, to the extent that an area of the cemetery is commonly referred to among workers as "the hill of babies"; (v). failing to disclose to family members searching for the grave site location of their deceased babies, that babies were buried on top of each other in an area commonly referred to as "the hill of babies"; (w). failing to disclose to

family members searching for the location of their deceased babies that the location of the deceased baby could never be determined; (x). double selling tandem sites;(y). failing to disclose to Plaintiffs that tandem grave sites had been double sold; (z) failing to disclose to Plaintiffs that members of the same family would not be placed in tandem burial sites next to each other because tandem sites had been double sold; (aa). discovering grave sites with burials already having taken place while undergoing the process to prepare for the burial of the respective owners of the particular grave sites; (bb). failing to Plaintiffs of persons that grave sites possessed the burials of bodies which are routinely discovered while undergoing the process to prepare for the burial of respective owners of the particular grave sites; (cc) burying persons in grave sites different from the contracted plots although this practice created persons not being buried next to their loved ones as contracted; (dd). failing to inform Plaintiffs that persons were not buried next to their loved ones as the original contracts allowed.

18. Upon information and belief, more than 28,000 persons have been buried at Defendants, York Cemetery and more than 40,000 burial plots have been sold.

## NATALIA LITTLE

19. This Plaintiff, Natalia Little, is a citizen and resident of Mecklenburg County, North Carolina.

20. This Plaintiff suffered the death of her mother, Vanessa Little Mack, in 1993, when serial killer, Henry Louis Wallace, strangled her mother to death in the family apartment when Plaintiff was an infant.

21. Plaintiff's mother was buried at York Memorial Park (hereinafter "York") in 1993.

6

Case 3:23-cv-00217-KDB-SCR   Document 1-5   Filed 04/14/23   Page 6 of 43

22. After Plaintiff became of age, she began regularly visiting her deceased mother at the burial site identified by the headstone to be the resting place of her mother.

23. From the time of said burial until the present, the Defendants knew that the body of Vanessa Little Mack was not in said gravesite, yet concealed this information to the Little-Mack family. To date, the Defendants have failed to locate Ms. Mack's body after numerous exploratory digs at the cemetery. Despite knowing that the remains of this Plaintiff's mother, Ms. Mack, are not in the location where the headstone is located, the Defendants have witnessed, observed and acquiesced in the Plaintiff paying honor to her mother by numerous visits to an empty gravesite; the laying of flowers on an empty gravesite and the silent prayers of Plaintiff and members of Plaintiff's family at an empty gravesite.

24. The Plaintiff only became aware of the empty grave below her mother's headstone in July, 2021.

25. To this date, the Defendants have continued to conceal from Plaintiff that the burial plot below her mother's headstone is empty and that the remains of her mother are lost and cannot be located by the Defendants.

26. This Plaintiff has suffered irreparable emotional and mental pain and suffering because of the lack of knowing where the remains of her mother are located. Plaintiff suffers from the inconsolable loss of her mother because of the actions of the Defendants.

27. Plaintiff was helpless as an infant to assist her mother during the crime committed against her and as an adult, the Plaintiff is hopeless to know the final resting place of her mother's body who has been deceased for over 29 years.

7

28. This unconscionable loss of the deceased body of the Plaintiff's mother by Defendants will remain with the Plaintiff for her entire life as well as for generations of family members, in perpetuity.

29. The Plaintiff's mother is not buried according to the contractual agreement with Defendants. The Plaintiffs did not become aware of this intentional concealment by Defendants July, 2021. (*Chisum v. Campagna,* 2021- NCSC-7 No. 406A19)

## JACQUELINE ALLISON

30. This Plaintiff, Jacqueline Allison, is the sister of Vanessa Little Mack.

31. Prior to the death of Vanessa Little Mack, her mother, Virginia Little, purchased 4 cemetery plots at York Memorial.

32. Upon the death of Vanessa Little Mack, Plaintiff and her mother, Virginia Little, were informed and believed that Vanessa Little Mack was buried in one of the 4 cemetery plots.

33. Accordingly, for the remainder of Ms. Little's natural life, Plaintiff, along with her mother visited her sister's burial site. The mother of this Plaintiff, Virginia Little, found peace, and consolation in the steadfast belief, that upon her death, she would be buried next to her daughter, Vanessa Little Mack.

34. On March 24, 2013, Ms. Little, became deceased.

35. During the time that Plaintiff was making the funeral arrangements for her mother, she was informed that Defendants needed to confirm the location of the grave of her sister, Vanessa Little Mack, and the family would be provided 4 more grave sites because the plots purchased by their mother, next to Vanessa Little-Mack already had bodies buried in them.

8

36. Shortly thereafter, the Plaintiff was told by Defendants that the burial site of Vanessa Little-Mack had been located. It was not until July 2021 that the family found out that for all of these prior years, the burial site represented by Defendans as the burial site of Vanessa Little Mack was false, and below the site of the headstone of Vanessa Little Mack is an empty grave. The family of Virginia Little would have never agreed to bury their mother at York Cemetery had they known that the body of their deceased sister was lost.

37. The family suffers mental anguish and emotional distress because the Defendants concealed to them since March 2013 that the body of their sister is lost. This family relied upon the representations that the body of their sister was located in the making of the decision to bury their mother at York Cemetery were the body is located.

## KAY MORRISON SANDERS

38. This Plaintiff, Kay Morrison Sanders, was employed at York Cemetery for almost 8 years when she was separated from her employment in May, 2021.

39. The Plaintiff was 11 years old when her mother, Rebecca Morrison, became deceased in 1969. At the time of her mother's passing, the Plaintiff's father was deceased and her 2 brothers were 13 and 14 years old.

40. Plaintiff and her brothers were raised to adulthood by her maternal aunt.

41. During the course of the Plaintiff's employment at York, the Plaintiff became aware of routine occurrences when York Cemetery could not find burial sites, contracts for burial sites, or the locations of persons who were buried at the cemetery

42. This Plaintiff continually witnessed routine exploratory grave diggings initiated by York Cemetery in efforts to discover the identities of persons buried in grave sites.

9

43. During the course of Plaintiff's employment, at York, Plaintiff was assisting her supervisor in trying to locate the identity of gravesites by reviewing the names of persons listed in the "Red Files".

44. The "Red Files" were files which were earmarked to include those cases where the location of the persons buried could not be identified.

45. These files were isolated from other files and to review a "Red File", an employee had to "sign in and sign out" of a registry.

46. During the course of this work, the Plaintiff inadvertently came upon the name of her mother as having been listed in the "Red Files".

47. Plaintiff brought this information to the attention of her supervisor.

48. Throughout the Plaintiff's employment, Plaintiff was reassured time after time again, that her deceased mother would be located by the Defendants.

49. After Plaintiff's separation from employment, Plaintiff made several attempts to contact representatives of York Cemetery regarding the status of the location of her mother's gravesite. All attempts by the Plaintiff have been futile because the Defendants have ceased to communicate with Plaintiff regarding this issue.

50. The Plaintiff has now become aware that her deceased mother's body and gravesite will never be found despite the false assurances by the Defendants, that her mother will be located.

51. The "Red Files" and all other problems with locating innumerable grave sites to determine the identity of deceased persons buried at York Cemetery continue to exist as of the time of filing of this action.

52. This Plaintiff's mother is not buried according to the contractual agreement and the Plaintiff has recently become aware that the Defendants are not able to comply with the

10

terms of the burial contract because Plaintiff's mother burial location and deceased body is lost and will never be found. (*Chisum v. Campagna*, 2021- NCSC-7 No. 406A19).

## PONTERRANCE THOMAS

53. This Plaintiff, Ponterrance Thomas, an only child, buried her mother, Sandra Lee Thomas at York Cemetery in December, 1994.

54. The plot for the burial of Plaintiff's mother was purchased and paid for in cash immediately prior to the burial.

55. This Plaintiff entered into an agreement with Defendants that her mother would be buried according to the contractual arrangements.

56. In 2014, the Plaintiff attempted to have a headstone placed on her mother's grave.

57. The Defendants told the Plaintiff that the paperwork needed to be located, to accomplish this; although Plaintiff had documents establishing that the Plaintiff's mother was interred at York Cemetery.

58. From 2014 until 2021, the Defendants continued to make promises to the Plaintiff that her mother would be located and that it was a matter of locating additional paperwork.

59. In 2021, the Plaintiff became aware that said paperwork was not locatable and accordingly, the Defendants cannot locate the burial site of the Plaintiff's deceased mother.

60. This Plaintiff's Mother is not buried according to the contractual agreement between these parties.

## TANYA L. WILSON

61. This Plaintiff, Tanya L. Wilson's parents were married for 48 years before the death of her father, Arthur A. Wilson, Jr., on July 9, 1992.

11

62. During the course of their marriage, her parents were inseparable, having raised two children to successful adulthood.

63. The Wilsons were educators in the Charlotte community and were the epitome of middle class Black America, during their lifetime. As was customary for numerous African Americans families, they purchased cemetery plots for their future burials.

64. Plaintiff's parents were deliberate in purchasing plots directly next to each other as it was their lifelong plan and commitment to continue their journey into eternity side by side, as they had navigated the course of their lives.

65. The mother of this Plaintiff, Sara P. Wilson, was buried at Defendants, York Cemetery, in

November, 1999.

66. Tragically, for the Wilson family, the Defendants, York Cemetery, intentionally, knowingly and willfully failed to place Mrs. Wilson beside Mr. Wilson in accordance to the contractual agreement with the cemetery plots which were purchased.

67. In fact, there is an unknown body that lies between the remains of Mr. and Mrs. Wilson and has remained between them since the burial of Mr. Wilson.

68. The Defendants have known this information at least since the time of the interment of Ms. Wilson but has continued to intentionally conceal this information from the Plaintiff.

69. Additionally, the identity of the deceased person who is buried between Mr. and Mrs. Wilson is unknown. Upon information and belief, the family of this unknown individual does not know that their family member is buried in the wrong burial plot.

70. This Plaintiff did not know that her parents were not buried according to the contractual agreement and that the Defendants had breached the contract with her parents until September, 2021. *(Chisum v. Campagna*, 2021- NCSC-7 No. 406A19).

12

## DEFENDANTS

71. The Defendants holds itself out as a member of "Dignity Memorial Funeral Home, Cemetery Cremation" and deliberately holds itself out with the promise that the members of the consuming public will be treated honorably, respectfully and with dignity.

72. Former employees of the Defendants represent that the Defendants have engaged in systemic and prolonged acts to the harm of the Plaintiffs.

73. Former employees also jointly and severally represent that the resulting cumulative effect of the wrongful acts by the Defendants from January 1, 1969, to the present impact every grave site as there do not exist objective methods or records for the Defendants to positively confirm the exact burials according to their contractual agreements of those persons buried at York Memorial Cemetery.

74. Former employees also have personal knowledge and represent that the Defendants has intentionally and deliberately concealed from Plaintiffs that Defendants has engaged in the acts as set forth in this Complaint. These willful and orchestrated acts of concealment, which materially affect the rights of Plaintiffs are continuous in effect, up to and including the date of this filing.

75. Former employees represent to Plaintiffs that the Defendants skillfully and artfully coordinated the acts of further concealment through themselves, jointly and severally, to the extent that virtually very few families of person buried at Defendants Cemetery, are aware of these wrongful acts.

76. Former employees additionally represent that the Defendants directed employees including themselves, to intentionally and directly conceal from families the existence of the wrongful acts of the Defendants against the Plaintiffs, which are complained of in this

13

Complaint, as a condition of continued employment. These former employees represent that they did not contest the Defendant's instructions to conceal the acts complained of in this Complaint in order to keep their jobs.

77. The acts of the Defendants are in total disrespect of the sanctity of the deceased and the love, affection and honor of the Plaintiffs throughout the Charlotte-Mecklenburg Community and beyond.

78. The acts, which the Defendants have engaged and continues to engage in, and has caused irreparable and immeasurable harm to the Plaintiffs as stated throughout this Complaint and include but are not limited to the following:

(a). Desecrating graves by conducting exploratory digs of graves (including backhoes) in efforts to locate buried bodies in violation of North Carolina General Statute § 14-149, et seq.;

(b). Failing to obtain authorization or consent of the next of kin of Plaintiffs of the buried for the use of backhoes on grave sites in violation of North Carolina General Statute § 14-149, et seq.;

(c). Cutting out patches of earth covering graves in sizes no less than 3 inches by 3 inches and three feet deep in violation of North Carolina General Statute § 14-149. et seq.;

(d). Failing to obtain authorization or consent from Plaintiffs to remove patches of earth of no less in size of 3 inches by 3 inches and three feet deep in violation of North Carolina General Statute 14-149, et seq.:

(e). Conducting sonograms to locate the buried resulting in the discovery and revelation of graves encroaching other graves;

(f). Failing to inform Plaintiffs that sonograms reveal that grave sites have been encroached upon by other grave sites;

14

(g)     Placing markers on the wrong gravesite of the persons identified on the markers because Defendants do not have accurate records to reflect where bodies are buried;

(h)     Failing to inform Plaintiffs that markers are placed on the wrong grave sites;

(i). Failing to inform Plaintiffs that bodies will not be buried according to the burial sites purchased and identified in the contracts of sale;

(j). Failing to inform Plaintiffs that the location of the burial sites of their deceased cannot be identified;

(k). By discovering bones of deceased persons while digging graves for burial because of bodies been previously buried in the wrong burial plot;

(l). Failing to inform the decedents families of the bones which were dug up;

(m). Puncturing vaults numerous times while probing to identify persons buried;

(n) Failing to notify Plaintiffs that vaults have been punctured;

(o). Double selling grave sites and failing to maintain records of the double sales;

(p). Failing to inform Plaintiffs of the likelihood that plots purchased may be or had been double sold;

(q). Failing to maintain records of deeds which correlate with purchased grave sites;

(r). Failing to inform Plaintiffs that records of deeds have not been maintained to correlate with the purchased grave sites;

(s). Locating buried bodies which cannot be identified because of improper record keeping;

(t). Failing to inform Plaintiffs that burial sites cannot be properly identified at the Cemetery;

(u). Burying babies on top of each other over a period of years, to the extent that the area was commonly referred to among workers as "the hill of babies";

15

(v). Failing to disclose to family members searching for the gravesite location of their deceased babies, that babies were buried on top of each other in an area commonly referred to as "the hill of babies";

(w). Failing to disclose to family members searching for the location of their deceased babies that the location of the deceased children could never be determined;

(x). Double selling tandem grave sites;

(y). Failing to disclose to Plaintiffs that tandem grave sites had been double sold;

(z) Failing to disclose to Plaintiffs that members of the same family would not be placed in tandem grave sites next to each other because tandem grave sites had been double sold;

(aa). While preparing a gravesite for prospective burial, discovering such gravesite has already been used;

(cc). Burying persons in grave sites different from the contracted plots although this practice created persons not being buried next to their loved ones as contracted;

(dd). Failing to inform Plaintiffs that persons were not buried next to their loved ones as the original contracts provided;

(ee). Failing to insure that Lot Books match physical locations of grave sites;

(ff). The failure to inform Plaintiffs that Lot Books do not match

physical grave sites;

(gg). Unilaterally, changing contracts to different lots because the lots contracted for have been previously sold;

(hh). The failure to inform Plaintiffs that lots sold in contracts have to be changed because they have been previously sold;

(ii). The owners of lots in Lot Books do not match persons who are actually buried in

16

the physical graves;

(jj). The failure to inform Plaintiffs that Lot Books do not match persons who are buried in the physical graves;

(kk). Depiction of lots in Lot Books where the lots do not exist on the Map Books;

(ll). The failure to inform Plaintiffs of depiction of lots in lot books where the lots do not exist on the Map Books;

(mm). Map books depict lots which cannot be physically located;

(nn). Failure to Plaintiffs that markers located on grave sites which are empty;

(oo). The failure to inform Plaintiffs of their failure to maintain records of burials in the Lot Books;

(pp). Exploratory digs to try to locate the names of the deceased by looking for the nameplates on vaults;

(qq). Failure to obtain any authorization from any next of kin for any exploratory digging of graves in efforts to identify nameplates on vaults;

(rr). Failure to notify Plaintiffs that exploratory digs where occurring in an effort to identify nameplates on vaults;

(ss). Failure to maintain contracts for the sales of burial plots;

(tt). The ongoing discovery of markers which do not reflect the proper person buried therein;

(uu). Failure to notify Plaintiffs that markers were discovered which did not reflect the proper person buried therein;

(vv). Overlapping of burial plots;

17

(ww). Failure to notify Plaintiffs that some burial plots overlapped;

(xx). Encroachment of burial sites;

(yy). Failure to notify Plaintiffs that some burial sites had been encroached upon;

(zz). Contracts which fail to correlate with the subject burial plots;

(aaa). Failure to notify Plaintiffs that there existed Contracts which did not correlate with the subject burial plots;

(bbb). Lost Deeds which are too numerous to calculate;

(ccc). Failure to notify Plaintiffs of the fact that there exists numerous lost Deeds, in a number too large to count;

(ddd). Map Books which reflect burial lots which do not exist;

(eee). Failure to notify Plaintiffs of the existence of Map Books which reflect lots which do not exist;

(fff). Lot Books which establish more lots than the actual number of lots which exist;

(ggg). Failure to notify Plaintiffs of the existence of Lot Books which establish more lots than the actual number of lots which exist;

(hhh). Markers which encroach other grave sites;

(iii). Failure to inform Plaintiffs that Markers encroached upon other grave sites;

(jjj). The impossibility to calculate the numerous listings of John Does on Interment cards because of the lack of records to identify the names of persons buried in grave-sites;

18

(kkk). Lack of deeds to correlate with burial spaces;

(lll). Failure to notify Plaintiffs of the lack of deeds to correlate with burial sites;

(mmm). The impossibility to calculate the numerous desecration of vaults because
of water damage during exploratory digs;

(nnn). The failure to inform members of any families of the desecration of the vaults of
their loved ones because of the exploratory digs;

(ooo). The finding of vaults during exploratory digs where no record of burial exists;

(ppp). The failure to inform Plaintiffs of the finding of vaults during exploratory digs;

(qqq). The determination that the burial of persons at wrong grave sites is not a priority;

(rrr). The failure to inform Plaintiffs that the determination of persons at the wrong grave
sites is not a priority;

(sss). The determination to not notify Plaintiffs that the burial locations of
their Decedents could not be found so as not to cause any trouble for Defendants;

(ttt). The failure to notify Plaintiffs that the burial locations of their Decedents could not be
found;

(uuu). Failure to maintain records to establish the transfer of burial sites;

(vvv). The failure to notify Plaintiffs that the Defendants did not maintain records to
establish the transfer of burial sites;

(www). The inability to identify the location of burial sites to disinter deceased persons,
if necessary;

(xxx). The failure to notify Plaintiffs that the Defendants did not have the

19

ability to identify the location of burial sites to disinter deceased persons, if necessary.

76. Former employees of the Defendants have represented to the Plaintiffs that the acts complained of above have affected the efficacy of the burial of all persons at York Memorial Cemetery.

77. Despite having full knowledge of and intentionally orchestrating the concealment of its fraudulent and reprehensible business practices, the Defendants continues to hold itself out to the public as trustworthy and competent and efficient in maintaining the sanctity of the deceased. The false and fraudulent representations in soliciting business by the Defendants include but are not limited to the following statements to the consuming public:

   a. That choosing and purchasing burial plots from Defendants will ensure that families will be buried together;

   b. That choosing and purchasing burial plots from Defendants will give peace of mind in knowing that your family will always be together for generations to come;

   c. That choosing and purchasing burial plots from Defendants will ensure your legacy and family heritage plans;

   d. That choosing and purchasing burial plots from Defendants will ensure that financial arrangements have been made to cover your burial costs;

   e. That choosing and purchasing burial plots from Defendants ensures that arrangements and preparations have been made for end of life services;

   f. That choosing and purchasing burial plots from Defendants ensures that final services are planned so you are the author of your story;

20

g. That choosing and purchasing burial plots from Defendants ensure that you have planned ahead at the time of the painful time of loss of loved ones;

h. That choosing and purchasing burial plots from Defendants avoids woes about what loved ones wanted;

i. That choosing and purchasing burial plots from Defendants ensures that your final wishes are fulfilled;

j. That choosing and purchasing burial plots from Defendants gives you peace of mind that that this has been taken care of ahead of time;

k. That choosing and purchasing burial plots from Defendants ensures that wishes will be followed;

l. That choosing and purchasing burial plots from Defendants provides instructions on how you will be memorialized;

m. That choosing and purchasing burial plots from Defendants provides that your family memory will remain alive;

n. That choosing and purchasing burial plots from Defendants ensures that your preferences will be accommodated.

o. That choosing and purchasing burial plots from Defendants will keep your family together through the generations.

78. The former employees of Defendants have also represented that Defendants, jointly and severally, have engaged in orchestrated corporate practices and policies to fraudulently and intentionally conceal and cover up these practices in the following ways:

(a). By mandating that all employees not admit to Plaintiffs that buried bodies could not be located;

21

(b). By never notifying Plaintiffs that any grave sites had been disturbed by the use of a backhoe;

(c) By never seeking authorization from any Plaintiff to use a backhoe on their loved ones' grave site;

(d) By never obtaining authorization from any Plaintiff to cut out patches of grave sites;

(e). By telling Plaintiffs that continuous research was being conducted when inquiries regarding burial deeds were made although Defendants knew that no such efforts were taking place;

(f). By telling Plaintiffs that continuous research was being conducted to locate Contracts for the purchase of burial plots, although Defendants knew that no such research efforts were taking place;

(g) By telling Plaintiffs that continuous research was being conducted to locate grave sites although Defendants knew that no such efforts were taking place;

(h) . By failing to advise Plaintiffs that research to locate burial deeds are futile;

(i). By failing to advise Plaintiffs that research to locate contracts are futile;

(j). By failing to advise Plaintiffs that research to locate grave sites are futile;

(k). By failing to advise Plaintiffs that burial deeds cannot be located by Defendants;

(l). By failing to advise Plaintiffs that contracts cannot be located by Defendants;

(m). By establishing policies and procedures to not return calls to Plaintiffs when

22

inquiries were made regarding discrepancies relating to burials;

(n). By creating an atmosphere that job security of employees is based upon employees failing to communicate the truth to Plaintiffs about any of the situations as set forth above;

(o). By forbidding employees to advise Plaintiffs that grave markers of their loved ones are placed on empty graves;

(p). By forbidding employees to advise Plaintiffs that grave markers of their loved ones are not placed where the bodies of their loved ones are buried;

(q). By directing employees to only be concerned with the discrepancies of Defendants on an individual basis of Plaintiffs and not as systemic and vast irregularities which affect this entire cemetery;

(r). By mandating employees to consistently "put off" answering inquiries by Plaintiffs regarding burial sites of loved ones in hopes that the statute of limitations to seek legal redress will run on individual Plaintiffs.

79. The former employees of the Defendants represent to the Plaintiffs that the acts complained of throughout this Complaint has caused the accuracy of all grave sites of York to be compromised.

## CAUSES OF ACTION

## COUNT I-UNFAIR AND DECEPTIVE TRADE PRACTICES

80. Paragraphs 1-79 above are realleged and incorporated into this Count by reference.

81. The Defendants have affirmatively represented to Plaintiffs, jointly and severally, as well as to the general consuming population the following:

   a. The affirmative promise that choosing and purchasing burial plots will ensure that families will be buried together;

   b. The affirmative promise that choosing and purchasing burial plots will give peace of mind in knowing that your family will always be together for generations to come;

   c. The affirmative promise that choosing and purchasing burial plots will ensure your legacy and family heritage plans;

   d. The affirmative promise that choosing and purchasing burial plots will ensure that financial arrangements have been made to cover your burial costs;

   e. The affirmative promise that choosing and purchasing burial plots ensures that arrangements and preparations have been made for end of life services;

   f. The affirmative promise that choosing and purchasing burial plots ensures that final services are planned so you are the author of your story;

   g. The affirmative promise that choosing and purchasing burial plots ensures that you have planned ahead for a loved one at the of the painful time of loss of loved ones;

   h. The affirmative promise that choosing and purchasing burial plots avoids woes about what loved ones wanted;

   i. The affirmative promise that choosing and purchasing burial plots ensures that your final wishes are fulfilled;

   j. The affirmative promise that choosing and purchasing burial plots gives you peace of mind that that this has been taken care of ahead of time;

k. The affirmative promise that choosing and purchasing burial plots ensures that wishes will be followed;

l. The affirmative promise that choosing and purchasing burial plots provides instructions on how you will be memorialized;

m. The affirmative promise that choosing and purchasing burial plots provides that your family memory will remain alive;

n. 'The affirmative promise that choosing and purchasing burial plots ensures that your preferences will be accommodated.

81. Former employees of the Defendants represent that by and through these specific directives of the Defendants, the Defendants in the specific and respective time periods in which they were employed, have and continue to engage in numerous and various acts of intentionally and deliberately deceiving Plaintiffs in all ways and manners as set forth above.

82. Former employees represent that the concealment of material facts, directed by Defendants and as set out above were made to intentionally deceive Plaintiffs.

83. Former employees represent that the false representations of Defendants as set forth above were made with the intent, purpose and desire to deceive.

84. Said representations were made in commerce and do affect commerce.

85. Said public dissemination of materials as well as representations made to Plaintiffs and the general consuming public are the proximate cause of the injuries to the Plaintiffs.

86. These Plaintiffs have in fact, by the actions of the Defendants, been deceived as these Plaintiffs have reasonably relied upon the truthfulness of the representations and the good faith of the Defendants in making said representations.

25

87. These Plaintiffs have suffered injuries including the loss of the ability to maintain peace and contentment as well as the sanctity of their deceased loved ones which totally and completely frustrates the purpose of their relationship with York Cemetery.

88. These Plaintiffs have suffered actual, special and punitive damages, jointly and severally, in excess of $25,000.00 under this Count.

## COUNT II - BREACH OF CONTRACT

89. Paragraphs 1 through 88 above are realleged and incorporated into this Count by reference.

90. The named Plaintiffs became aware of the breaches of contracts enumerated above within three years of the filing of this Complaint.

91. These Plaintiffs individually or as third party beneficiaries have a valid contractual relationship with Defendants. The consideration by these Plaintiffs was the payment of money to the Defendants for the purpose to be buried according to the agreement between the parties.

92. All contracts contain the same language regarding specific burial plots, locations of burial plots, and the responsibilities of the Defendants to bury persons in the plots purchased on behalf of these Plaintiffs.

93. The Defendants breached its contractual responsibilities by the actions of the Defendants as set forth above.

94. These Plaintiffs have suffered actual, special and punitive damages, jointly and severally, in excess of $25,000.00 under this Count, jointly and severally under this Count.

26

## COUNT III- NEGLIGENCE

95. Paragraphs 1 through 94 above are realleged and incorporated into this Count by reference.

96. The Defendants have owed and presently owe a duty to these

Plaintiffs to maintain the Common Law right to preserve the sanctity and sepulcher of grave sites, as it is the Public Policy of North Carolina to protect the burying places of the dead.

97. The Defendants has breached these duties as set forth above.

98. The proximate cause of injuries to these Plaintiffs is due to the failure to meet the duties of the Common Law of North Carolina as set forth in Common Law *Mills v. Cemetery Park Corp.*, 242 N.C. 2 (1955).

99. The Defendants are liable to these Plaintiffs for its breach of this Common Law duty. These Plaintiffs are entitled to actual, special and punitive damages in an amount in excess of $25,00.00, jointly and severally.

## COUNT IV-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

100. Paragraphs 1 through 93 above are realleged and incorporated into this Count by reference.

101. The former employees represent that Defendants engaged negligently in conduct as set forth above.

102. The Defendants knew or should have known that such conduct was reasonably foreseeable and would cause these Plaintiffs to suffer substantially severe emotional distress and mental anguish.

27

103. The conduct by the Defendants have caused harm to these Plaintiffs to suffer substantially severe emotional distress and mental anguish;

104. These Plaintiffs have suffered actual, special and punitive damages in excess of \$25, 000.00, jointly and severally under this Count.

## COUNT V- TRESPASS TO REAL PROPERTY

105. Paragraphs 1 through 104 above are realleged and incorporated into this Count by reference.

106. Plaintiffs have purchased in fee simple or are the third-party beneficiaries to the purchase to maintain title and possess title to burial sites purchased in fee simple at York Memorial Cemetery with the right to actual possession at the time of their authorized burials.

107. The Defendants have purposefully, wantonly, intentionally, deliberately, recklessly and maliciously engaged in the unlawful entry upon the burial sites owned by these Plaintiffs under the circumstances as set forth in the above Paragraphs.

108. The unauthorized entry and disturbance into the burial sites of persons by the Defendants constitutes trespass upon the real property owned Plaintiffs as a matter of law.

109. The Plaintiffs have suffered actual, special and punitive damages, in excess of \$25,000.00 under this Count, jointly and severally under this Count.

## COUNT VI-BREACH OF THIRD PARTY BENEFICIARY TO CONTRACT

110. Paragraphs 1 through 109 above are realleged and incorporated into this Count by reference.

28

111. There is the existence of valid contracts between each of the respective Plaintiffs, individually, and the Defendants.

112. Each of the respective contracts is valid and enforceable.

113. Each of the respective contracts was entered into by the decedents of each of the Plaintiffs for the direct benefit of each of the respective Plaintiffs.

114. The valid contracts between Plaintiffs and Defendants were to ensure the final resting place and historical legacies of the persons buried for the benefit of their next of kin and families' heritage in perpetuity.

115. The Plaintiffs are the intended and direct third party beneficiaries of these valid agreements.

116. The Defendants have breached its agreements with Plaintiffs as set forth in the Paragraphs above.

117. The Plaintiffs have suffered actual, special and punitive damages, in excess of $25,000.00 under this Count, jointly and severally under this Count.

## COUNT VII-INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

118. Paragraphs 1 through 117 above are realleged and incorporated into this Count by reference.

119. The Defendants have intentionally and willfully conspired to commit the acts complained of in the above Paragraphs and are continuously engaging in extreme and outrageous conduct which exceeds all bounds of human decency tolerated by a decent society.

120. The sentiment of all civilized peoples, since the earliest Biblical times, has held in great reverence the resting places of the dead as hallowed ground. (Mills, *supra)*

121. The Defendant's conduct has been and continues to be reckless and indifferent to the harm, detriment and physical loss to the Plaintiffs.

122. The Defendants knew and should have known the likelihood that their acts, jointly and severally, would cause substantially severe emotional distress.

123. The conduct of Defendants have and will cause permanent and substantially severe emotional distress to these Plaintiffs.

124. These Plaintiffs have suffered actual, special and punitive damages, in excess of $25,000.00 under this Count, jointly and severally under this Count.

## COUNT VIII-RACKETEER INFLUENCE and CORRUPT ORGANIZATIONS ACT (N.C.G.S. CHAPTER 75-D1)

125. Paragraphs 1 through 124 above are realleged and incorporated into this Count by reference.

126. Defendants did conspire with one another to engage in a pattern of racketeering activity to maintain control of property of Plaintiffs and Plaintiffs' decedents, by covering up the acts complained of above.

127. Defendants coerced together a pattern of racketeering activity to commit acts which could be chargeable by indictment for violations of N.C.G.S. 14-7.20, 14-100, 14-148, 14-149, and the Common Law of the State of North Carolina.

128. The patterns of racketeering activities by Defendants have occurred and continues through the date of the filing of this action. Defendants have and continue to cover up on

30

a regular basis the wrongful acts complained of above, through the date of the filing of this action.

129. On a regular basis Defendants mandated that its employees fail to disclose the wrongful acts described above by making employees adhere to the following practices of terms of employment;

   (a) To not disclose to Plaintiffs, the existence of the wrongful and illegal acts complained of above;

   (b) To not disclose the acts complained of above by the Plaintiffs to any third party;

   (c) To continue to make false assurances to satisfy Plaintiffs in hopes that Statutes of Limitations will expire before legal action is pursued

130. These acts constitute unlawful organized activity.

131. The Defendants have forbidden its employees to disclose any of these unlawful and wrongful acts complained of above for pecuniary gain.

132. All acts of the Defendants are an interrelated, pattern of organized unlawful activity, with the purpose and effect to derive pecuniary gain.

133. Further, Defendants made these false statements with the intent to either discourage Plaintiffs' attempts to locate the remains of their decedents to such an extent that Plaintiffs forego further inquiries, or to forestall Plaintiffs' inquiries with the hopes that the Plaintiffs will abate such inquires.

31

134.    That Defendants has continuously employed such dilatory and fraudulent actions on a continuous basis, year after year, and continue to do so as of the time of the filing of this action.

135.    That as a result of such conspiracy, Plaintiffs suffered injury to their property interests and infliction of emotional distress.

136.    That as a result of such conspiracy, Defendants obtained pecuniary gain as a result of the racketeering activity

137.    Plaintiffs are innocent persons and are victims of Defendants' racketeering activities are entitled to compensation as provided in N.C.G.S. 75-D (1)-8 (c).

## COUNT X- SPECIFIC PERFORMANCE

138.    Paragraphs 1 through 137 above are realleged and incorporated into this Count by reference.

139.    That the purchase of burial plots in fee simple is a real estate transaction.

140.    That the purchase of burial plots is a unique transaction as each piece of real piece of is unique.

141.    That these Plaintiffs are the purchasers and/or intended and direct third-party beneficiaries of purchasers of burial plots from the Defendants.

142.    That there is no adequate remedy at law for these Plaintiffs.

32

143.     That each Plaintiff is entitled to the conveyance by Defendants to them of the specific burial plot purchased for the benefit of their loved ones according to the terms of their respective contractual agreement, jointly and severally.

**WHEREFORE**, the Plaintiffs, pray for the following relief;

1. That the Plaintiffs have and recover treble damages under Count I of the Complaint, jointly and severally;

2. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count II of the Complaint, jointly and severally.;

3. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count III of the Complaint, jointly and severally.;

4. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count IV of the Complaint:

5. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count V of the Complaint, jointly and severally.;

6. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count VI of the Complaint, jointly and severally.;

7. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count VII of the Complaint, jointly and severally.;

8. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count VIII of the Complaint, jointly and severally.;

33

9. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess

   of $25,000.00 under Count XI of the Complaint, jointly and severally.;

10. That the Plaintiffs have and recover the Equitable Remedy of Specific

    Performance under Count X of the Complaint, jointly and severally;

11. For a trial by jury;

12. That the costs in this action be taxed to the Defendants;

13. For such other and further relief as the Court may deem fit, just and proper.

This ___17th___ day of __March__ 2023.

Case 3:23-cv-00217-KDB-SCR   Document 1-5   Filed 04/14/23   Page 34 of 43

Pamela A. Hunter
715 East 5th Street, Suite 106
Charlotte, North Carolina 28202
704-376-7709

N. Clifton Cannon, Jr.
355 South New Hope Road, Suite B
Post Office Box 551154
Gastonia, North Carolina 28055
704-867-9070

Kimberly Best
Post Office Box 37154
Charlotte, North Carolina 28237

## VERIFICATION

I, **Tanya Wilson,** being duly sworn, depose and say: that I have read the foregoing

**COMPLAINT.** and I know the contents thereof to be true, expect as to those facts alleged to

be upon information and belief; and as to those facts, I believe them to be true.

**TANYA WILSON**

**STATE OF NORTH CAROLINA**

**COUNTY OF MECKLENBURG**

Subscribed and sworn to before me this 14th day of February 2022.

**NOTARY PUBLIC**

May 5, 2024
**MY COMMISSION EXPIRES:**

Case 3:23-cv-00217-KDB-SCR   Document 1-5   Filed 04/14/23   Page 36 of 43

## VERIFICATION

I, **Kay Morrison Sanders,** being duly sworn, depose and say; that I have read the foregoing **COMPLAINT**, and I know the contents thereof to be true, expect as to those facts alleged to be upon information and belief; and as to those facts, I believe them to be true.

Kay Morrison-Sanders
**KAY MORRISON SANDERS**

**STATE OF NORTH CAROLINA**

**COUNTY OF MECKLENBURG**

Subscribed and sworn to before me this $\underline{17^{th}}$ day of $\underline{March}$ 2023.

**NOTARY PUBLIC**

$\underline{Mar\ 3,\ 2026}$
**MY COMMISSION EXPIRES:**

STATE OF NORTH CAROLINA          )
                                 )          VERIFICATION
COUNTY OF MECKLENBURG            )

I, **PONTERRANCE THOMAS**, being first duly sworn, deposes and says that he/she is the Plaintiff in this matter, that he/she has read and understood this _____ and knows the contents to be true of his/her own personal knowledge, except for those matters and things set forth upon information and belief, and as to those matters and things, he/she believes them to be true.

*_____
(Sign in the presence of the Notary Public)

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

Sworn to and subscribed before me this 30ᵗʰ day of June ,2022

_____
Notary Public

My Commission expires Aug. 18, 2024

Treneice L. Mackey
Notary Public
Mecklenburg County, North Carolina
My Commission Expires
August 18, 2024

## VERIFICATION

I, **JACQUELINE ALLISON**, being duly sworn, depose and say; that I have read the foregoing **COMPLAINT**, and I know the contents thereof to be true, expect as to those facts alleged to be upon information and belief; and as to those facts, I believe them to be true.

*Jacqueline Allison*
**JACQUELINE ALLISON**

**STATE OF NORTH CAROLINA**

**COUNTY OF MECKLENBURG**

Subscribed and sworn to before me this _30th_ day of _June_ 2022.

**NOTARY PUBLIC**

_May 5, 2026_
**MY COMMISSION EXPIRES:**

## VERIFICATION

I, **Natalia M. Little,** being duly sworn, depose and say; that I have read the foregoing

**COMPLAINT**, and I know the contents thereof to be true, expect as to those facts alleged to

be upon information and belief; and as to those facts, I believe them to be true.

NATALIA M. LITTLE

**STATE OF NORTH CAROLINA**

**COUNTY OF MECKLENBURG**

Subscribed and sworn to before me this _____ day of _____ 2022.

**NOTARY PUBLIC**

**MY COMMISSION EXPIRES:**

# STATE OF NORTH CAROLINA

MECKLENBURG County

File No. 23 CVS 4924

In The General Court Of Justice
☐ District   ☒ Superior Court Division

**Name Of Plaintiff**
Natalia Little, Jacqueline Allison,Kay Morrison Sanders, Ponterance

**Address**
c/o 715 East 5th Street,Suite 106

**City, State, Zip**
Charlotte          NC      28202

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

**VERSUS**

**Name Of Defendant(s)**
CArothers Holding Company, LLC, doing business as, York Memorial Cemetery, a/k/a York Memorial Park, Stonemor GP. LLC Stonemor North,Carolina LL Stonemor North CArolina

**Date Original Summons Issued**

**Date(s) Subsequent Summons(es) Issued**

### To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Stonemor North Carolina, LLC | Stonemor North Carolina Funeral Services, Inc. |
| c/o Corporation Services Company | c/o Corporation Service Company |
| 2626 Glenwood Avenue, Suite 500 | 2626 Glenwood Avenue, Suite 550 |
| Raleigh          NC      27608 | Raleigh          NC      27608 |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Law office of Pamela A. Hunter | 3/17/23 | 2:08 ☐ AM ☐ PM |
| Pamela A. Hunter | **Signature** | |
| 715 East 5th Street,Suite 106 | | |
| Charlotte          NC      28202 | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | ☐ AM ☐ PM |
| | **Signature** | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed*

(Over)

Case 3:23-cv-00217-KDB-SCR   Document 1-5   Filed 04/14/23   Page 41 of 43

# STATE OF NORTH CAROLINA

MECKLENBURG _____ County

File No. 23 CVS 4924

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff |
|---|
| Natalia Little, Jacqueline Allison,Kay Morrison Sanders, Ponterance |

| Address |
|---|
| c/o 715 East 5th Street,Suite 106 |

| City, State, Zip | | |
|---|---|---|
| Charlotte | NC | 28202 |

**CIVIL SUMMONS**

☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

**VERSUS**

| Name Of Defendant(s) |
|---|
| CArothers Holding Company, LLC, doing business as, York Memorial Cemetery, a/k/a York Memorial Park, Stonemor GP. LLC Stonemor North Carolina LLC Stonemor North Carolina |

G.S. 1A-1, Rules 3 and 4

| Date Original Summons Issued |
|---|
| |

| Date(s) Subsequent Summons(es) Issued |
|---|
| |

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | | | Name And Address Of Defendant 2 | | |
|---|---|---|---|---|---|
| Stonemor North Carolina, Subsidary LLC | | | Stonemor Partners, LP | | |
| c/o Corporation Services Company | | | c/o Corporation Service Company | | |
| 2626 Glenwood Avenue, Suite 500 | | | 2626 Glenwood Avenue, Suite 550 | | |
| Raleigh | NC | 27608 | Raleigh | NC | 27608 |

⚠️ IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!

Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea Inglés y que pueda traducir estos documentos!

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | | | Date Issued | | Time | |
|---|---|---|---|---|---|---|
| Law office of Pamela A. Hunter | | | 3/17/23 | | 2:08 | ☐ AM ☒ PM |
| Pamlea A. Hunter | | | Signature | | | |
| 715 East 5th Street,Suite 106 | | | | | | |
| Charlotte | NC | 28202 | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | | | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time | |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | | ☐ AM ☐ PM |
| | Signature | | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | | |

NOTE TO PARTIES: Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

Case 3:23-cv-00217-KDB-SCR   Document 1-5   Filed 04/14/23   Page 42 of 43

# STATE OF NORTH CAROLINA

**MECKLENBURG** _____ County

File No. 23 CVS 4924

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>Natalia Little, Jacqueline Allison, Kay Morrison Sanders, Ponterance | **CIVIL SUMMONS** |
| Address<br>c/o 715 East 5th Street, Suite 106 | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| City State Zip<br>Charlotte          NC          28202 | |

**VERSUS**

| | |
|---|---|
| Name Of Defendant(s)<br>CArothers Holding Company, LLC, doing business as, York<br>Memorial Cemetery, a/k/a York Memorial Park, Stonemor GP.,<br>LLC Stonemor North Carolina, LL, Stonemor North CA online | G.S. 1A-1, Rules 3 and 4<br><br>Date Original Summons Issued<br><br>Date(s) Subsequent Summons(es) Issued |

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1<br>Carothers Holding Company, LLC,<br>c/o Corporation Services Company<br>2626 Glenwood Avenue, Suite 500<br>Raleigh                          NC          27608 | Name And Address Of Defendant 2<br>Stonemor GP., LP.<br>c/o Corporation Service Company<br>2626 Glenwood Avenue, Suite 550<br>Raleigh                          NC          27608 |
|---|---|

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)<br>Law office of Pamela A. Hunter<br>Pamlea A. Hunter<br>715 East 5th Street, Suite 106<br>Charlotte                          NC          28202 | Date Issued<br>3/17/23          Time 2:08  ☐ AM  ☐ PM<br><br>Signature<br><br>☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court |
|---|---|

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days | Date Of Endorsement          Time<br>                                   ☐ AM  ☐ PM<br>Signature<br><br>☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court |
|---|---|

**NOTE TO PARTIES:** _Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

Case 3:23-cv-00217-KDB-SCR   Document 1-5   Filed 04/14/23   Page 43 of 43