**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No. 23-cv-00217-KDB-SCR**

| | | |
|---|---|---|
| **HUBERT SIMPSON, individually, and on behalf of all others similarly situated,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| | ) | **OF DEFENDANT CAROTHERS HOLDING** |
| **v.** | ) | **COMPANY, LLC'S MOTION TO DISMISS** |
| | ) | **THE COMPLAINT AND MOTION TO** |
| **CAROTHERS HOLDING** | ) | **STRIKE OR DISMISS CLASS** |
| **COMPANY, LLC,** *et al.*, | ) | **ALLEGATIONS** |
| | ) | |
| **Defendants.** | ) | |

## INTRODUCTION

Plaintiff brings a putative class action against six Defendants in connection with a hodgepodge of over 100 different alleged acts or omissions spanning over 50 years, purportedly impacting some 40,000 burial plots at the York Memorial Cemetery ("York"), including claims on behalf of unnamed members of Plaintiff's family. Generally, Plaintiff alleges that the Defendants failed to properly maintain the cemetery and concealed problems with grave maintenance from both prospective customers and the families of those already buried at York. Plaintiff asserts nine claims: (I) unfair and deceptive trade practices (UDTP); (II) breach of contract; (III) negligence; (IV) negligent infliction of emotional distress (NIED); (V) trespass to real property; (VI) breach of third-party beneficiary to contract; (VII) intentional infliction of emotional distress (IIED); (VIII) Racketeer Influence and Corrupt Organizations Act under N.C.G.S. Chapter 75-D1 (RICO); and (X)[sic] specific performance. Plaintiff purports to represent a class of: (a) all persons who purchased internment [sic] rights or services at York from January 1, 1969, to present; and/or (b) all persons who entered into agreements authorizing their family

1

members or other relations to be interred at York from January 1, 1969, to present; and/or (c) the authorized representative(s) of all deceased persons who would have otherwise been a member of those persons set forth in (a) or (b) above. Compl. ¶10. Plaintiff apparently seeks to represent both living and deceased individuals or their authorized representatives for a period spanning over 50 years.

Plaintiff glosses over the most critical aspects of his claims, such as allegations in support of whether he is a proper party under North Carolina law to bring claims on behalf of unidentified deceased family members, and whether he can adequately represent a purported class of individuals and decedents with alleged injuries for emotional distress and property damage. He also fails to identify the actual parties or terms to his family members' "contracts," much less the terms of the tens of thousands of contracts entered into during the last half-plus century. Further, Plaintiff comingles all allegations against the six Defendants (even during decades when they had no connection to York) and fails to explain who they are, their role, which allegations pertain to each, or their relationship(s) to each other. Yet, he also alleges the Defendants are somehow "jointly and severally liable," "conspired," or "intentionally and deliberately concealed" information related to over 100 different types of acts or omissions over 50 years. Worse, Plaintiff simply readopts and reincorporates all allegations into each of his nine separate causes of action, which otherwise are conclusory regurgitations of the purported elements of each cause of action.

Plaintiff's Complaint is the antithesis of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 8(d), "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Plaintiff's Complaint is anything but. It is incomprehensible. It is vague, conclusory, complex, and contains immaterial allegations not clearly directed to any particular cause of action. Further, despite its complexity, Plaintiff fails

to state a plausible cause of action and reveals that the individualized claims are not suitable for class certification under Rule 23, a deficiency which cannot be cured. And, regardless of Plaintiff's pervasive pleading deficiencies throughout the Complaint, it is irrefutable that Carothers sold York in 2007, and therefore, any potential claim for emotional distress or property damage against Carothers is barred by North Carolina's 10-year statute of repose. For all of these reasons, the Complaint and all putative class claims should be dismissed against Carothers with prejudice.

## ARGUMENT

### A.    Plaintiff's Complaint should be dismissed as a shotgun pleading.

A "shotgun pleading" is one that "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading" or one in which "it is virtually impossible to know which allegations of fact are intended to support which claims for relief." *Wilkinson v. Wells Fargo Bank, N.A.*, 2020 WL 2542867, at *3 (W.D.N.C. May 19, 2020), *aff'd sub nom. Wilkinson v. FINRA*, 2023 WL 418063 (4th Cir. Jan. 26, 2023); *Sewraz v. Morchower*, 2009 WL 211578, at *1–2 (E.D. Va. Jan. 28, 2009) ("the Court concluded that [the] amended complaint did not comply with Federal Rule of Civil Procedure 8(a) because it was prolix, repetitive, and overly complex."). "Courts disfavor complaints that are 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.'" *Kline v. Cleveland Cnty.*, 2020 WL 1692348, at *6 (W.D.N.C. Apr. 7, 2020) (citations omitted).

Plaintiff's Complaint is a textbook case of impermissible shotgun pleading. In connection with more than 40,000 alleged putative plaintiffs, Plaintiff presents 79 paragraphs (and over 100 subparagraphs) of allegations culminating, without further elaboration, in a list of over nine causes of action, wherein each claim readopts and reincorporates all prior allegations of the preceding claim. Unbelievably, Plaintiff does not bother to allege that any of the 100 subparagraphs of allegations pertain to him or any particular relative, or which ones pertain to the tens of thousands

3

of persons he seeks to represent. "This structure renders futile any attempt to align the Complaint's myriad factual allegations with its roughly [nine] causes of action. The presentation of these allegations also renders fruitless any attempt to discern which Defendants are allegedly responsible for which alleged acts of misconduct or which Defendants are sued under which theory of recovery." *McCrea v. Wells Fargo*, 2019 WL 2513770, at *7 (D. Md. June 17, 2019), *aff'd,* 852 Fed. Appx. 112 (4th Cir. 2021), *aff'd* 852 Fed. Appx. 112 (4th Cir. 2021); *Howes v. SN Servicing Corp.,* 2021 WL 878354, at *8 (D. Md. Mar. 9, 2021), *am. on recon.*, 2022 WL 4554857 (D. Md. Sept. 29, 2022) ("The [] complaint, directed at eight different defendants, is 135 pages long, with 470 paragraphs, 109 footnotes, and 69 exhibits . . . Each of the thirteen counts incorporates by reference all prior paragraphs in the complaint . . . It is arduous reading, it is undeniably too long, and it is in some respects the very definition of a shotgun pleading.").

This is especially egregious here because Plaintiff comingles claims against all "Defendants" and does not include any allegations related to each Defendant's role or relation to the other. "Courts have been quick to reject [complaints] in which multiple defendants are lumped together, and with good reason; Rule 8 requires the complaint provide defendants with 'fair notice' of the claims asserted against them." *Bays v. Walmart Inc.,* 2022 WL 1297097, at *2 (S.D.W. Va. Apr. 29, 2022) ("Plaintiff's failure to state with specificity the acts allegedly performed by each defendant of which she now complains provides further support for granting defendants' motion.") (internal citation omitted). In fact, evidencing the lack of any due diligence prior to filing, it is public knowledge that Defendant Carothers Holding Company, LLC ("Carothers")[1] sold York to

---

[1] Carothers was formed on November 30, 2009, and was formerly known as Carothers Holding Company, Inc. as reflected in the December 18, 2007, Deed. *See* North Carolina Secretary of State Business Registration Information for "Carothers Holding Company, LLC" available at: https://www.sosnc.gov/online_services/Search/Business_Registration_profile?Id=9254356.

StoneMor North Carolina, LLC ("StoneMor") more than fifteen years ago and therefore could not plausibly (or even possibly) be engaged in the conduct alleged in the Complaint from 2007 to present. **Exhibit 1** (12/18/07, North Carolina Special Warranty Deed). For all these reasons, Plaintiff's Complaint should be dismissed in its entirety as an impermissible shotgun pleading.

### B. Plaintiff is not a proper party under North Carolina law to bring claims on behalf of deceased relatives or on behalf of a purported class of decedents.

Plaintiff's claims arise entirely out of or relate to alleged conduct directed towards decedents who were buried at York—not Plaintiff. *See, e.g.,* Compl. ¶¶3, 10(A), 16, 18(a)-(dd), 24-25, 34(a)-(xxx); 80 (j), 91, Count III, 107, 112, 116, 127, 136, and Count X[sic]. Plaintiff does not allege that he entered into a contract with any Defendant or that any Defendant engaged in any alleged conduct towards him, personally.[2] Not all heirs or beneficiaries can bring an action, and unless Plaintiff is properly authorized to proceed on behalf of a decedent's estate, he is not the proper party to bring such claims under North Carolina. As set forth in N.C.G.S.A. § 28A-18-1(a):

> Upon the death of any person, all demands whatsoever, and rights to prosecute or defend any action or special proceeding, existing in favor of or against such person, except as provided in subsection (b) hereof, shall survive to and against the personal representative or collector of the person's estate.

Critically, Plaintiff does not allege that he is the "personal representative or collector" under Chapter 28A of North Carolina General Statutes of any person buried at York. He therefore fails to allege that he is the proper party to pursue claims that are vested in decedents buried at York. *See, e.g., Camper v. Manning,* 2011 WL 2550820, at *4 (E.D. Va. June 27, 2011) (under North Carolina law, only the personal representative of the estate can pursue a breach of contract claims that were personal to the deceased during his lifetime); *Daniels v. Nat'l R.R. Passenger*

---

[2] Plaintiff merely alleges that he is an "heir at law and intended beneficiary of specific family members," (Compl. ¶2), who "entered into a contract with Defendants (*id.* at ¶3).

*Corp.*, 2011 WL 5870056, at *2 (E.D.N.C. Nov. 22, 2011) ("Plaintiff lacks capacity to sue" where she "fail[s] to show that she is either the personal representative or collector of the decedent"). Accordingly, because Plaintiff fails to allege that he is a personal representative or collector of a decedent's estate, the Complaint – or at a minimum, Counts I, II, III, V, VI, VIII, and X[sic] – should be dismissed.

Further, Plaintiff does not allege that he is the next of kin with the requisite authority to bring claims regarding the treatment of decedents buried at York. He therefore cannot assert any claim for emotional distress or other related damages. North Carolina law is clear that such standing is vested solely in the decedent's next of kin, starting with the decedent's surviving spouse, if any, and then "a majority of the surviving children over 18 years of age," as specified in N.C.G.S. § 130A-420(b)(2). *See, e.g., Norton v. Scotland Mem'l Hosp., Inc.*, 250 N.C. App. 392, 402 (2016) ("the next of kin has a quasi-property right in the body" and for harm to "a dead body the one entitled to its custody may recover compensatory damages"); *Dumouchelle v. Duke Univ.*, 69 N.C. App. 471, 474 (1984) ("As a general rule, only the person entitled to possession and disposition of a body may maintain an action for mishandling or mutilation of the body."). Therefore, Counts III, IV, VII, and VIII should be dismissed.

### C. Plaintiff's claims should be dismissed under Rule 9(b).

Plaintiff generally alleges that Defendants (even during decades when some or all were not involved in ownership or operation of York) engaged in "willful and orchestrated acts of concealment" (Compl. ¶30), "intentionally orchestrat[ed] the concealment of its fraudulent and reprehensible business practices . . . "(*Id.* ¶77), made "false and fraudulent representations in soliciting business by the Defendants. . . ." (*id.*), and otherwise generally engaged in "fraudulent" conduct. Compl. ¶78. Plaintiff adopts and incorporates these allegations into each cause of action.

6

In his UDTP claim, Plaintiff references fourteen different "affirmative promises," Compl., ¶80(a) through (n), and alleges that Defendants engaged in various intentional deceptive acts. Compl., ¶¶81-86. Further, Plaintiff alleges undefined "intentional and willful conspiracy" between the Defendants (Compl. ¶¶120, 127).

In cases alleging fraud, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." *Topshelf Mgmt., Inc. v. Campbell-Ewald Co*., 117 F. Supp. 3d 722, 725 (M.D.N.C. 2015) (quoting Fed. R. Civ. P. 9(b)). "Rule 9(b) refers to 'alleging fraud,' not to causes of action or elements of fraud." *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir.2008). Therefore, "[a] fraud-based UDTPA claim is subject to the Rule 9(b) heightened pleading standard, which requires that the plaintiff describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Withers v. BMW of N. Am., LLC*, 560 F. Supp. 3d 1010, 1019 (W.D.N.C. 2021); *see also Johnson v. Lendlease (US) Pub. P'ship LLC*, 2022 WL 2447091, at *15 (E.D.N.C. July 5, 2022) ("…Rule 9(b) applies to unfair and deceptive trade practices claims based on alleged misrepresentations."). Similarly, "[i]t is well established that Rule 9(b) applies to RICO claims where the alleged predicate acts involved fraud." *Bhambhani v. Innovative Health Sols., Inc*., 2021 WL 3367680, at *8 (D. Md. Aug. 3, 2021). "Courts have also held that RICO conspiracy causes of action sounding in fraud are required to be pled in accord with the specificity demanded by Rule 9(b)." *Id.*

Failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 783 n. 5 (4th Cir.1999). To meet Rule 9(b)'s requirements, "the plaintiff must sufficiently describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and

7

what he obtained thereby.'" *Topshelf Mgmt., Inc*. 117 F. Supp. 3d at 731 (internal citations omitted). This minimum factual description is "often referred to as the who, what, when, where, and how of the alleged fraud." *Id*. Plaintiff fails to meet these requirements in support of any of his claims based on fraud because he fails to adequately allege with particularity who made the misrepresentations or when or where the alleged false representations were made. *See Harrison*, 176 F.3d at 784 ("Mere allegations of 'fraud by hindsight' will not satisfy the requirements of Rule 9(b)"). *See, e.g., Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 80 (E.D.N.C. 2022) (plaintiff did "not plausibly allege when these misrepresentations took place, who made them, or the particularities of the misrepresentations' contents"). Therefore, all of Plaintiff's claims, which incorporate allegations of fraud, but most notably his UDTP (Count I), IIED (Count VII), and RICO claims (Count VII) should be dismissed.

### D. Plaintiff fails to state a RICO claim under N.C.G.S. Chapter 75-D1.

Plaintiff's RICO claim also fails because a party cannot offer "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's RICO claim does not provide any substantive explanation for the basis of the claim. Plaintiff simply alleges the elements of a RICO claim in North Carolina. Compl., ¶¶127, 128, 133. Plaintiff's "wholly conclusory allegations concerning predicate acts are nothing more than mere 'labels and conclusions.'" *Ruston v. United States*, 2012 WL 6608609, at *2 (E.D.N.C. Dec. 18, 2012). Plaintiff's "[c]onclusory allegations of a conspiracy do not demonstrate the 'meeting of the minds' element." *Id. Ostoyic v. Buchanan*, 2020 WL 6276063, at *2 (W.D.N.C. Oct. 26, 2020) ("Absent some factual enhancement, [RICO-based] allegations . . . are insufficient to satisfy *Twombly*."). Therefore, Count VIII claim should be dismissed.

8

### E. Plaintiff fails to state a claim for "unfair and deceptive trade practices."

In North Carolina, to state a UDTP claim, "a plaintiff must show that a defendant's words or conduct possessed 'the tendency or capacity to mislead' or create the likelihood of deception." *Hospira Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 702 (2009). "[P]uffery cannot form the basis of fraud or UDTPA claims." *Global Hookah Distribs. v. Avior, Inc.*, 401 F. Supp. 3d 653, 660 (W.D.N.C. 2019). Additionally, "where an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show actual reliance on the alleged misrepresentation in order to establish that the alleged misrepresentation proximately caused the injury of which plaintiff complains." *Crossroads Trucking Corp. v. TruNorth Warranty Plans of N. Am., LLC*, 2022 WL 3952221, at *6 (W.D.N.C. Aug. 31, 2022) (citations omitted).

Here, Plaintiff's UDTP claim is based on purported omissions and misrepresentations from York employees. *See* Compl. ¶¶20-26, 80-88. The Complaint, however, is entirely devoid of any allegation that Carothers, or any other Defendant, omitted or misrepresented any material fact to Plaintiff. At most, Plaintiff alleges that Defendants omitted from Plaintiff's relatives or unidentified third parties—not Plaintiff—"the facts and circumstances as set forth in this Complaint" and the "substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed." *Id.* ¶¶24-25, 80-88. Simply put, Plaintiff does not and cannot plausibly assert that he relied on supposed omissions and misrepresentations made to third parties but not to him. *See McCauley v. Hospira, Inc.*, 2011 WL 3439145, at *6 (M.D.N.C. Aug. 5, 2011) ("A fraud claim based solely on a purported misrepresentation to a third party, moreover, must fail as a matter of law."); *Wilson v. Dryvit Sys.*, 206 F. Supp. 2d 749, 755 (E.D.N.C. May 16, 2002) ("The court has been unable to find any North Carolina cases in which a plaintiff has been permitted to recover on a fraud claim for misrepresentations that were made to third parties.");

*D C Custom Freight, LLC v. Tammy A. Ross & Assocs.*, 273 N.C. App. 220, 221 (2020) (holding that alleged misrepresentations to a third party cannot sustain a UDTP claim because "actual reliance requires that the plaintiff have affirmatively incorporated the alleged misrepresentation into his or her decision-making process."). Additionally, Plaintiff fails to allege any conduct by Carothers or any other Defendant that could plausibly amount to an unfair or deceptive trade practice as to Plaintiff or his relatives. As to Plaintiff and his relatives, the Complaint merely alleges that York employees: "[R]epresented that each member of the family would be treated with dignity, respect, and the utmost care," Compl. ¶22; did not "disclose to any member of Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of Plaintiff's family members would not be followed," *id.* ¶24; and that "None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances set forth in this Complaint been disclosed," *id.* ¶25. However, nothing in the Complaint plausibly alleges that Carothers mistreated Plaintiff's relatives' burials and graves sites, or that any of the supposed risks materialized. Additionally, nothing therein suggested that the supposed representations, (Comp. ¶80.a-n), have "the tendency or capacity to mislead or create the likelihood of deception." *Hospira Inc.*, 194 N.C. App. at 702. Therefore, Plaintiff's UDTP claim (Count I) should be dismissed.

### F. Plaintiff fails to state a claim for breach of contract or third-party beneficiary contract.

In order to state a cause of action for breach of contract, Plaintiff "must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach." *Birtha v. Stonemor, North Carolina, LLC*, 220 N.C. App. 286, 296 (2012). At a minimum, the allegations of the complaint must at least provide general terms of the contract sufficient to determine whether a breach

10

occurred. *Id.* (dismissing plaintiff's breach of contract claims because, *inter alia*, the complaint lacked any identification of the terms of the contracts that were allegedly breached).

As an initial matter, Plaintiff does not allege that he is a party to any contract with any Defendant. Instead, Plaintiff vaguely alleges that each of his decedents entered a contract with unspecified Defendants to establish a final burial site and insure the permanent legacy and history of their respective families. Compl. ¶3. Plaintiff, however, fails to "provide even general terms of the contract[s] which [are] necessary to determine whether a breach occurred." *Birtha,* 220 N.C. App. at 296. Similarly, he refers to a "multiplicity of family members" buried at defendant's cemetery, but provides no names of these individuals, or the dates of their purported contracts or subsequent interments. Compl. ¶21. Accordingly, as in *Birtha,* Plaintiff fails to state a breach of contract claim because he is not a party to a contract and fails to sufficiently describe the purported contract, including the absence of sufficient information to identify the members of his family with whom the defendants purportedly contracted, the approximate dates of those contracts, and the specific provisions of the contracts that were purportedly breached. For the same reasons, his claim for "specific performance," (Count X) should also be dismissed. *Action Develop. Corp. v. Woodall*, 21 N.C. App. 567, 570 (1974) (party seeking specific performance must show entitlement to the relief being sought under the terms of a valid contract that has been breached).

Similarly, in order "[t]o establish a claim based on the third-party beneficiary contract doctrine, a complaint's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *Hardin v. York Memorial Park*, 221 N.C. App. 317, 324 (2012). In *Birtha*, the court held that the same deficiencies in plaintiff's breach of contract claim also doomed the third-party beneficiary breach of contract claims. 220 N.C. App. at 296. As in

11

*Birtha,* Plaintiff merely provides a threadbare recital of the elements of a third-party beneficiary breach of contract claim. *See* Count IV. These allegations are insufficient under *Twombly/Iqbal.*[3] Additionally, Plaintiff offers no allegations demonstrating that any contractual obligation to properly maintain the gravesites of his ancestors were made for *his* direct benefit and "peace and contentment" (Compl. ¶87), as opposed to that of his ancestors who bought the plot, thus making this plaintiff's interest in and benefit from the contract too attenuated to support a valid third-party beneficiary breach of contract claim. Therefore, Count VI should also be dismissed.

### G.    Plaintiff fails to state a claim for NIED or IIED.

To state a claim for negligent infliction of emotional distress the plaintiff must plead (among other things) that it was reasonably foreseeable that the defendant's negligent conduct would cause severe emotional distress, and that the conduct did in fact cause the plaintiff severe emotional distress. *Hardin,* 221 N.C. App. at 327. Similarly, a claim for intentional infliction of emotional distress requires "extreme and outrageous conduct" which causes "severe emotional distress." *Guthrie v. Conroy*, 152 N.C. App. 15, 21 (2002); *Waddle v. Sparks,* 331 N.C. 73 (1992) (applying definition of "severe emotional distress" used in NIED to IIED). "In this context, the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 445, 449 (2003).

Here, Plaintiff offers nothing more than conclusory allegations reciting the elements of a cause of action for NIED and IIED. Compl. ¶¶103-104, 119-123.  It is well-established under

---

[3] *Iqbal,* 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

North Carolina law that a plaintiff cannot sustain an NIED or IIED claim merely by alleging that emotional harm is "severe" without "identify[ing] a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Moschos v. Moschos*, 882 S.E.2d 401, 404 (N.C. App. Ct. 2022) (dismissing IIED claim for "fail[ure] to allege sufficient facts concerning the type, manner, or degree of severe emotional distress Plaintiff claims to have experienced"); *Sanders v. Duke Energy Carolinas, LLC*, 2022 WL 282567, at *3 (W.D.N.C. Jan. 31, 2022) (dismissing NIED claim because "there is no factual allegation to support the alleged fact of severe emotional harm . . . other than the generalized, conclusory statement that the harm occurred and was 'reasonably foreseeable'"). Threadbare recital of a cause of action's elements, supported by mere conclusory statements, is insufficient to withstand a motion to dismiss. Accordingly, Counts IV and VII should be dismissed.

### H. Plaintiff fails to state a claim for negligence.

A negligence claim requires plaintiffs to show "(1) the defendant owed the plaintiff a duty of reasonable care, (2) the defendant breached that duty, (3) the defendant's breach was an actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages as the result of the defendant's breach." *Gibson v. Ussery*, 196 N.C. App. 140, 143 (2009). Plaintiff fails to allege any cognizable duty owed to him. Plaintiff merely asserts that his relatives are buried at York, he is the "beneficiary of the legacy and family history," and the Defendants "owed and presently owe a duty to this Class"—not Plaintiff—"to preserve the sanctity and sepulcher of grave sites." Compl. ¶¶23, 97. However, there is no recognized duty to a "beneficiary of the legacy and family history" to maintain a grave space, particularly when he does not own, and is not the authorized representative of the owner of, the grave space. Further, Plaintiff does not allege that he is next of kin of any decedent at York, and therefore he cannot maintain a claim for negligent mistreatment

of a body. *Dumouchelle,* 69 N.C. App. at 474 ("As a general rule, only the person entitled to possession and disposition of a body may maintain an action for mishandling or mutilation of the body.") Plaintiff also fails to allege any breach of a duty owed to him. Although the Complaint alleges a parade of horribles supposedly occurring at York *generally*, it is entirely devoid of any allegations plausibly asserting negligent conduct directed at Plaintiff or even his relatives. At most, Plaintiff merely alleges that "there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed." Compl. ¶ 24. However, Plaintiff does not plausibly allege that any such risk ever materialized. And even if those risks had materialized, then any potential breach would relate only to unidentified third parties—not Plaintiff. Therefore, Plaintiff's negligence claim (Count III) should be dismissed.

## I. Plaintiff fails to state a claim for trespass.

To state a claim for trespass on real property the plaintiff must allege that he or she was either actually or constructively in possession of the land at the time the alleged trespass was committed. *See Matthews v. Forrest*, 235 N.C. 281, 283 (1952). Here, Plaintiff has not plausibly alleged that he had actual or constructive possession of any specific plot at the time any alleged trespass was committed, nor does he allege with any degree of specificity what acts of trespass were allegedly committed on his ancestors' graves, or even if any acts of trespass were committed on his ancestors' graves. Thus, under *Twombly* and *Iqbal* pleading standards, Plaintiff's trespass on real property claim fails to state a plausible cause of action and Count V should be dismissed.

## J. Plaintiff's claims against Carothers are barred by the statute of repose and therefore his claims should be dismissed with prejudice.

Plaintiff's claims for personal injury or physical damage to property are subject to North Carolina's statute of repose, which provides that "no cause of action shall accrue more than 10 years from the last act or omission of defendant giving rise to the cause of action." N.C. Gen. Stat.

14

§ 1-52(16). "Unlike an ordinary statute of limitations which begins running upon accrual of the claim . . . the period contained in the statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." *Black v. Littlejohn*, 312 N.C. 626, 633 (1985). "Thus, the repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue." *Id.* It is well-established that N.C. Gen. Stat. § 1-52(16) applies to injuries involving emotional harms. *Doe v. College*, 2017 WL 897654, at *2 (N.C. App. Ct. March 7, 2017) (holding that N.C. Gen. Stat. § 1-52(16) barred all claims because they "sought recovery of damages for personal injury suffered by plaintiff, specifically, severe emotional distress").

Here, all of Plaintiff's purported claims against Carothers are barred by the statute of repose under N.C. Gen. Stat. § 1-52(16). To the extent Plaintiff alleges any harm, it is based on only general allegations of "emotional distress" or "physical damage to property." Compl. at ¶¶14, 15, 33, 34(a)-(xxx), 87, 92, 97-99, 102-105, 107-109, 115, 120-123, 136, 141-144. Therefore, each of Plaintiff's claims are subject to the 10-year statute of repose. Additionally, the public record establishes that any alleged conduct or omissions by Carothers could not have occurred within the last 10 years. Carothers conveyed York Memorial to StoneMor in December 2007—more than 15 years ago. Ex. 1 (Public Recorded Deed). The Court "may properly take judicial notice of 'matters of public record'" on a Rule 12(b)(6) motion to dismiss without converting the proceeding into a motion for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *Mullis v. First Charter Bank*, 2013 WL 3899888, at *3 (W.D.N.C. July 29, 2013) (considering a public deed on a Rule 12(b)(6) motion). Because the last act by Carothers—if any—giving rise to Plaintiff's claims necessarily occurred more than 15 years ago, the 10-year statute of repose under N.C. Gen. Stat. § 1-52(16) is "unyielding and absolute barrier" to Plaintiff's

15

claims and they should be dismissed. Amendment would be futile, so the claims against Carothers should be dismissed with prejudice.

### K. Plaintiff's claims cannot satisfy Rule 23. Therefore, the putative class claims should be dismissed or stricken, without leave to amend.

Pursuant to Fed. R. Civ. P. 23(c)(1)(A), a court must make a determination on class certification "at an early practicable time." Indeed, Rule 23 mandates an early consideration of class certification, because delay in consideration of the issue of class certification would "introduc[e] needless and avoidable complexity into an already complex case." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009). The Supreme Court, in *Gen. Tel. Co. of the Southwest v Falcon*, 457 U.S. 147, 160 (1982), long ago recognized that "sometimes [class certification] issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." To this end, where it is apparent from the face of the complaint that a class action cannot be maintained, as is true here, it is proper to strike or dismiss the class allegations *both before discovery and before the plaintiff moves for certification. See Flint v. Ally Fin., Inc.*, 2020 WL 1492701, at *3-5 (W.D.N.C. Mar. 27, 2020) (granting motion to strike class allegations); *Williams v. Potomac Family Dining Grp Operating Co., LLC,* 2019 WL 5309628, at *4-8 (D. Md. Oct. 21, 2019) (same); *Waters v. Electrolux Home Products, Inc.*, 2016 WL 3926431, at *4 (N.D. W. Va. July 18, 2016) ("a court may grant a motion to strike class allegations where the pleadings make clear that the proposed class cannot be certified and no amount of discovery would change that determination").

When the Court considers a motion to dismiss or strike class allegations prior to discovery, it should be analyzed under "the familiar standard of review for motions to dismiss under Rule 12(b)(6)." *Bigelow v. Syneos Health, LLC,* 2020 WL 5078770, at *4 (E.D.N.C. Aug. 27, 2020);

*Williams*, 2019 WL 5309628 at *5.[4] As set forth below, Plaintiff's complaint makes plain that he cannot, as a matter of law, adequately allege a class action. The *very nature* of Plaintiff's allegations—primarily involving mental distress by those who have allegedly suffered a loss of opportunity to honor their deceased loved ones (Compl. ¶¶12, 14, 33)—is inherently individualized and personal. *See Perry v. Culliper,* 69 N.C. App. 761, 763 (1984) (class certification denied in case involving desecration of grave sites, because the "mental suffering" from putative class members will "vary a great deal among the parties"). There is no need for the parties or this Court to waste resources on discovery which will not, under any circumstances, substantiate Plaintiff's purported class.

> **i.    Plaintiff's proposed class cannot satisfy the requirements of Rule 23.**

Fed. R. Civ. P. 23 requires that a plaintiff meet two rigorous requirements. A plaintiff must first meet the requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311 (4th Cir. 2006)); *Flint*, 2020 WL 1492701 at *3. Once these requirements are met, the plaintiff must demonstrate that "questions of law or fact common to the class predominate over any questions affecting individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As set forth below, it is obvious from the face of the Complaint that Plaintiff cannot meet the requirements of Rule 23(a) or (b).

---

[4]    Plaintiffs' class allegations must meet pleading standards enunciated in *Twombly* and *Iqbal*. *Scott v. Family Dollar Stores, Inc.,* 733 F.3d 105 (4th Cir. 2013).

### 1. Individual factual issues predominate over common issues.

Where resolution of a question "turns on consideration of the individual circumstances of each class member," it is not "common" and class certification is inappropriate. *Flint,* 2020 WL 1492701 at *4; *Rose v. SLM Fin. Corp.,* 254 F.R.D. 269, 272 (W.D.N.C. 2008); *Thorn,* 445 F.3d at 311. The predominance element tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Where resolution of the liability of each class member "turns on consideration of the individual circumstances of each class member," predominance is lacking and certification is inappropriate. *See Lienhart v. Dryvit Sys., Inc*., 255 F.3d 138, 149 (4th Cir. 2001); *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 254 F.R.D. 68, 75 (E.D.N.C. 2008) (claims failed to satisfy predominance requirement where causation issues and affirmative defenses would "dominate most every class member's case.")

Here, Plaintiff's putative class includes thousands of purchasers of burial rights at York Memorial Cemetery over a span of more than fifty (50) years. Plaintiff alleges that the Defendants "failed to disclose and have intentionally concealed **thousands of material and substantial facts**" from the class members, listing more than **seventy-six (76)** "misdeeds" committed by the Defendants. Compl. ¶¶18(a)-(dd); 34(a)-(xxx)). Plaintiff fails to allege that he suffered each (or any) of these individual harms, let alone how he can represent a class of thousands who may or may not have suffered some, all or none of the same harms, and which acts may have been committed by different Defendants. Indeed, it would be impossible for any one class member to suffer each of these injuries, as many of them are contradictory. By way of example, a class member whose family member was buried in an incorrect gravesite (¶34 (g)) cannot also be a class member whose family member's grave "cannot be identified" (¶34 (j)), or a class member where

18

a body has been located but cannot be identified (¶34 (s)), or a class member whose baby was buried on the "hill of babies" (¶34 (v)). Plaintiff alleges that he has a "multiplicity" of family members buried at the cemetery. Compl., ¶20. It would be highly individualized to identify the alleged "harms" suffered by Plaintiff's own "family members." Given these highly-fact specific allegations, this Court would be forced to conduct mini-trials for each of the thousands of class members to determine which, if any, of these "misdeeds" they suffered. Nearly every inquiry regarding the proximate cause of Plaintiff's and the putative class members' alleged injuries will be unique. It is clear from the face of the complaint that, as a matter of law, Plaintiff's class cannot be certified.

        **2.**      **The proposed class members' damages are also highly individualized.**

As recognized by the court in *Perry,* the very nature of Plaintiff's claims renders the measure of damages for each putative class member individualized. 69 N.C. App at 763. When damages are highly individualized, it weighs against finding a predominance of issues under Rule 23(b)(3). *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 342-43 (4th Cir. 1998); *Talley v. ARINC, Inc.,* 222 F.R.D. 260, 270 (4th Cir. 2004) (reaffirming the well-settled principle that cases requiring individualized proof of damages fail to satisfy the predominance requirement.) Here, given the widely disparate circumstances of the putative class members and the nature of their alleged injuries and relief they seek, damages cannot be ascertained on a class-wide basis. Claims for damages will focus on facts and issues specific to individuals rather than the class as a whole, including which of Defendants' alleged "wrongful acts" each class member (or his or her family member or "other relation") was subjected to, and how it affected each class member financially, emotionally and physically.

19

This is true especially for Plaintiff's claims for emotional distress. The Fourth Circuit has recognized that due to their individualized nature, emotional distress claims "are likely to be so variable and fact-specific that damages issues overwhelm liability, precluding class certification." *Doe v. Chao*, 306 F.3d 170, 183 (4th Cir. 2002), *cert. denied*, 539 U.S. 957 (2003); *See also Allison v. Citgo Petrol Corp.,* 151 F.3d 402, 417 (5th Cir. 1998) ("The very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy."); *Brandner v. Abbott Lab., Inc.,* 2012 WL 195540, * 5 (E.D. La. Jan. 23, 2012) ("Because the determination of whether each member suffered emotional distress turns on a highly individualized assessment, questions of fact regarding individual members predominate over common issues of fact.") Because certification is facially inappropriate here, the class allegations should be stricken.

> 3. **Plaintiff's claims are not typical of those of the putative class members and he is not an adequate class representative.**

Rule 23(a)(3) requires that, in order to maintain a class action, a plaintiff must show that his claims "are typical of the claims. . . of the class." A class representative must suffer the same injuries as class members. *Gen. Tel. Co.*, 457 U.S. at 156; *Soutter v. Equifax Info. Serv., LLC,* 498 Fed. Appx. 260 (4th Cir. 2012) ("typicality 'goes to the heart of a representative[s] ability to represent a class.'"); *In re Cree, Inc. Sec. Litig.,* 219 F.R.D. 369, 372 (M.D.N.C. 2003) (typicality requires that a lead plaintiff suffer the same injuries as the class due to the defendant's conduct). The presence of individualized issues makes it difficult for a class representative to demonstrate typicality. *Electrolux,* 2016 WL 3926431 at, *5; *Ross-Randolph v. Allstate Ins. Co.,* 2001 WL 36042162, at *5 (D. Md. May 11, 2001) (no typicality where the court must make "specific, individual inquiries as to each of the class plaintiffs regarding the critical issues").

As shown above, Plaintiff seeks to represent a broad class whose circumstances are far different than his. Each class member may have suffered different injuries, ranging from lost bodies of family members to the purchase of burial plots in which unknown bodies were buried. It is simply impossible for Plaintiff to adequately represent any class member based on their own unique set of circumstances. Indeed, Plaintiff is not even a member of the class he seeks to represent. He does not allege that he purchased interment rights, entered into any agreement authorizing any members of his family to be interred, or that he is an "authorized representative" of either of those. Rather, he alleges that he (as an "heir" and an "intended beneficiary") has a "multiplicity" of unnamed family members buried at York. (Compl., ¶21). Plaintiff does not even allege that he was injured in any of the multitude of ways he claims the class members were injured. He simply alleges that there was a "substantial risk" that his (unspecified) family members' final wishes would not be followed. *Id.* at ¶24.

4.   **A class action is not a superior method to adjudicate this dispute because the individuals' interest in conducting separate lawsuits is evident by the separate suit that has already been filed.**

As noted above, certification under Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." In evaluating the superiority of a class action, a court should "compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267, 274 (4th Cir. 2010). Rule 23(b)(3)(A)-(D) includes a non-exhaustive list of factors pertinent to a court's "close look" at the predominance and superiority criteria, including: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or

against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Where individualized issues overwhelm common issues, as here, the difficulties in managing the class defeat superiority. *Farrar*, 254 F.R.D. at 74, n.4 (noting that the "difficulties in managing a class action in which the court would need to address individual issues over and over again would far outweigh any marginal increase in judicial efficiency that might result from class certification"); *Gresser v. Wells Fargo Bank, N.A.,* 2014 WL 1320092, *9 (D. Md. March 31, 2014) (individualized inquiries necessary to resolve class members' claims rendered class "unmanageable"). Where individuals have incentives to pursue their own legal interests, a class action is not a superior mechanism to prosecute the case. *See Amchem*, 521 U.S. at 615–16; *Plotnick v. Comp. Sci. Corp. Deferred Comp. Plan for Key Exec.*, 182 F. Supp. 3d 573, 590 (E.D. Va. 2016) ("courts routinely conclude that the class action is not a superior mechanism where individuals have sufficient incentives to pursue their own legal redress"). Here, it goes without saying that the putative class members will have an interest in pursuing any potential claims based upon the burial and honoring the last wishes of their deceased loved ones. Indeed, Plaintiff's counsel in this case has **already** filed a nearly identical lawsuit in the same state court asserting the same causes of action on behalf of five (5) individual Plaintiffs, styled *Natalia Little et al. v. Carothers Holding Co., LLC et al.,* No. 23-CVS-4924. *See* DE 1-5. The Complaint is a textbook example of a case that is not suitable for class certification. Plaintiff's putative class claims should be dismissed.

### ii. Plaintiff's proposed class is also impermissibly overbroad because it includes putative class members that lack standing.

A class definition is over-inclusive if it contains members who, like many of the putative class members in this case, have no claims. *Rosedale v. CarChex, LLC,* 2020 WL 998740, *4 (D.

Md. Mar. 2, 2020); *Dykes v. Portfolio Recovery Assoc., LLC*, 2016 WL 346959, at *3 (E.D. Va. Jan. 28, 2016) ("Courts have refused to certify a class 'if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.'"). In *Rosedale,* Plaintiff sought to certify a class of "purchasers" of vehicle service contracts ("VSCs") from the defendant, claiming that they made misrepresentations in the scope of coverage under the agreements. *Id.* at *4. In granting defendant's motion to dismiss the class allegations before discovery, the court held that plaintiff's attempt to certify a class of all "purchasers" was "grossly overbroad" and included purchasers who suffered different injuries from plaintiff, or no injuries at all. *Id.* at *5. *See also Kemblesville HHMO Cntr., LLC v. Landhope Realty Co*., 2011 WL 3240779, at *5 (E.D. Pa. July 28, 2011) (holding that the class was "far too broad" because it "include[d] properties simply because they exist, irrespective of any actual connection to Defendants' activities" and because it "include[d] individuals who are without standing to maintain the action on their own behalf").

No discovery is necessary to show that Plaintiff's proposed class is grossly overbroad and necessarily includes putative members who have suffered injuries different from those of the Plaintiff, or no injuries at all. The class definition includes *all* purchasers of interment rights or who entered into agreements "authorizing" the interment of their family members (or their "authorized representatives") – over a span of half a century – *regardless* of whether they have used or needed the burial services. The vast majority of the "harms" alleged by Plaintiff necessarily depend upon a putative class member being buried at the cemetery. Indeed, Plaintiff's suit is premised on the "eternal loss of opportunity for this Class to know and feel confident that the final resting place of their beloveds are indeed the final resting places of their loved ones." Compl., ¶14;, Compl., ¶87 (alleging that the class has suffered the "loss of the ability to maintain peace and contentment as well as the sanctity of their deceased loved ones. . .). The class further includes

23

"purchasers" who may be satisfied with where their loved ones are buried. In other words, the class includes thousands of members simply because they "purchased" or "authorized" interment rights, "irrespective of any actual connection to Defendants' activities." *See Kemblesville*, 2011 WL 3240779 at *5. And determining which putative class members have suffered injuries is highly individualized. Plaintiff's allegations plainly demonstrate that this lawsuit is ill-suited for adjudication as a class action.

### iii. Members of the putative class are not "readily identifiable."

An essential prerequisite to certification under Rule 23 is that the class is adequately defined so that the members of the class are "readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). In other words, a proposed class definition must be stated in *objectively* definable terms. *Id.* ("A class cannot be certified unless a court can readily identify the class members in reference to objective criteria.") Where it is impossible to identify class members without "extensive and individualized fact-finding or mini-trials," a class cannot be certified. *Id. See also, Krakauer v. Dish Network, LLC,* 925 F.3d 643, 654-55 (4th Cir. 2019); *Anderson v. Laboratory Corporation of America Holdings,* 2023 WL 1970953, *14 (M.D.N.C. Feb. 13, 2023) (class not ascertainable where plaintiffs "failed to identify an objective and administratively feasible way" to identify class members).

Here, Plaintiff's allegations demonstrate the breadth of the class (set forth in ¶10), which he claims affects a "substantial population of the African American community in Charlotte-Mecklenburg County, North Carolina" and includes "**the gamut of members of the African American community ranging from prominent historical Civil Rights leaders of the 1960's, to business leaders, as well as educators, cafeteria workers, domestic workers and even infants**." (Compl. ¶11) (emphasis added). Plaintiff further alleges that "York Memorial Cemetery,

24

has sold more than 40,000 burial plots." Compl. ¶19. This amorphous and wide-ranging class definition is fundamentally and irreparably defective because its members are not "readily identifiable," if they are identifiable at all. Identification of the class members here would require a multi-pronged, individualized examination for each of the potentially tens of thousands of putative class members. Indeed, the class definition provides more questions than answers as to who the class members are. Even if individuals who "purchased" interment rights or entered into agreements "authorizing" interment rights for their "relations" could be identified – which they cannot – the inquiry would not end there. Further inquiry would have to be made as whether any such individuals are still living or deceased and, if any such individuals are deceased, whether they have an "authorized representative" and who any such "authorized representatives" might be. The Complaint does not define who is included in "family members or other relations," what an "authorized representative" is, or who can be included as an "authorized representative." It would be impossible to identify the members of the proposed class, let alone in an objective manner. This defect alone defeats class certification, which cannot be overcome. Therefore, the class claims should be dismissed or stricken.

## CONCLUSION

As set forth herein, the Complaint violates basic pleading rules and fails to state a cause of action. But, most critically, Plaintiff cannot overcome North Carolina's 10-year statute of repose in connection with his claims for property damage or emotional distress against Carothers. Therefore, his claims should be dismissed with prejudice, without leave to amend. Likewise, Plaintiff's highly individualized theories demonstrate that this case cannot meet Rule 23's threshold requirements. Accordingly, the class allegations should be dismissed or stricken with prejudice and without leave to amend.

Date: April 21, 2023.

Respectfully Submitted,

/s/ William M. Butler
Anthony T. Lathrop
N.C. Bar No. 15941
William M. Butler
N.C. Bar No. 49116
**MOORE & VAN ALLEN PLLC**
100 North Tryon Street, Floor 47
Charlotte, NC 28202-4003
Telephone:      (704) 331-2455
Facsimile:      (704) 339-5964
Email: tonylathrop@mvalaw.com
           billbutler@mvalaw.com

       and

WEINBERG WHEELER
HUDGINS GUNN & DIAL, LLC

/s/ Alexander Heydemann

Nicholas P. Panayotopoulos
Georgia Bar No. 560679
(Pro Hac Vice to be filed).
Alexander Heydemann
Florida Bar No. 0111544
(Pro Hac Vice to be filed)
Jennifer Adler
Georgia Bar No. 585635
(Pro Hac Vice to be filed)
3344 Peachtree Rd.
Suite #2400
Atlanta, GA 30326
T. 404-591-9662
F. 404-875-9433
aheydemann@wwhgd.com
jadler@wwhgd.com
dthompson@wwhgd.com

***ATTORNEYS FOR DEFENDANT CAROTHERS HOLDING COMPANY, LLC***

26