| | |
|---|---|
| **HUBERT SIMPSON, LYNDA MASON,** | ) |
| **ALLISON MONTGOMERY**, **PIERRE DAVIS,** | ) |
| **LAVONNE JONES HAYNES ANDERSON,** | ) |
| **MARIO BLACK, ANDREA BYERS, BURLIN** | ) |
| **ALLEN, SR., BURLIN ALLEN, JR., and** | ) |
| **JACQUELINE W. McCLINTON, individually,** | ) |
| **and on behalf of themselves and all others** | ) |
| **similarly situated,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| **CAROTHERS HOLDING** | ) |
| **COMPANY, LLC, doing business as York** | ) |
| **Memorial Cemetery, a/k/a York Memorial** | ) |
| **Park, STONEMOR GP, LLC,** | ) |
| **STONEMOR, NORTH CAROLINA, LLC** | ) |
| **STONEMOR NORTH CAROLINA** | ) |
| **FUNERAL SERVICES, INC., STONEMOR,** | ) |
| **NORTH CAROLINA SUBSIDUARY, LLC,** | ) |
| **STONEMOR PARTNERS, LP,** | ) |
| **Defendants.** | ) |

**PLAINTIFFS FIRST VERIFIED AMENDED COMPLAINT**
**(JURY TRIAL REQUESTED)**

Plaintiffs, complaining of Defendants, allege and says that the Plaintiffs are natural

persons over the age of eighteen years and bring this action on behalf of themselves and all other

persons similarly situated.

## <u>INTRODUCTION</u>

1.      As a matter of common law and public policy, North Carolina has held in great

reverence the resting places of the dead as hallowed ground. *Mills v. Cemetery Park Corp.,*

1

242 N.C. 20 (1955). Our Courts have long held that the preservation of the sanctity of grave sites is a proper application of the police power of the State of North Carolina. *Shields v. Harris*, 190 N.C. 520, 527, 130 S.E. 189, 192 (1925). In fact, the Defendants, jointly and severally, have represented to members of the consuming public that "Cemeteries are beautiful and "spiritual spaces" (emphasis added) filled with gravestone symbolism." (York Memorial Park, Charlotte, NC, November24, 2021.)

2. The Plaintiffs are the next of kin and intended beneficiaries of specific family members buried at Defendant, York Cemetery, commonly referred to as "York" in the Charlotte-Mecklenburg Community, and represent all other individuals similarly situated.

3. Each of the Plaintiffs decedents entered into a contract with the Defendants for the purpose of establishing the final burial site of the individual decedents of the Plaintiffs, so as to insure the permanent legacy and history for their respective families. These contractual agreements are commemorated in the Certificate of Internment Rights which the Defendants issued to the Plaintiffs, as the next of kin of their decedents and class of persons whom Plaintiffs represent, at the time in which these contractual agreements were reached. These agreements specifically indicate the exact location of the burial site located within each Certificate of Internment.

4. The contracts between the decedents of the Plaintiffs and Defendants, are valid and enforceable. Further, the material language in the contracts of all members of this class are uniform; the text of the agreements of the members of these representatives and the class which they represent are substantially identical; all contracts were executed by the decedent or their next of kin; the purpose of all contracts are the same; and the relationship among all class representatives and the class which they represent as the Defendants, jointly and severally, are the same.

5.      In this regard, the contracts entered into between the decedents of the Plaintiffs and York Cemetery were for the direct and intentional benefit of the Plaintiffs, to specifically, establish a final resting place to guarantee and assure the legacy of the Plaintiffs and their families

6.  The Defendants, are engaged in the business of providing funeral services to the predominately African American community, throughout Mecklenburg County, North Carolina.  The York Cemetery was established as a burial ground primarily for the burial of African American persons during the "Jim Crow segregated history" of Mecklenburg County, North Carolina. Accordingly, the vast majority of persons buried at Defendant Cemetery are of African American descent.  Since its founding, upon information and belief, York has been associated with the burial of more than 28,000 persons.  The acts of each Defendant are imputed to the acts of the other Defendants under the Law of Agency, as the contractual obligations to the class representatives and members of this class are imputed to each of the Defendants, jointly and severally.

7.  The consuming public who are the primary purchasers of cemetery plots at York Cemetery are members of the African American community in Mecklenburg County and beyond.

8.  The demographics of greater Mecklenburg County is one third African American.

9.  Mostly all African Americans within Mecklenburg County have a personal affiliation or association with York Cemetery because of the vastness and numerosity of African Americans from this community who are buried there.

10.   A plain, cursory and common sense view of the placement of markers at York cemetery reveals that the markers are misplaced and are not located in accordance with the spacing needed for bodies of deceased persons to be buried. This is because some markers are horizontally placed; other are

vertically placed; all in the same areas in close proximity so as not to leave adequate room for the

burial sites to not suffer encroachments from each other.

11.  Upon information and belief, an expert in cemetery layouts will conclusively establish that the

disjointed and erratic placement of markers, and the burial sites which they purportedly represent as

the burial sites of deceased persons, will prove that the gross deviation from the

standards of cemetery care and placement of bodies, by these Defendants affects virtually all of the

gravesites at Defendant cemetery.


### CLASS OF PERSONS REPRESENTED BY PLAINTIFFS

12. The Plaintiffs bring this action on behalf of themselves, and all other persons,

similarly situated and represent the categories of class of persons who are identified

as:

(A).      All persons who purchased interment rights or services at York

Memorial Cemetery from January 1, 1969, to the present; and/or;

(B).      All persons who entered into Agreements authorizing their family

members or other relations to be interred at York Memorial Cemetery from

January 1, 1969, to the present; and/or;

(C).   The authorized representative(s) or next of kin of deceased persons who would have

otherwise been a member of those persons set forth in Category (A) or Category

(B) above.

(D) The number of persons constituting this class are so numerous as to make it

impracticable to bring them all before the court, the named Plaintiffs, will insure the

4

adequate representation of all persons similarly situated.

13. This class of persons represent and affect a substantial population of the African American community in Charlotte-Mecklenburg County, North Carolina. Such class of persons include the gamut of members of the African American community ranging from prominent historical Civil Rights leaders of the 1960's, to business leaders, as well as educators, cafeteria workers, domestic workers and even

infants.

14. The misdeeds of the Defendants as evidenced by their systematic practices as set forth below are further exacerbated because it has drastically deprived members of this Class from the necessary common law rights of the preservation of grave sites and their locations for the benefit of loved ones.

15. These acts are exacerbated because the African American community historically lacks the ability to determine the origin of their roots in America, including, Charlotte Mecklenburg County. The proper designation of burial sites in the African American community is of utmost significance to the historical legacy and posterity of this Class of persons. **That for many members of this Class who purchased cemetery lots at York Cemetery, their purpose was to establish a permanent home for themselves on their way to heaven.** (emphasis added)

16. The acts of these Defendants, jointly and severally, have resulted in the eternal loss of opportunity for this Class to know and feel confident that the final resting place of their beloveds are indeed the final resting places of their loved ones.

17. These acts of Defendants, jointly and severally, further constitute the loss of the property rights of this Class to reclaim heritage after their loved ones have endured the sorrows and struggles of this world.

18. Further, to many Members of this Class, the purchase and ownership of a burial site, is the only real property in fee simple, that Members of this Class have ever owned or ever will own.

19. The Plaintiffs and all other persons similarly situated who comprise this Class relied upon and believed that the public information widely disseminated by the Defendants was truthful, honest, fair, and ethical. This belief was the sole reason in making their decisions to purchase lots at Defendant's cemetery.  These representatives of this class on behalf of themselves as well as the class of Plaintiffs whom they represent have believed the massive representations of these Defendants throughout the Mecklenburg County community that by purchasing family plots "well in advance provides greater choices and guaranteed locations, rather than a limited selection …" *One of the most recent of these misrepresentations by Defendants was made on July 29, 2020 (Facebook*.)  This class of persons also believed the historical representations of these Defendants, jointly and severally, that by purchasing plots at York Cemetery that "your legacy is carried on forever". (June 17, 2020, Facebook)

20. The pre-filing factual investigations by the Plaintiffs of former employees between 1969 and the present, on behalf of themselves and all others similarly situated as the Plaintiffs, provide the Plaintiffs with the good faith belief that the Defendants, jointly

and severally, during this period and up to the present have failed to disclose and have intentionally concealed thousands of material and substantial facts that relate to all grave sites at York Memorial Cemetery, due to Defendants failure to properly maintain records of plots sold and those utilized for burials, including, but not limited to:

(a) desecrating of graves by conducting exploratory digging of graves with and without backhoes in efforts to identify persons buried in grave sites; (b) by failing to obtain authorization or consent of the next of kin of members of this Class to conduct exploratory digs with and without backhoes in efforts to locate and identify persons buried in grave sites in violation of North Carolina General Statute § 14-149, *et seq*.; (c) the cutting of patches of ground no less than three inches by three inches and at least three feet deep from grave sites; (d) failing to obtain authorization or consent of members of this Class to remove patches of earth of no less in size of 3 inches by 3 inches by three feet deep in violation of North Carolina General Statute § 14-149, *et seq*.; (e). conducting sonograms to locate buried bodies resulting in the discovery and revelation of graves encroaching other graves; (f). failing to inform members of this Class that sonograms reveal that grave sites have been encroached upon by other grave sites; (g) placing markers on the wrong gravesite of the persons identified on the markers because Defendant does not have accurate records to reflect where bodies are buried; (h) failing to inform members of this Class that markers are placed on the wrong grave sites; (i). failing to inform members of this Class that bodies will not be buried according to the burial sites purchased and identified in the contracts of sale; (j). failing to inform members of this Class that the location

7

of the burial sites of their deceased cannot be identified; (k). by digging up bones of deceased persons while digging other graves for burial because bodies have been previously buried in the wrong burial plots; (l). failing to inform the families of the bones which were dug up as to what has taken place; (m). puncturing vaults numerous times while probing to identify persons buried; (n). failing to notify members of Class that vaults of their loved ones have been punctured; (o). double selling grave sites and failing to maintain records of the double sales; (p). failing to inform members of this Class of the likelihood that plots purchased may be or had been double sold; (q). failing to maintain records of deeds which correlate with purchased grave sites; (r). failing to inform members of this Class that records of deeds have not been maintained to correlate with the purchased grave sites; (s). locating buried bodies which cannot be identified because of improper record keeping; (t). failing to inform members of this Class that burials cannot be identified at the Cemetery because of poor record keeping; (u). burying babies on top of each other over a period of years, to the extent that an area of the cemetery is commonly referred to among workers as "the hill of babies"; (v). failing to disclose to family members searching for the grave site location of their deceased babies, that babies were buried on top of each other in an area commonly referred to as "the hill of babies"; (w). failing to disclose to family members searching for the location of their deceased babies that the location of the deceased baby could never be determined; (x).  double selling tandem sites;(y). failing to disclose to members of this Class that tandem grave sites had been double sold; (z) failing to disclose to members of this Class that members of the same family would not be placed in tandem burial sites next to each other because tandem sites had been

8

double sold; (aa). discovering grave sites with burials already having taken place while undergoing the process of preparing for the burial of the respective owners of the particular grave sites; (bb). failing to inform this Class of persons that grave sites possessed the burials of bodies which are routinely discovered while undergoing the process of preparing for the burial of respective owners of the particular grave sites; (cc). burying persons in grave sites different from the contracted plots although this practice created persons not being buried next to their loved ones as contracted; (dd). failing to inform Members of this Class that persons were not buried next to their loved ones as the original contracts allowed.

21. Upon information and belief, Defendant, York Memorial Cemetery, has sold more than 40,000 burial plots.

## RESPRESENTATIVE PLAINTIFFS

The representative members of this Class are as follows:

## HUBERT SIMPSON

22. Plaintiff, Hubert Simpson, is a citizen and resident of Charlotte, North Carolina.

23. Said Plaintiff has a multiplicity of family members buried at Defendant Cemetery which include his cousins and great aunts and uncles.

24. Throughout the burial of all of Plaintiff's family members, Defendants, jointly and severally, represented that each member of the family would be treated with dignity, respect and the utmost care and most importantly, that the sanctity of their burial plots would be protected.

25. The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of his deceased family members at Defendant Cemetery.

26. At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

27. None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

28. The Plaintiff does not want his family members to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

## LYNDA MASON

29. The Plaintiff, Lynda Mason is the next of kin of deceased father, William Chapman Mason, who became deceased in 1969 as the result of a fatal automobile accident.

30. In September, 2022, said Plaintiff visited York Cemetery for the purpose of embracing the family legacy and history of the Mason Family and to honor the sanctity of her father's final resting place.

31. At that time, Plaintiff Mason, became aware that there are no records of the burial of William Chapman Mason and that the Defendants knew nothing about the location of her Father's gravesite.

32. The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of his deceased family members at Defendant Cemetery.

33. At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

34. None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

35. The Plaintiff does not want her father to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

## ALLISON MONTGOMERY

36. The Plaintiff, Allison Montgomery, is the next of kin of her stillborn son, Baby Boy Montgomery, born and deceased, on January 17, 1989.

37. In April, 2023, said Plaintiff visited York Cemetery for the purpose of embracing the family legacy and history of the Montgomery Family and to honor the sanctity of her son's final resting place.

38. At that time, Plaintiff Montgomery determined that the location of her son was unknown.

39. The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of her deceased family member at Defendant Cemetery.

40. At no times during the burial arrangements or the contractual process did the Defendants ever disclose to Plaintiff that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's next of kin would not be followed.

41. The Plaintiff would not have ever purchased their burial site for her son, had the facts and circumstances as set forth in this Complaint been disclosed.

42. The Plaintiff does not want her son to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

## PIERRE DAVIS

43. The Plaintiff, Pierre Davis, is the next of kin of his deceased mother, Queen Esther Davis, who was buried at York Cemetery in July, 2020.

44. In April, 2023, said Plaintiff visited York Cemetery for the purpose of embracing the family legacy

11

and history of the Davis Family and to honor the sanctity of his mother's final resting place.

45. At that time, Plaintiff Davis determined that the location of his mother's gravesite is unknown as the place depicting her gravesite is in a different location than the place in which his mother was buried.

46. The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of his deceased family members at Defendant Cemetery.

47. At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

48. None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

49. The Plaintiff does not want his mother to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

## **LAVONNE JONES HAYNES ANDERSON**

50. The Plaintiff, Lavonne Jones Haynes Anderson, is the next of kin of her deceased mother, Maggie L. Jones, who was buried at York Cemetery in 1994.

51. The Plaintiff, is also the next of kin of her deceased father, Thomas S. Jones, who was buried at York Cemetery in 1965.

52. The parents of Plaintiff were to have been buried next to each other in Section 10, Plot 140 and 141..

53.  In December, 2022, said Plaintiff visited York Cemetery for embracing the family legacy and history of the Jones Family and to honor the sanctity of her parents final resting place.

54. At that time, Plaintiff Anderson determined that her father was buried between other fellow veterans and, that the gravesite of her mother was unknown.

55. The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of her deceased family members at Defendant Cemetery.

56. At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

57. None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

58. The Plaintiff does not want her parents to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

### MARIO BLACK

59. The Plaintiff, Mario Black, is the next of kin of his deceased father, Rudolph Eugene Black, Sr., who was buried at York Cemetery in May, 2019.

60. In April, 2022, said Plaintiff visited York Cemetery for embracing the family legacy and history of the Black Family and to honor the sanctity of his father's final resting place.

61. At that time, Plaintiff Black became aware that the temporary marker commemorating his father's burial site is not in the same location where his father is buried.

62. The exact location of his father is unknown.

63. The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of his deceased family members at Defendant Cemetery.

64. At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

65. None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

66. The Plaintiff does not want his father to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

**ANDREA BYERS**

67. The Plaintiff, Andrea Byers, is the next of kin of her deceased mother, Clara Stafford, who was buried at York Cemetery in August, 2017.

68. In May, 2022, said Plaintiff visited York Cemetery for the purpose of embracing the family legacy and history of the Stafford Family and to honor the sanctity of her mother's final resting place.

69. At that time, the headstone previously located at her mother's burial site to honor her mother's grave had been removed.

70. The current location of the headstone is not the final resting location of the Plaintiff's mother.

71. The current gravesite with the headstone is not located where the Plaintiff's internal landmark designating the location of her mother is located.

72. Further, the headstone which purportedly identifies the Plaintiff's mother's gravesite is on a new grave with fresh dirt although Plaintiff's mother has been buried for almost six years and grass had previously grown on her gravesite

73. The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of his deceased family members at Defendant Cemetery.

74. At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

75. None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

76. The Plaintiff does not want her mother and other family members to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

## **BURLIN ALLEN, SR.**

77. The Plaintiff, Burlin Allen, Sr., purchased family cemetery lots for his next of kin and members of his family in 1996.

78. Plaintiff intentionally chose the specific plots for purchase because the location of these plots would insure that Plaintiff and his next of kin would be buried in close proximity with other members of their families.

79. Over the last 20 years, the Defendants have sold the plots of this Plaintiff to third persons and have transferred three different sets of plots to the Plaintiff.

80. However, the burial sites identified in the subsequent Certificates of Interment are not the specific burial sites originally purchased by the Plaintiff.

81. Accordingly, this Plaintiff and his next of kin will be unable to be buried in the area of his other family members in accordance with the original cemetery plots purchased.

82. Because of the wrongful actions of these Defendants the Plaintiff and his next of kin are unable to be buried in close proximity to their other deceased family members.

83. At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

84. None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

### BURLIN ALLEN, JR.

85. The Plaintiff, Burlin Allen, Jr., is the next of kin of his deceased infant son, Fasette Allen, who became deceased in 2001.

86. Said Plaintiff has recently become aware that his next of kin is not located in the original burial site, but is located in an area which the family had never purchased burial sites or intended for him to be buried.

87. The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of his deceased family members at Defendant Cemetery.

88. At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

89. None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

90. The Plaintiff does not want his son to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

### JACQUELINE W. McCLINTON

91. The Plaintiff, Jacqueline W. McClinton, is the next of kin of her deceased father, Sylvester Lee Wilburn, who was buried at York Cemetery in June, 1975.

16

92. In 2019, said Plaintiff visited York Cemetery for the purpose of embracing the family legacy and history of the Wilburn Family and to honor the sanctity of her mother's final resting place.

93. At that time, Plaintiff McClinton became concerned that the Headstone depicting her Father's gravesite was in a different location than it had previously been located.

94. At that time, the Plaintiff advised office personnel of her beliefs.

95. Said personnel assured the Plaintiff that Plaintiff was mistaken and the Headstone had not been moved.

96. Plaintiff has now become aware and convinced in 2023, that the truth was concealed from her by Defendants and that the current location of her Father's Headstone is not in the same location where her Father was buried.

97. The Plaintiff, Jacqueline W. McClinton, is also the next of kin of her deceased maternal aunt, Ruth Huntley Thompson, who was buried at York Cemetery in June, 2017.

98. In May, 2023, said Plaintiff visited York Cemetery for embracing the family legacy and history of the Huntley Family and to honor the sanctity of her aunt's final resting place.

99. At that time, said Plaintiff became aware that the gravesite of her aunt had been disturbed and desecrated, as a gaping hole exists between the Headstone and grave. Upon information and belief, the hole was dug with machinery.

100.    This hole was not present at the time of her aunt's burial, nor has it been present in previous visits to the gravesite by the Plaintiff.

101.    The Plaintiff is an intended and direct beneficiary of the legacy and family history in perpetuity of her deceased family members at Defendant Cemetery.

102.    At no times during the burial arrangements or the contractual process did the Defendants ever disclose to any member of the Plaintiff's family that there was substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed.

103.    None of the members of the Plaintiff's family would have ever purchased property, as burial plots had the facts and circumstances as set forth in this Complaint been disclosed.

104.    The Plaintiff does not want her mother or maternal aunt to remain buried at York Cemetery unless appropriate measures are taken to prevent the Defendants from continuing the wrongful acts which exist at Defendant Cemetery.

## DEFENDANTS

105.    The Defendants hold themselves out as a member of "Dignity Memorial Funeral Home, Cemetery, Cremation" and deliberately hold themselves out with the promise that the members of the consuming public will be treated honorably, respectfully and with dignity.

106.    Upon information and belief, Defendant, Carothers Holding Company, LLC, conveyed certain portions of Defendant Cemetery to Defendants, StoneMor North Carolina, LLC, by Special Warranty Deed on December 8, 2007, maintaining certain tracts of York Cemetery in the ownership of Carothers Holding Company, LLC, specifically Tracts 2-6, 9. Accordingly, upon information and belief, these Defendants jointly own the burial sites at York Cemetery.

107.    Various former employees of the Defendants from the years 2000 through 2022, through the pre-filing investigations have represented that the Defendants, by and through themselves as employees, have engaged in systemic and prolonged acts to the

18

harm of the persons who constitute this Class, in an attempt to rectify or conceal from Plaintiffs the results of Defendants' poor record keeping relating to lots sold and lots utilized for burials.

108.    These former employees also jointly and severally represent that the resulting cumulative effect of the wrongful acts by the Defendants from January 1, 1969, to the present potentially impact every grave site as there do not exist objective methods or records for the Defendants to positively confirm with certainty the exact burials according to their contractual agreements for those buried at York Memorial Cemetery.

109.    These former employees also have personal knowledge and represent that these Defendants have intentionally and deliberately concealed from the representatives of this Class and members of this Class that Defendants have engaged in the acts as set forth in this Complaint. These willful and orchestrated acts of concealment, which materially affect the rights of Members of this Class are continuous in effect, up to and including the date of this filing.

110.    These former employees represent to this Class that the Defendants skillfully and artfully coordinated the acts of further concealment through themselves, jointly and severally, to the extent that virtually all members of this Class are unaware of these wrongful acts.

111.    These former employees in pre-filing investigation additionally represent that the Defendants through their employees have intentionally and directly concealed from the Plaintiffs as Class representatives and members of this Class, and their families, the existence of the wrongful acts of the Defendants, as a condition of continued employment.  These former employees represent that they did not contest the

19

Defendants instructions to conceal the acts complained of in this Complaint in order to keep their jobs, and that they begrudgingly complied with the requests of these Defendants, jointly and severally.

112. The widespread acts of the Defendants are in total disrespect of the sanctity of the deceased and the love, affection and honor of the members of this Class throughout the Charlotte-Mecklenburg Community and beyond.

113. The acts, which the Defendants have engaged in have caused irreparable and immeasurable harm to the defined class as stated throughout this Complaint and include but are not limited to the following:

(a). Desecrating graves by conducting exploratory digs of graves (including backhoes) in efforts to locate buried bodies in violation of North Carolina General Statute § 14-149, *et seq*.;

(b). Failing to obtain authorization or consent of the next of kin of members of this Class of the buried for the use of backhoes on grave sites in violation of North Carolina General Statute § 14-149, *et seq*.;

(c). Cutting out patches of earth covering graves in sizes no less than 3 inches by 3 inches and three feet deep in violation of North Carolina General Statute § 14-149, *et seq*.;

(d). Failing to obtain authorization or consent from members of this class to remove patches of earth of no less in size than 3 inches by 3 inches and

 three feet deep in violation of North Carolina General Statute 14-149, et seq.;


(e). Conducting sonograms to locate the buried resulting in the discovery and revelation of graves encroaching other graves;

(f). Failing to inform members of this Class that sonograms reveal that grave sites have been encroached upon by other grave sites;

(g)  Placing markers on the wrong gravesite of the persons identified on the markers because Defendants do not have accurate records to reflect where bodies are buried;

(h)  Failing to inform members of this Class that markers are placed on the wrong grave sites;

(i). Failing to inform members of this Class that bodies will not be buried according to the burial sites purchased and identified in the contracts of sale;

(j). Failing to inform members of this Class that the location of the burial sites of their deceased cannot be identified;

(k). By discovering bones of deceased persons while digging graves for burial because of bodies having been previously buried in the wrong burial plot;

(l). Failing to inform the decedents families of the bones which were dug up;

(m). Puncturing vaults numerous times while probing to identify persons buried;

(n) Failing to notify members of this Class that vaults have been punctured;

(o). Double selling grave sites and failing to maintain records of the double sales;

(p). Failing to inform members of this Class of the likelihood that plots purchased may be or had been double sold;

(q). Failing to maintain records of deeds which correlate with purchased grave sites;

(r). Failing to inform members of this Class that records of deeds have not been maintained to correlate with the purchased grave sites;

(s). Locating buried bodies which cannot be identified because of improper record keeping;

(t). Failing to inform members of this Class that burial sites cannot be properly identified at the Cemetery;

(u). Burying babies on top of each other over a period of years, to the extent that the area was commonly referred to among workers as "the hill of babies";

(v). Failing to disclose to family members searching for the gravesite location of their deceased babies, that babies were buried on top of each other in an area commonly referred to as "the hill of babies";

(w). Failing to disclose to family members searching for the location of their deceased babies that the location of the deceased children could never be determined;

(x).  Double selling tandem grave sites;

(y). Failing to disclose to members of this Class that tandem grave sites had been double sold;

(z) Failing to disclose to members of this Class that members of the same family would not be placed in tandem grave sites next to each other because tandem grave sites had been double sold;

(aa). Discovering grave sites with bodies already in place while undergoing the process to prepare for the burial of the respective owners of that particular gravesite; (bb). Failing to inform this Class that the likelihood of bodies being routinely discovered while undergoing the process of preparing for the burial of respective owners of the particular grave sites;

(cc).   Burying persons in grave sites different from the contracted plots although this practice created persons not being buried next to their loved ones as contracted;

(dd). Failing to inform Members of this Class that persons were not buried next to their loved ones as the original contracts provided;

(ee). Failing to insure that Lot Books match physical locations of grave sites;

(ff). The failure to inform any members of this Class that Lot Books do not match physical grave sites;

(gg). Unilaterally, changing contracts to different lots because the lots contracted for have been previously sold;

(hh). The failure to inform any members of this Class that lots sold in contracts have to be changed because they have been previously sold;

(ii). The owners of lots in Lot Books do not match persons who are actually buried in the physical graves;

(jj). The failure to inform any members of this Class that Lot Books do not match persons who are buried in the physical graves;

(kk). Depiction of lots in Lot Books where the lots do not exist on the Map Books;

(ll). The failure to inform this class of depiction of lots in lot books where the lots do not exist on the Map Books;

(mm). Map books depict lots which cannot be physically located;

(nn). Failure to inform members of this class that markers are located on grave sites which are empty;

(oo). The failure to inform member of this class that Defendants have not properly maintain records of burials in the Lot Books;

(pp). Exploratory digs to try to locate the names of the deceased by looking for the name plates on vaults;

(qq). Failure to obtain any authorization from any next of kin for any exploratory

23

digging of graves in efforts to identify name plates on vaults;

(rr).     Failure to notify members of this class that exploratory digs were occurring in an effort to identify name plates on vaults;

(ss).    Failure to maintain contracts for the sales of burial plots;

(tt).    The ongoing discovery of markers which do not reflect the proper person buried therein;

(uu).    Failure to notify members of this Class that markers were discovered which did not reflect the proper person buried therein;

(vv).    Overlapping of burial plots;

(ww). Failure to notify members of this Class that some burial plots overlapped;

(xx).    Encroachment of burial sites;

(yy).    Failure to notify members of this Class that some burial sites had been encroached upon;

(zz).    Contracts which fail to correlate with the subject burial plots;

(aaa). Failure to notify members of this Class that there existed Contracts which did not correlate with the subject burial plots;

(bbb). Lost Deeds which are too numerous to calculate;

(ccc).   Failure to notify members of this Class of the fact that there were numerous lost Deeds, in a number too large to count;

(ddd). Map Books which reflect burial lots which do not exist;

(eee). Failure to notify members of this Class of the existence of Map Books which reflect lots which do not exist;

24

(fff). Lot Books which establish more lots than the actual number of lots which exist;

(ggg). Failure to notify members of this Class of the existence of Lot Books which establishes more lots than the actual number of lots which exist;

(hhh). Markers which encroach other grave sites;

(iii). Failure to notify members of this Class that Markers encroached upon other grave sites;

(jjj). Numerous listings of John Does on Interment cards because of the lack of records to identify the names of persons buried in grave-sites;

(kkk). Lack of deeds to correlate with burial spaces;

(lll). Failure to notify members of this Class of the lack of deeds to correlate with burial sites;

(mmm). The impossibility to calculate the numerous desecration of vaults because of water damage during exploratory digs;

(nnn). The failure to inform members of any families of the desecration of the vaults of their loved ones because of the exploratory digs;

(ooo). The finding of vaults during exploratory digs where no record of burial exists;

(ppp). The failure to inform any members of this class of the finding of vaults during exploratory digs;

(qqq). The determination that the identity of persons buried at wrong grave sites is not a priority;

(rrr). The failure to inform any members of this class that the determination of the identity of persons buried at wrong grave sites are not a priority;

25

(sss). The determination to not notify members of this Class that the burial locations of their Decedents could not be found so as not to cause any trouble for Defendant;

(ttt). The failure to notify members of this Class that the burial locations of their Decedents could not be found;

(uuu). Failure to maintain records to establish the transfer of burial sites;

(vvv). The failure to notify members of this Class that the Defendant did not maintain records to establish the transfer of burial sites;

(www). The inability to identify the location of burial sites to disinter deceased persons, if necessary;

(xxx). The failure to notify members of this Class that the Defendant did not have the ability to identify the location of burial sites to disinter deceased persons, if necessary.

114.    Former employees of the Defendants have further represented to the Plaintiffs that the acts complained of above have affected the efficacy and led to the disturbance of the gravesites of the burial gravesites of persons identified as members of this Class.

115.    Despite having full knowledge of and intentionally orchestrating the concealment of its fraudulent and reprehensible business practices, the Defendants continue to hold themselves out to the public as trustworthy and competent and efficient in maintaining the sanctity of the deceased.  The false and fraudulent representations in soliciting business by the Defendants in its mass marketing, advertising and dissemination of these false representations via social media, up to and including the date of the filing of this Amended Complaint, include but are not limited to the following statements to the consuming public, via Facebook:

a. That choosing and purchasing burial plots from Defendants will ensure that families will be buried together; (August 1, 2022; August 16, 2022)

b. That choosing and purchasing burial plots from Defendants will give peace of mind in knowing that your family will always be together for generations to come; (November 14, 2018; December 13, 2018, August 1, 2021, August 1, 2022, August 16, 2022)

c. That choosing and purchasing burial plots from Defendants will ensure your legacy and family heritage plans; (June 17, 2020, August 1, 2022, August 16, 2022)

d. That choosing and purchasing burial plots from Defendants will ensure that financial arrangements have been made to cover your burial costs; (December 6, 2022)

e. That choosing and purchasing burial plots from Defendants ensures that arrangements and preparations have been made for end of life services, and to provide security and protection to loved ones; (October 12, 2020, October 22, 2020, July 1, 2022, July 16, 2022, September 9, 2022)

f. That choosing and purchasing burial plots from Defendants ensures that final services are planned so you are the author of your story, and that you decide how your story will be told; (February 1, 2022, February 16, 2022)

g. That choosing and purchasing burial plots from Defendants ensures that you have planned ahead at the time of the painful time of loss of loved ones; (December 29, 2020)

h. That choosing and purchasing burial plots from Defendants avoids woes about what loved ones wanted, and reduces emotional burdens on loved ones; (January 27, 2021)

i. That choosing and purchasing burial plots from Defendants ensures that your final wishes are met; (December 6, 2022)

j. That choosing and purchasing burial plots from Defendants gives you peace of mind that that this has been taken care of ahead of time; (June 1, 2022, June 17, 2022)

k. That choosing and purchasing burial plots from Defendants ensures that wishes have been met; (August 29, 2022)

l. That choosing and purchasing burial plots from Defendants provides instructions on how you will be memorialized; (December 23, 2020)

m. That choosing and purchasing burial plots from Defendants provides that your family memory will remain alive; (May 18, 2020, August 26, 2020)

n. That choosing and purchasing burial plots from Defendants ensures that your preferences will be accommodated; (December 23, 2020)

o. That choosing and purchasing burial plots from Defendants will keep your family together through the generations.; (August 1, 2022; August 16, 2022)

p. That choosing and purchasing burial plots from Defendants assists you in "planning how your story will be told for future generations." (January 27, 2021, February 1, 2021, February 18, 2021, February 24, 2021, April 1, 2021, April 14, 2021, April 27, 2021, April 29, 2021, October 19, 2021, February 1, 2022, February 15, 2022)

q. That choosing and purchasing burial plots from Defendants will insure that your story will live on with those that follow. (October 1, 2021, October 19, 2021)

r. That placing your remains in a cemetery provides a historical record of your existence. (June 29, 2020)

116. These former employees of Defendants have also represented that Defendants have engaged and continue to engage in orchestrated corporate practices and policies to fraudulently and intentionally conceal and cover up these practices in the following ways:

(a). By mandating that all employees not admit to any member of the Class that buried bodies could not be located;

(b). By never notifying any member of the Class that any grave sites had been disturbed by the use of a backhoe;

(c). By never seeking authorization from any member of the Class to use a backhoe on their loved ones' grave site;

(d). By never obtaining authorization from any member of this Class to cut out patches of grave sites;

(e). By telling members of this Class that continuous research was being conducted when inquiries regarding burial deeds were made although Defendant knew that no such efforts were taking place;

(f). By telling members of this Class that continuous research was being conducted to locate Contracts for the purchase of burial plots, although Defendant knew that no such research efforts were taking place;

29

(g). By telling members of this Class that continuous research was being conducted to locate grave sites although Defendant knew that no such efforts were taking place;

(h) . By failing to advise members of this Class that research to locate burial deeds are futile;

(i). By failing to advise members of this Class that research to locate contracts are futile;

(j). By failing to advise members of this Class that research to locate grave sites are futile;

(k). By failing to advise members of this Class that burial deeds cannot be located by Defendant;

(l). By failing to advise members of this Class that contracts cannot be located by Defendant;

(m). By establishing policies and procedures to not return calls to members of this Class when inquiries were made regarding discrepancies relating to burials;

(n). By creating an atmosphere that job security of employees is based upon employees failing to communicate the truth to members of this Class about any of the situations as set forth above;

(o). By forbidding employees to advise any members of this Class that grave markers of their loved ones are placed on empty graves;

(p). By forbidding employees to advise any members of this Class that grave markers of their loved ones are not placed where the bodies of their loved ones

are buried;

(q). By directing employees to only be concerned with the discrepancies of Defendants on an individual basis with members of this Class and not as systemic and vast irregularities which affect this entire Class;

(r). By mandating employees to consistently "put off" answering inquiries by members of this Class regarding burial sites of loved ones in hopes that the statute of limitations to seek legal redress will run on individual members of this Class.

117. These former employees of the Defendants represent to the Plaintiffs that the acts complained of throughout this Complaint have caused the accuracy of all grave sites of York to be compromised. These former employees also represented that they, jointly and severally, misrepresented to this Class of persons on an ongoing and daily basis as routine business operation from 2000 to the present that:

a. The affirmative promise that choosing and purchasing burial plots will ensure that families will be buried together;

b. The affirmative promise that choosing and purchasing burial plots will give peace of mind in knowing that your family will always be together for generations to come;

c. The affirmative promise that choosing and purchasing burial plots will ensure your legacy and family heritage plans;

d. The affirmative promise that choosing and purchasing burial plots will ensure that financial arrangements have been made to cover your burial costs;

e. The affirmative promise that choosing and purchasing burial plots ensures that arrangements and preparations have been made for end of life services;

f.  The affirmative promise that choosing and purchasing burial plots ensures that final services are planned so you are the author of your story;

g.  The affirmative promise that choosing and purchasing burial plots ensures that you have planned ahead for a loved one at the of the painful time of loss of loved ones;

h.  The affirmative promise that choosing and purchasing burial plots avoids woes about what loved ones wanted;

i.  The affirmative promise that choosing and purchasing burial plots ensures that your final wishes are fulfilled;

j.  The affirmative promise that choosing and purchasing burial plots gives you peace of mind that this has been taken care of ahead of time;

k.  The affirmative promise that choosing and purchasing burial plots ensures that wishes will be followed;

l.  The affirmative promise that choosing and purchasing burial plots provides instructions on how you will be memorialized;

m.  The affirmative promise that choosing and purchasing burial plots provides that your family memory will remain alive;

n.  [1]The affirmative promise that choosing and purchasing burial plots ensures that your preferences will be accommodated.

## **CAUSES OF ACTION**

### **COUNT I-UNFAIR AND DECEPTIVE TRADE PRACTICES**

118.  Paragraphs 1-117 above are realleged and incorporated into this Count by reference.

119.	The Defendants have affirmatively represented to Plaintiffs their next of kin and members in this Class, jointly and severally, as well as to the general consuming population regarding York Cemetery the following:

a.	The affirmative promise that choosing and purchasing burial plots will ensure that families will be buried together;

b.	The affirmative promise that choosing and purchasing burial plots will give peace of mind in knowing that your family will always be together for generations to come;

c.	The affirmative promise that choosing and purchasing burial plots will ensure your legacy and family heritage plans;

d.	The affirmative promise that choosing and purchasing burial plots will ensure that financial arrangements have been made to cover your burial costs;

e.	The affirmative promise that choosing and purchasing burial plots ensures that arrangements and preparations have been made for end of life services;

f.	The affirmative promise that choosing and purchasing burial plots ensures that final services are planned so you are the author of your story;

g.	The affirmative promise that choosing and purchasing burial plots ensures that you have planned ahead for a loved one at the of the painful time of loss of loved ones;

h.	The affirmative promise that choosing and purchasing burial plots avoids woes about what loved ones wanted;

i.	The affirmative promise that choosing and purchasing burial plots ensures that your final wishes are fulfilled;

j.   The affirmative promise that choosing and purchasing burial plots gives you peace of mind that this has been taken care of ahead of time;

k.   The affirmative promise that choosing and purchasing burial plots ensures that wishes will be followed;

l.   The affirmative promise that choosing and purchasing burial plots provides instructions on how you will be memorialized;

m.   The affirmative promise that choosing and purchasing burial plots provides that your family memory will remain alive;

n.   [1]The affirmative promise that choosing and purchasing burial plots ensures that your preferences will be accommodated.

120.   The Defendants, through the misrepresentations and acts of concealment as alleged above have engaged in systematic, intentional and orchestrated acts of fraud, malice, willful and wanton conduct as normal operating procedures, by and through, establishing the participation of its employees to engage in the acts complained of above as conditions of employment.

121.   The Plaintiffs are entitled for Defendants to be punished for these egregiously wrongful acts so as to deter these Defendants and others from committing similar wrongful acts. These orchestrated acts through its employees, by these Defendants have intentionally destroyed and disturbed the sanctity of the dead, their final resting places, and the memorial legacies of thousands of families who have engaged in commerce with these Defendants, jointly and severally.

122.   Former employees represent that the concealment of material facts, directed by Defendants as set out above were made to intentionally deceive members of this Class.

123.     Former employees represent that the false representations of Defendants as set forth above were made with the intent, purpose and desire to deceive.

124.     Said representations were made in commerce and do affect commerce.

125.     Said public dissemination of materials as well as representations made to Plaintiff and the general consuming public are the proximate cause of the injuries to the Plaintiff as well as the class of persons which the Plaintiff represents.

126.     This Class has in fact, by the actions of the Defendants, been intentionally deceived as this Class has reasonably relied upon the truthfulness of the representations and the good faith of the Defendant in making said representations.

127.     This Class has suffered injuries including the loss of the ability to maintain peace and contentment as well as the sanctity of their deceased loved ones which totally and completely frustrates the purpose of their relationship with York Cemetery.

128.     This Class has suffered actual, special and punitive damages, jointly and severally, in excess of $25,000.00 under this Count.


## COUNT II - BREACH OF CONTRACT

129.     Paragraphs 1 through 128 above are realleged and incorporated into this Count by reference.

130.     From 1969 until the present the Plaintiffs or their next of kin and members of this class which Plaintiffs represent entered into agreements with the Defendants for the purpose of purchasing burial plots for themselves or their next of kin.

131.     All of the contracts which the Plaintiffs and the class which Plaintiffs represent provide the following language, as the contracts which these Defendants provide to the consuming public are the uniform and standard contracts:

35

a. The location of the specific burial sites purchased;

**b.** The purpose of the purchase of the gravesite is for the final resting place of the specific members of this class or their designee;

c. The cost of the burial site;

d. The execution of the agreement will take place upon demand as the date of execution is unknown.

132. The named Plaintiffs and the class of persons whom they represent became aware of the breaches of contracts enumerated above within three years of the filing of this Complaint. *Chisum v. Campagna*, 2021- NCSC-7 No. 406A19).

133. These contracts were entered into for the direct benefit of the Plaintiffs and members of this Class, and were entered into for the direct permanent and distinct benefit to the Plaintiffs and members of this class, and were entered into for permanently establishing the peace of mind, eternal legacy and family story of the Plaintiffs and all persons in the class whom Plaintiffs represent.

134. The members of this Class individually or as third party beneficiaries have a valid and enforceable contractual agreement with Defendants. The consideration by the members of this Class was the payment of money to the Defendants for the purpose to be buried according to the agreement between the parties.

135. All contracts contain the same language regarding specific burial plots, locations of burial plots, and the responsibilities of the Defendant to bury persons in the plots purchased on behalf of members of this Class.

136. Upon the filing of this lawsuit, the other members of this Class will receive knowledge of the Breach of Contracts by Defendants, as enumerated above.

137. The Defendants breached its contractual responsibilities by the actions of the

Defendant as set forth above.

138.    This Class have suffered actual, special and punitive damages, jointly and severally, in excess of $25,000.00 under this Count, jointly and severally under this Count.

## COUNT III- NEGLIGENCE

139.    Paragraphs 1 through 138 above are realleged and incorporated into this Count by reference.

140.    The Defendants owed and presently owe the duty to these Plaintiffs, as the next of kin of their decedents, and the class of persons which they represent, a duty to maintain the Common Law right to preserve the sanctity and sepulcher of grave sites, as it is the Public Policy of North Carolina to protect the burying places of the dead.  These Defendants also owe to the Plaintiffs and the class which they represent as the next of kin of their decedents, the inherent obligation to ensure that the final resting places of their respective decedents are indeed the final resting places of their decedents; that the gravesites of their respective decedents can be identified; that the gravesites of their decedents are ascertainable; that the gravesites of their decedents are not invaded, intruded upon, disturbed, dug into, or otherwise maligned and that the gravesites of their decedents are locatable.

141.    The Plaintiffs are the next of kin, and the persons whom they represent are the authorized representatives of the owners of the gravesites of their decedents.

142.    The Defendants have breached these duties as set forth above in this Count as well as the other factual allegations set forth in previous paragraphs.

37

143.     The proximate cause of injuries to this Class is due to the failures by Defendants to meet the duties of the Common Law of North Carolina as set forth in Common Law *Mills v. Cemetery Park Corp.,* 242 N.C. 2 (1955).

144.     The Defendants are liable to this Class for its breach of this Common Law duty. This Class is entitled to actual, special and punitive damages in an amount in excess of $25, 000.00, jointly and severally.

## COUNT IV-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

145.     Paragraphs 1 through 144 above are realleged and incorporated into this Count by reference.

146.     The former employees which span the period of 1991 to the present, represent that Defendants engaged negligently in conduct as set forth above.

147.     The Defendants knew or should have known that such conduct was reasonably foreseeable and would cause this Class to suffer severe emotional distress and mental anguish.

148.     The conduct by these Defendants have caused harm to this Class to suffer severe emotional distress and mental anguish, which is the loss of their family legacy, the loss of their family story, the loss of the sanctity of the gravesites of their next of kin and loss of the peaceful eternal rest of their next of kin.

149.     This Class has suffered actual, special and punitive damages in excess of $25, 000.00, jointly and severally under this Count.

## COUNT V- TRESPASS TO REAL PROPERTY

150.     Paragraphs 1 through 149 above are realleged and incorporated into this Count by

reference.

151.    The Plaintiffs' representatives, their next of kin, and members of this Class have purchased in fee simple or are the third-party beneficiaries to the purchase to maintain title and possess title to burial sites purchased in fee simple at York Memorial Cemetery with the right to actual possession at the time of their authorized burials.  Upon the purchases of burial sites, these Defendants issued to Plaintiffs and their class, "Certificates of Internment Rights" in fee simple. Until such time as of the actual burials, these Plaintiffs, next of kin and the persons whom they represent, are in constructive possession of the respective burial plots which they purchased, although the burial plots are not yet occupied. At all times pertinent and relevant herein, the Plaintiffs, as the next of kin of their decedents and the class of persons whom they represent were in actual or constructive possession of their respective burial plots at the time in which the atrocities of trespass to the burial sites by these Defendants, jointly and severally have been and are currently being committed.

152.    The specific acts of trespass as to these named Plaintiffs as the next of kin of their decedents are set forth above.  The acts of trespass to this class of persons are specifically set out above as determined by pre-filing factual investigations.

153.    The Defendants have purposefully, wantonly, intentionally, deliberately, recklessly and maliciously engaged in the unlawful entry upon the burial sites owned by this Class under the circumstances as set forth in the above Paragraphs.

154.    The unauthorized entry and disturbance into the burial sites of persons by this Defendant constitutes trespass upon the real property owned by members of this Class as a matter of law.

155.    The Plaintiffs have suffered actual, special and punitive damages, in excess of

$25,000.00 under this Count, jointly and severally under this Count.

## COUNT VI-BREACH OF THIRD PARTY BENEFICIARY TO CONTRACT

156.    Paragraphs 1 through 155 above are realleged and incorporated into this Count by reference.

157.    There is the existence of valid contracts between each of the respective Plaintiffs, individually, or their next of kin and the Defendants, as evidenced by their respective Certificate of Internment Rights.

158.    Each of the respective contracts is valid and enforceable.

159.    Each of the respective contracts was entered into by the decedents of each of the Plaintiffs and the class of persons whom Plaintiffs represent for the direct benefit of each of the respective Plaintiffs and the class of persons whom they represent.

160.    The valid contracts between Plaintiff's decedents and Defendants were made to ensure the final resting place and historical legacies of the persons buried for the benefit of their next of kin. The importance of this legacy is established by, but not limited to, the dissemination of mass social media representations by these Defendants for the direct and intended purposes to solicit the purchase of burial plots by the Plaintiffs, their decedents, and all persons similarly situated to Plaintiffs and their next of kin. These contracts were established for the direct benefit and peace of contentment of these Plaintiffs and for the class of persons whom they represent.

161.    The Plaintiffs, and the class of persons are the intended and direct third party beneficiaries of these valid agreements.

162.    The Defendants have breached its agreements with Plaintiffs as set forth in the Paragraphs above.

163.    The Plaintiffs have suffered actual, special and punitive damages, in excess of

40

$25,000.00 under this Count, jointly and severally under this Count.

## COUNT VII-INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

164.    Paragraphs 1 through 163 above are realleged and incorporated into this Count by reference.

165.    The Defendants have intentionally and willfully conspired to commit the acts complained of in the above Paragraphs and are continuously engaging in extreme and outrageous conduct which exceeds all bounds of human decency expected to be tolerated by a decent society.  The Plaintiffs and the class of persons whom the Plaintiffs represent have suffered the permanent loss of family legacy, history and the peace of mind based upon the acts of these Defendants as set out above.

166.    These Plaintiffs and various members of the Class which they represent are engaging upon the establishment of a Mental Health Support Group to assist them in the coping of the loss of their family legacy and history as well as the betrayals which they collectively feel pertaining to the disturbance of gravesites and the loss of the location of the final resting places of their loved ones, as well as the actual loss of the bodies of their decedents.

167.    The sentiment of all civilized peoples, since the earliest Biblical times, has held in great reverence the resting places of the dead as hallowed ground. (Mills, *supra*)

168.    The Defendants conduct has been and continues to be reckless and indifferent to the harm, detriment and physical loss to the Plaintiffs.

169.    The Defendants knew and should have known the likelihood that their acts,

jointly and severally, would cause severe emotional distress. It was also foreseeable to the Defendants that their acts would cause harm to the Plaintiffs and the class of persons whom they represent.

171. The conduct of Defendants has and will continue to cause permanent and severe emotional distress to this Class.

172. This Class has suffered actual, special and punitive damages, in excess of $25,000.00 under this Count, jointly and severally under this Count.

## COUNT VIII-RACKETEER INFLUENCE and CORRUPT ORGANIZATIONS ACT (N.C.G.S. CHAPTER 75-D1)

173. Paragraphs 1 through 172 above are realleged and incorporated into this Count by reference.

174. Pre-filing investigations conclude that these Defendants did conspire with one another to engage in a pattern of racketeering activity to maintain control of property of Plaintiff and Plaintiff's' decedents, and all other persons similarly situated, by covering up the acts complained of above and below, including, but not limited to, the failure of Defendants to properly maintain records in the usual course of business, and in accordance with N. C.G.S. § 65-60, to insure the burial plots purchased for Plaintiffs' decedents usage were properly recorded in the corporate books and that any plots so purchased were used by the intended beneficiaries.

175. Because of the failure of Defendants to properly maintain such business records, it became necessary for Defendants to coerce their employees to undertake a pattern of racketeering activity, to commit acts which could be chargeable by indictment for violations of N.C.G.S. §§ 14-7.20, 14-100, 14-148, 14-149, and the Common Law of the State of North Carolina.

176. The patterns of racketeering activities by Defendants have occurred from approximately 2000, and continues through the date of the filing of this action. Defendants have and continue to cover up on a regular basis the wrongful acts complained of above, through the date of the filing of this action, i.e., falsely telling Plaintiffs that searches for burial documentation and gravesite locations are continuing by the employees of Defendants, when no such searches are being conducted, as related by employees of Defendants.

177. On a regular basis Defendants mandate that its employees follow a practice to fail to disclose the wrongful acts described above by making employees adhere to the following practices and terms of employment;

   (a)     To not disclose to any member of this class the existence of the wrongful and illegal acts complained of above; upon penalty to the employee of loss of employment;

   (b)     To not disclose the acts complained of above to the Plaintiffs or any third party, upon penalty to the employee of loss of employment;

   (c)     To continue to make false assurances to satisfy members of this Class in hopes that the Statute of Limitations will expire, before legal action is pursued, upon penalty to the employee of loss of employment;

   (d)  To continue to make false assurances to members of this class and the persons they represent, in hopes the Plaintiffs will grow disillusioned and cease their inquiries to Defendants' employees, upon penalty to the employee of loss of employment.

43

178.   These acts constitute unlawful organized activity, for pecuniary gain, to prevent Plaintiffs from pursuing claims against Defendants which may cost Defendants monetary damages to remedy the results of failure of the Defendants to perform their obligations as required under the contracts Defendants had undertaken.

179. The Defendants have forbidden its employees to disclose any of these unlawful and wrongful acts complained of above for pecuniary gain, i.e., to prevent having to pay damages to Plaintiffs or to incur further costs in attempting to comply with the contractual obligations of Defendants to place the remains of Plaintiffs' decedents in the locations specified in the purchase contracts, or in having to find and identify the remains that are buried in a grave plot which are known to Defendant not to be located in the proper grave site.

180. All acts of the Defendants are an interrelated pattern of organized unlawful activity, with the purpose and effect to derive pecuniary gain.

181.   Further, Defendants made these false statements on a continuous basis from January 1, 2000, year after year, and to the members of this class with the intent to either discourage Plaintiffs attempts to locate the remains of their decedents to such an extent that Plaintiffs forego further inquiries, or to forestall Plaintiffs' inquiries with the hopes that the Plaintiffs will abate such inquires.

182. That Defendants have continuously employed such dilatory and fraudulent actions on a continuous basis, year after year, and continue to do so as of the time of the filing of this action.

183. That as a result of such conspiracy, Plaintiffs suffered injury to their property interests and infliction of emotional distress.

184. That as a result of such conspiracy, Defendants have obtained pecuniary gain as a result of the racketeering activity.

185. Plaintiffs and members of this class are innocent persons and are victims of Defendant's racketeering activities are entitled to compensation as provided in N.C.G.S. § 75-D (1)-8 (c).

186. This Class has suffered actual, special and punitive damages, in excess of $25,000.00 under this Count, jointly and severally under this Count.

## COUNT IX- SPECIFIC PERFORMANCE

187. Paragraphs 1 through 186 above are realleged and incorporated into this Count by reference.

188. That the purchase of burial plots in fee simple is a real estate transaction.

189. That the purchase of burial plots is a unique transaction as each piece of real property is unique.

190. That this Class of Plaintiffs' are the purchasers or third-party beneficiaries of purchasers of burial plots from the Defendants, jointly and severally.

191. That there is no adequate remedy at law for this Class of Plaintiffs.

192. That each member of this Class is entitled to the conveyance by Defendant to them in accordance with their respective original Certificate of Internment Rights, regarding the specific burial plots purchased for the benefit of their loved ones in the exact location of

their loved one, according to the terms of their respective contractual agreements, jointly and severally.

193. This Class has suffered actual, special and punitive damages, in excess of

$25,000.00 under this Count, jointly and severally under this Count.

## COUNT X-WRONGFULL DESECRATION OF GRAVESITES

194. Paragraphs 1 through 193 above are realleged and incorporated into this Count by reference.

195.  Defendants have engaged and continue to engage in acts of desecration by engaging in the following acts against the gravesites of the Plaintiffs next of kin, and the class of persons represented in this class by:

    a.  The wrongful injury or removal of grave monuments;

    b.  The destruction of graves by bulldozing upon them;

    c.  The constant intrusion into gravesites to locate bodies;

    d.  All other acts set out in the above paragraphs.

196.  These acts directly and indirectly have defamed, defiled damaged and resulted in the mistreatment of the physical areas of Defendant, York Cemetery, in a manner that a reasonable person knows will outrage the sensibility of others.

197.  These Defendants, through the desecration of gravesites of York cemetery, have divested these burial sites of their sacred character and have defiled and profaned gravesites which are sacred things. (Black's Law Dictionary 511 (9th ed. 2009))

198. These acts by the Defendants, have also proximately caused the loss of the identification of where decedents are buried, the inability of this class of persons to be buried in the burial plots originally purchased, the misplacement of headstones as well as other allegations as set forth above.

199. The Plaintiffs and the Class of persons whom the Plaintiffs represent has suffered actual, special and punitive damages, in excess of $25,000.00 under this Count, jointly and severally under this Count.

**WHEREFORE**, the Plaintiffs, on behalf of themselves and all other persons similarly situated, pray for the following relief:

a. That this action be deemed a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. That the Plaintiff have and recover treble damages under Count I of Complaint, jointly and severally;

c. That the Plaintiff have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count II of the Complaint, jointly and severally;

d. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count III of the Complaint, jointly and severally;

e. That the Plaintiffs have and recover actual, special and punitive damages an in excess of $25,000.00 under Count IV of the Complaint, jointly and severally;

f. That the Plaintiffs have and recover actual, special and punitive damages an

amount in excess of $25,000.00 under Count V of the Complaint, jointly and severally;

g. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count VI of the Complaint, jointly and severally;

h. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count VII of the Complaint, jointly and severally;

i. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count VIII of the Complaint, jointly and severally;

j. That the Plaintiffs have and recover the Equitable Remedy of Specific Performance under Count IX of the Complaint, jointly and severally;

k. That the Plaintiffs have and recover actual, special and punitive damages an amount in excess of $25,000.00 under Count VII of the Complaint, jointly and severally;

l. For a trial by jury;

m. That the costs in this action be taxed to the Defendants, jointly and severally;

n. For such other and further relief as the Court may deem fit, just and proper.

This _____ day of _____, 2023.

___/Pamela A. Hunter/_____
Pamela A. Hunter
715 East 5th Street, Suite 106
Charlotte, North Carolina 28202
(704) 376-7709

Kimberly Best
Post Office Box 37154
Charlotte, North Carolina 28237

N. Clifton Cannon, Jr.
355 South New Hope Road, Suite B
Post office Box 551154
Gastonia, North Carolina 28055
(704) 867-9070

**CERTIFICATE OF SERVICE-**

  The undersigned hereby certifies that the following pleading or other documents was served upon the other party to the above entitled action by depositing a copy of such pleading or document to the attorney of record for such other party at the business address of such attorney as disclosed by the pleadings of record herein, in an official depository under the exclusive care and custody of the United States Postal Services. The specific documents that have been served consist of the following: Plaintiffs' First Amended Verified Complaint

Anthony T. Lathrop
William M. Butler
Moore & Van Allen, PLLC.
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
**Attorneys for Defendant- Carothers Holding Company, LLC**

Brian S. Cromwell
Parker Poe Adams & Bernstein, LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202

Christopher B. Henry
Buchanan Ingersoll & Rooney, PC
227 West Trade Street, Suite 600
Charlotte, North Carolina 28202

Chesley S. McLeod
Henry M. Perlowski
Arnall Golden Gregory, LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363
**Attorneys for Defendants- StoneMor GP, LLC, StoneMor North Carolina, LLC StoneMor North Carolina Subsidiary, LLC, StoneMor North Carolina Funeral Services, Inc., and StoneMor Partners, L.P.**

  This 30h day of May, 2023.

      \_\_\_\_\_/s/_____
      Pamela A. Hunter
      715 East 5th Street, Suite 106
      Charlotte, North Carolina 28202
      (704) 376-7709

50

## VERIFICATION

I, **ALLISON MONTGOMERY,** being duly **sworn, depose and say; that I have**

read the foregoing **COMPLAINT**, and I know the contents thereof to be true, expect as to

those facts alleged to be upon information and belief; and as to those facts, I believe them to be

true.

**ALLISON MONTGOMERY**

**STATE OF NORTH CAROLINA**

**COUNTY OF** Mecklenburg

Subscribed and sworn to before me this 27th day of _____ May _____ 2023.

Jagan Paripati

**NOTARY PUBLIC**

09-05-2027

**MY COMMISSION EXPIRES:**

## VERIFICATION

I, **LYNDA MASON** being duly **sworn, depose and say; that I have read** the

foregoing **COMPLAINT,** and I know the contents thereof to be true, expect as to those facts

alleged to be upon information and belief; and as to those facts, I believe them to be true.

Lynda Mason

**LYNDA MASON**

## STATE OF NORTH CAROLINA

## COUNTY OF MECKLENBURG

Subscribed and sworn to before me this 30th day of _May_ 2023.

**NOTARY PUBLIC**

_May 5, 2026_

**MY COMMISSION EXPIRES:**



**VERIFICATION**

I, **LAVONNE JONES HAYNES ANDERSON,** being duly **sworn, depose and say;**

**that I have read** the foregoing **COMPLAINT**, and I know the contents thereof to be true,

expect as to those facts alleged to be upon information and belief; and as to those facts, I

believe them to be true.

Harket June Hayne Anderson
**LAVONNE JONES HAYNES ANDERSON**

**STATE OF NORTH CAROLINA**

**COUNTY OF MECKLENBURG**

Subscribed and sworn to before me this 30th day of _May_ 2023.

Brittnee Smith
**NOTARY PUBLIC**

_May 5, 2026_
**MY COMMISSION EXPIRES:**



## VERIFICATION

I, **MARIO BLACK.,** being duly **sworn, depose and say; that I have read** the

foregoing **COMPLAINT**, and I know the contents thereof to be true, expect as to those facts

alleged to be upon information and belief; and as to those facts, I believe them to be true.

_____
**MARIO BLACK**

## STATE OF NORTH CAROLINA

## COUNTY OF MECKLENBURG

Subscribed and sworn to before me this 30th day of _May_ 2023.

_____
**NOTARY PUBLIC**

_May 5, 2026_
**MY COMMISSION EXPIRES**:



## VERIFICATION

I, **ANDREA BYERS.**, being duly **sworn, depose and say; that I have read** the

foregoing **COMPLAINT**, and I know the contents thereof to be true, expect as to those facts

alleged to be upon information and belief; and as to those facts, I believe them to be true.

Andrea Beyers
**ANDREA BYERS.**

**STATE OF NORTH CAROLINA**

**COUNTY OF** MECKLENBURG,

Subscribed and sworn to before me this 30TH day of May 2023.

Brittney S
**NOTARY PUBLIC**

May 5, 2026
**MY COMMISSION EXPIRES**:



## **VERIFICATION**

I, **BURLIN ALLEN, SR.,** being duly **sworn, depose and say; that I have read** the

foregoing **COMPLAINT,** and I know the contents thereof to be true, expect as to those facts

alleged to be upon information and belief; and as to those facts, I believe them to be true.

*Burlin all Sr.*
**BURLIN ALLEN , SR.**

**STATE OF NORTH CAROLINA**

**COUNTY OF** MECKLENBURG

Subscribed and sworn to before me this 30th day of May 2023.

*Brittnee Smith*
**NOTARY PUBLIC**

May 5, 2026
**MY COMMISSION EXPIRES:**



## VERIFICATION

I, **BURLIN ALLEN, JR.,** being duly **sworn, depose and say; that I have read** the

foregoing **COMPLAINT**, and I know the contents thereof to be true, expect as to those facts

alleged to be upon information and belief; and as to those facts, I believe them to be true.

$\underline{\hspace{3cm}}$
**BURLIN ALLEN, JR.**

**STATE OF NORTH CAROLINA**

**COUNTY OF** MECKLENBURG

Subscribed and sworn to before me this 30th day of  May  2023.

$\underline{\hspace{3cm}}$
**NOTARY PUBLIC**

$\underline{\text{May 5, 2026}}$
**MY COMMISSION EXPIRES**:



Case 3:23-cv-00217-KDB-SCR   Document 25   Filed 05/30/23   Page 57 of 59

STATE OF NORTH CAROLINA )
                        )          VERIFICATION
COUNTY OF MECKLENBURG    )

I, *Jacqueline McClinton*_____, being first duly sworn, deposes and says that he/she is the Plaintiff in this matter, that he/she has read and understood this _____ and knows the contents to be true of his/her own personal knowledge, except for those matters and things set forth upon information and belief, and as to those matters and things, he/she believes them to be true.

(Sign in the presence of the Notary Public)

Sworn to and subscribed before me this 30th day of  May_____,20 23

Notary Public

My Commission expires: 02-02 - Je , ,

DIL GURUNG
NOTARY PUBLIC
DEKALB County
State of Georgia
My Comm. Expires 02/02/2027

## VERIFICATION

I, PIERRE DAVIS, being duly sworn, depose and say; that I have read the foregoing COMPLAINT, and I know the contents thereof to be true, expect as to those facts alleged to be upon information and belief; and as to those facts, I believe them to be true.

PIERE DAVIS

STATE OF NORTH CAROLINA

COUNTY OF Mecklenburg

Subscribed and sworn to before me this 30th day of May 2023.

NOTARY PUBLIC

2/9/2024

MY COMMISSION EXPIRES: