**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No. 23-cv-00217-KDB-SCR**

| | | |
|---|---|---|
| **HUBERT SIMPSON**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| | ) | **OF DEFENDANT CAROTHERS HOLDING** |
| **CAROTHERS HOLDING** | ) | **COMPANY, LLC'S MOTION TO DISMISS** |
| **COMPANY, LLC,** *et al.*, | ) | **FIRST AMENDED COMPLAINT AND** |
| | ) | **MOTION TO STRIKE OR DISMISS CLASS** |
| **Defendants.** | ) | **ALLEGATIONS** |
| | ) | |
| | ) | |

## INTRODUCTION

What was a single representative putative class action against six Defendants brought on behalf of all persons who purchased interment rights at York Memorial Cemetery ("York") since 1969 has been amended to add nine (9) new plaintiffs, each with different complaints regarding family members buried at York. The Amended Complaint is still based on a hodgepodge of over 100 different alleged acts or omissions spanning over 50 years, purportedly impacting some 40,000 gravesites. Indeed, adding nine individual plaintiffs with different claims only underscores the fact that this case cannot be certified under Rule 23.

Plaintiffs still generally allege that the Defendants failed to properly maintain the cemetery and concealed problems with grave maintenance from both prospective customers and the families of those already buried at York, yet none of the numerous and varied allegations relate directly to any individual Plaintiffs' claims. Plaintiffs assert the same claims as their prior Complaint: (I) unfair and deceptive trade practices (UDTPA); (II) breach of contract; (III) negligence; (IV) negligent infliction of emotional distress (NIED); (V) trespass to real property; (VI) breach of

third-party beneficiary to contract; (VII) intentional infliction of emotional distress (IIED); (VIII) Racketeer Influence and Corrupt Organizations Act under N.C.G.S. Chapter 75-D1 (RICO); (IX) specific performance; and a new claim, (X) "Grave Desecration." Plaintiffs, collectively, still purport to represent a class of: (a) all persons who purchased internment [sic] rights or services at York from January 1, 1969, to present; and/or (b) all persons who entered into agreements authorizing their family members or other relations to be interred at York from January 1, 1969, to present; and/or (c) the authorized representative(s) of all deceased persons who would have otherwise been a member of those persons set forth in (a) or (b) above. Am. Compl. ¶12. Plaintiffs still seek to represent both living and deceased individuals or their authorized representatives for a period spanning over 50 years.

Plaintiff Simpson still fails to allege that any of the alleged issues at the cemetery impacts any of his unnamed family members buried at York. *See* Am. Compl. at ¶26. Of the newly added Plaintiffs, their individual complaints vary: some allege that their family members' records or burial locations cannot be located;[1] others allege that their family members are buried in the wrong location;[2] some allege that their burial sites were re-sold to third parties;[3] some that their headstones have been moved to a different location;[4] while others allege that their headstone had been "disturbed and desecrated."[5] None of the Plaintiffs allege any specific misrepresentation was made to them or their deceased family members at the time of their purchase. Instead, Plaintiffs generally aver that their "family members" would not have purchased burial plots if the laundry list of alleged acts or omissions was disclosed to them at the time of their purchase. Plaintiffs also

---

[1] Am. Compl. at ¶¶ 31, 38, 45, 54, 62.
[2] Am. Compl. at ¶¶ 45, 54, 86.
[3] Am. Compl. at ¶¶ 79.
[4] Am. Compl. at ¶¶ 71-72, 96.
[5] Am. Compl. at ¶ 99.

incomprehensibly allege that they (and all other persons similarly situated) somehow relied on Facebook postings from 2020 as the "sole reason in making their decisions to purchase lots at Defendant's cemetery," (Am. Comp. ¶ 19), while also including named Plaintiffs and putative class members who purchased their burial plots going back to 1969, well before these representations were made and before social media was even invented.

Despite these overbroad, vague, and contradicting allegations, Plaintiffs still fail to correct the fundamental deficiency that they are not the proper parties to bring claims on behalf of deceased family members. They also fail to identify the actual parties or terms to their family members' "contracts," much less the terms of the tens of thousands of contracts entered into during the last half-plus century. Further, despite being put on notice of the blatant pleading deficiencies in the original Complaint, Plaintiffs *still* comingle all allegations against the six Defendants (even during decades when they had no connection to York) and fail to adequately explain who they are, which allegations pertain to each, or their relationship(s) to each other. Incredibly, Plaintiffs *still* readopt and reincorporate all allegations into each of their ten separate causes of action, which continue to include conclusory regurgitations of the purported elements of each cause of action. Plaintiffs' Amended Complaint is thus still a shotgun pleading subject to dismissal. Moreover, Plaintiffs cannot avoid the irrefutable (public) fact that Carothers sold York in 2007, and therefore, any potential claim for emotional distress or property damage against Carothers is barred by North Carolina's 10-year statute of repose. Further, Plaintiffs still fail to state plausible causes of action and their individualized claims are not suitable for class certification under Rule 23, a deficiency which cannot be cured. For all of these reasons, the Amended Complaint and all putative class claims should be dismissed against Carothers with prejudice.

3

**ARGUMENT**

**A.      Plaintiffs' Amended Complaint should be dismissed as a shotgun pleading.**

As previously addressed in Carothers' first Motion to Dismiss, a "shotgun pleading" is one that "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading" or one in which "it is virtually impossible to know which allegations of fact are intended to support which claims for relief." *Wilkinson v. Wells Fargo Bank, N.A.*, 2020 WL 2542867, at *3 (W.D.N.C. May 19, 2020), *aff'd sub nom. Wilkinson v. FINRA*, 2023 WL 418063 (4th Cir. Jan. 26, 2023). *Sewraz v. Morchower*, 2009 WL 211578, at *1–2 (E.D. Va. Jan. 28, 2009) ("the Court concluded that [the] amended complaint did not comply with Federal Rule of Civil Procedure 8(a) because it was prolix, repetitive, and overly complex.").

Despite being informed of these deficiencies, the Amended Complaint is still an impermissible shotgun pleading. In connection with more than 40,000 alleged putative plaintiffs, Plaintiffs have only added to the complexity of their pleading by including 117 paragraphs (and over 100 subparagraphs) of allegations culminating, without further elaboration, in a list of over ten causes of action, wherein each claim readopts and reincorporates all prior allegations of the preceding claim. Plaintiffs still fail to allege that any of the numerous subparagraphs of allegations pertain to them specifically, or which ones pertain to the tens of thousands of persons they seek to represent. "This structure renders futile any attempt to align the Complaint's myriad factual allegations with its roughly [nine] causes of action. The presentation of these allegations also renders fruitless any attempt to discern which Defendants are allegedly responsible for which alleged acts of misconduct or which Defendants are sued under which theory of recovery." *McCrea v. Wells Fargo*, 2019 WL 2513770, at *7 (D. Md. June 17, 2019), *aff'd*, 852 Fed. Appx. 112 (4th Cir. 2021). *Howes v. SN Servicing Corp.*, 2021 WL 878354, at *8 (D. Md. Mar. 9, 2021), *amended on reconsideration*, 2022 WL 4554857 (D. Md. Sept. 29, 2022) ("The [] complaint, directed at

eight different defendants, is 135 pages long, with 470 paragraphs, 109 footnotes, and 69 exhibits . . . Each of the thirteen counts incorporates by reference all prior paragraphs in the complaint . . . It is arduous reading, it is undeniably too long, and it is in some respects the very definition of a shotgun pleading."). This is especially egregious here because Plaintiffs continue to comingle claims against all "Defendants" and do not include any allegations related to each Defendant's role or relation to the other. "Courts have been quick to reject [complaints] in which multiple defendants are lumped together, and with good reason; Rule 8 requires the complaint provide defendants with 'fair notice' of the claims asserted against them." *Bays v. Walmart Inc.,* 2022 WL 1297097, at *2 (S.D.W. Va. Apr. 29, 2022). Therefore, the Amended Complaint should be dismissed in its entirety as an impermissible shotgun pleading.

### B. Plaintiffs' claims against Carothers are still barred by North Carolina's 10-year statute of repose.

Plaintiffs' claims for emotional or mental distress and interference with or damage to property are subject to North Carolina's statute of repose, which provides that "no cause of action shall accrue more than 10 years from the last act or omission of defendant giving rise to the cause of action." N.C. Gen. Stat. § 1-52(16). "Unlike an ordinary statute of limitations which begins running upon accrual of the claim . . . the period contained in the statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." *Black v. Littlejohn*, 312 N.C. 626, 633 (1985). "Thus, the repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue." *Id.* N.C. Gen. Stat. § 1-52(16) also applies to injuries involving emotional harms. *Doe v. College*, 2017 WL 897654, at *2 (N.C. App. Ct. March 7, 2017) (N.C. Gen. Stat. § 1-52(16) barred all claims because they "sought recovery of damages for personal injury suffered

by plaintiff, specifically, severe emotional distress); *see also Doe v. Doe,* 973 F.2d 237, 242 (4th Cir. 1992).

Here, Plaintiffs assert general allegations of emotional or mental distress and interference with or damage to property (burial sites) as the basis for injury for each claim. (Am. Compl. at ¶¶ 16, 17, 18, 113, 127, 133, 140, 148, 151, 160, 169, 183, 189, 195). Therefore, each of Plaintiffs' claims are subject to the 10-year statute of repose. The Official Records of Mecklenburg County, North Carolina conclusively show that Defendant Carothers Holding Company, LLC ("Carothers")[6] sold York to StoneMor North Carolina, LLC ("StoneMor") over fifteen years ago pursuant to a Special Warranty Deed. **Exhibit 1** (12/18/07, North Carolina Special Warranty Deed). As a result, Carothers could not have engaged in the conduct alleged in the Complaint from 2007 to present. For this reason alone, the Amended Complaint should be dismissed as to Carothers. "In reviewing a Rule 12(b)(6) dismissal, [the court] may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009); *Mullis v. First Charter Bank*, 2013 WL 3899888, at *3 (W.D.N.C. July 29, 2013) (considering a public deed on a Rule 12(b)(6) motion).

Plaintiffs ignore the recorded Special Warranty Deed and instead assert without any basis that "[u]pon information and belief" Carothers somehow retained ownership of "Tracts 2-6, 9" of York Cemetery. Am. Compl. ¶106. Nothing in the Special Warranty Deed references Carothers retaining "Tracts 2-6, 9" or any other portion of the cemetery. Rather, the terms of the Special Warranty Deed are clear that the entire property identified in Exhibit "A" to the Special Warranty

---

[6] Carothers was formed on November 30, 2009, and was formerly known as Carothers Holding Company, Inc. as reflected in the December 18, 2007, Special Warranty Deed. *See* North Carolina Secretary of State Business Registration Information for "Carothers Holding Company, LLC" available at:
https://www.sosnc.gov/online_services/Search/Business_Registration_profile?Id=9254356.

Deed were conveyed to StoneMor, less the "Portions Taken for Highway Purposes" under "Tract I." The property conveyed is identified by Map/Parcel ID Number found at the bottom of Exhibit "A" to the Special Warranty Deed as 143-181-06, 143-171-04. Those Map/Parcel IDs match the current Mecklenburg County Property Records of the entirety of York Cemetery, which continues to be owned exclusively by StoneMor, not Carothers. *See* **Exhibit 2** (Mecklenburg County Property Records).[7] Plaintiffs' allegations fail as a matter of law given that the public records conclusively show that Carothers sold York Cemetery to StoneMor in 2007. Accordingly, Plaintiffs' claims are still barred by North Carolina's 10-year statute of repose. For these reasons, amendment would be futile, so the claims against Carothers should be dismissed with prejudice.

### C. Plaintiffs are still not proper parties under North Carolina law to bring claims on behalf of deceased relatives or on behalf of a purported class of decedents.

Plaintiffs' claims are still related to alleged conduct directed towards decedents who were buried at York—not the individual Plaintiffs. *See, e.g.,* Am. Compl. ¶¶3, 12, 17, 27, 34, 47, 56, 64, 74, 83, 88, 102, 117. In their Amended Complaint, Plaintiffs uniformly assert that the newly added Plaintiffs are the "next of kin" of decedents buried at the cemetery (Plaintiff Simpson still fails to allege he is the "next of kin."). But the rote addition of the "next of kin" characterization is insufficient to grant Plaintiffs standing under North Carolina law. This is because – as argued in the original motion to dismiss – not all heirs or beneficiaries can bring an action; they must first be properly authorized to proceed on behalf of a decedent's estate, as set forth in N.C.G.S.A.

---

[7] To the extent Plaintiffs may be relying on language in Exhibit "B" to the Special Warranty Deed, Exhibit "B" identifies encumbrances on the York Cemetery property that was conveyed, as identified by the terms of the Special Warranty Deed: "This conveyance is made subject to all Permitted Exceptions found in Exhibit "B" hereto." *See, e.g.,* 20 Am. Jur. 2d Covenants, Etc. § ("[B]y executing a warranty deed, a grantor warrants that the property is free from all encumbrances except those identified in the deed."). (It also makes sense that an active cemetery adjacent to public parks and roadways would have an extensive list of encumbrances and easements identified in the Special Warranty Deed).

§ 28A-18-1(a): the "rights to prosecute or defend any action or special proceeding, existing in favor of or against [a decedent] . . . shall survive to and against the personal representative or collector of the person's estate."

Despite amending the Complaint, Plaintiffs still do not allege that they are the "personal representative[s] or collector[s]" of any person buried at York. Plaintiffs therefore still fail to allege that they are the proper parties to pursue claims that are vested in decedents buried at York. *See, e.g., Camper v. Manning*, 2011 WL 2550820, at *4 (E.D. Va. June 27, 2011) (under North Carolina law, only the personal representative of the estate can pursue a breach of contract claims that were personal to the deceased during his lifetime); *Daniels v. Nat'l R.R. Passenger Corp.*, 2011 WL 5870056, at *2 (E.D.N.C. Nov. 22, 2011) ("Plaintiff lacks capacity to sue" where she "fail[s] to show that she is either the personal representative or collector of the decedent"). Accordingly, because Plaintiffs fail to allege that they are the personal representatives or collectors of a decedent's estate, the Amended Complaint – or at a minimum, Counts I, II, III, V, VI, VIII, IX, and X – should be dismissed. Further, Plaintiff Hubert Simpson who is not "next of kin," lacks the requisite authority to bring claims regarding the treatment of decedents buried at York. North Carolina law is clear that such standing is vested solely in the decedent's next of kin. *See, e.g., Norton v. Scotland Mem'l Hosp., Inc.*, 250 N.C. App. 392, 402 (2016); and *Dumouchelle v. Duke Univ.*, 69 N.C. App. 471, 474 (1984). Therefore, the Amended Complaint – or at least Counts IV, VII, VIII, and X – should be dismissed as to the non-next of kin Plaintiffs.

## D. Plaintiffs fail to state a claim for "unfair and deceptive trade practices."

The core of Plaintiffs' UDTPA claim is the same as its breach of contract claim: that Defendants represented that "choosing and purchasing burial plots will ensure[]" certain benefits. (*See* Am. Compl., ¶ 119.) As Plaintiffs acknowledge, their UDTPA claims are based on acts which

allegedly "frustrate the purpose of their relationship with York Cemetery," (*id.*, ¶ 127), which is contractual in nature. Indeed, Plaintiffs' breach of contract claim (Count II) is based on the same underlying facts and allegations as its UDTPA claim, (*see id.*, ¶¶ 129 and 131). Therefore, Plaintiffs' UDTPA claim fails for the same reasons as their breach of contract claim. *See Birtha v. StoneMor, North Carolina, LLC*, 220 N.C. App. 286, 298 (2012); *see also* Section E, below. Plaintiffs' UDTPA claim also fails because they do not allege any "substantial aggravating circumstances," *Birtha,* 220 N.C. App. at 298 ("[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an [UDTPA] action . . . [without] substantial aggravating circumstance.") *Hardin v. York Memorial Park*, 221 N.C. App. 317, 328 (2012).

Plaintiffs also fail to identify any specific misrepresentations made to them or their deceased family members and because Plaintiffs did not enter into contracts with Defendants, they could not have actually relied on any alleged misrepresentations at issue. "[W]here an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show actual reliance on the alleged misrepresentation in order to establish that the alleged misrepresentation proximately caused' the injury of which plaintiff complains." *Crossroads Trucking Corp. v. TruNorth Warranty Plans of N. Am., LLC*, 2022 WL 3952221, at *6 (W.D.N.C. Aug. 31, 2022) (citations omitted). Therefore, because Plaintiffs could not act on any alleged misrepresentations they never received, they cannot show actual reliance. *See McCauley v. Hospira, Inc.*, 2011 WL 3439145, at *6 (M.D.N.C. Aug. 5, 2011); *D C Custom Freight, LLC v. Tammy A. Ross & Assocs.*, 273 N.C. App. 220, 221 (2020) (holding that alleged misrepresentations to a third party cannot sustain a UDTPA claim because "actual reliance requires that the plaintiff have affirmatively incorporated the alleged misrepresentation into his or her decision-making process."). Plaintiffs' claims are also subject to Rule 9(b) and for the same reasons they fail to state

with particularity the alleged misrepresentations made to them. *Johnson v. Lendlease (US) Pub. P'ship, LLC,* 2022 WL 2447091, at *15 (E.D.N.C. July 5, 2022) (" …Rule 9(b) applies to unfair and deceptive trade practices claims based on alleged misrepresentations."). Therefore, Plaintiff's UDTPA claim (Count I) should be dismissed.

### E. Plaintiffs fail to state a claim for breach of contract, third-party beneficiary contract, or specific performance of any contract.

To state a cause of action for breach of contract, Plaintiffs "must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach." *Birtha*, 220 N.C. App. at 296. At a minimum, the allegations of the complaint must at least provide general terms of the contract sufficient to determine whether a breach occurred. *Id.* (dismissing plaintiff's breach of contract claims because, *inter alia*, the complaint lacked any identification of the terms of the contracts that were allegedly breached). As an initial matter, none of the named Plaintiffs other than Plaintiff, Burlin Allen Sr., alleges that they are parties to a contract with any Defendant. Instead, Plaintiffs allege that their decedents entered into contracts with unspecified Defendants, and that those contractual agreements are commemorated in Certificates of Interment Rights issued at the time the agreements were reached. Amend. Compl. ¶3. While Plaintiffs other than Simpson provide the names and approximate dates of death for their next of kin buried at York, Plaintiffs do not allege they entered into contracts with one or more of the Defendants. Amend. Comp. ¶130. Therefore, Plaintiffs (other than Allen, Sr.) have failed to allege sufficient facts to establish the existence of a valid contract between the parties.

Plaintiffs—including Allen, Sr.— also fail to "provide even general terms of the contract[s] which [are] necessary to determine whether a breach occurred." *Birtha,* 220 N.C. App. at 296. While Plaintiffs generally allege types of terms that may exist, Plaintiffs fail to actually identify

any of those terms or Defendants breached them, other than conclusory language stating that "Defendants breached its (sic) contractual responsibilities by the action of the Defendant as set forth above." Amend. Compl. ¶¶ 131 and 137. Accordingly, as in *Birtha*, Plaintiffs fail to state causes of action for breach of contract and Count II of the Amended Complaint should be dismissed. For the same reasons, Plaintiffs' claims for "specific performance," (Count IX) should also be dismissed. *See Action Develop. Corp. v. Woodall*, 21 N.C. App. 567, 570 (1974) (party seeking specific performance must show entitlement to the relief being sought under the terms of a valid contract that has been breached).

Additionally, Allen, Sr.'s breach of contract claim is barred by the applicable statute of limitations. He alleges that (a) he purchased an unspecified number of family cemetery lots in 1996, but that (b) over the past twenty years unidentified Defendants sold an unspecified number of those plots to third persons. Amend. Compl. ¶¶77-81. Because Allen, Sr. affirmatively alleges that the alleged breaches of contract occurred over the course of twenty years, his breach of contract claim raised in Count II is barred by the applicable three-year statute of limitations (N.C. Gen. Stat. § 1-52(1); *Birtha*, 220 N.C. App. at 294-95 (holding that breach of contract claims were barred under three-year statute of limitations where complaint alleged that defendants sold grave spaces to third persons over a multi-year period).

As for third party beneficiary claims raised in Count VI, in order "[t]o establish a claim based on the third-party beneficiary contract doctrine, a complaint's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *Hardin*, 221 N.C. App. at 324. In *Birtha*, the court of held that the same deficiencies in plaintiff's breach of contract claim also doomed the third-party beneficiary breach of contract claims. 220 N.C. App.

at 296. As in *Birtha,* Plaintiffs merely provide a threadbare recital of the elements of a third-party beneficiary breach of contract claim, failing to identify any provisions that purportedly reflect the parties' intent to provide direct and not incidental benefits to the Plaintiffs. *See* Amend. Compl. ¶¶ 157-161. Those allegations are insufficient under *Twombly/Iqbal.*[8] Furthermore, *Hardin* held that a plaintiff is a third-party beneficiary of a cemetery contract only when the contract secures grave space for the plaintiff. 221 N.C. App. at 324. Here, none of the Plaintiffs allege that contracts to which they are third parties purchased grave spaces for their use. Therefore, Count VI should be dismissed.

      **F.**     **Plaintiffs fail to state a claim for negligence.**

The requisite elements of a cause of action for negligence are: "(1) the defendant owed the plaintiff a duty of reasonable care, (2) the defendant breached that duty, (3) the defendant's breach was an actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages as the result of the defendant's breach." *Gibson v. Ussery*, 196 N.C. App. 140, 143 (2009). The duty must be owed to the plaintiff, not to others, and cannot be merely derivative of a breach of contract claim. *See, Birtha*, 220 N.C. App. at 295 (dismissing negligence claim as statutory duty to keep adequate records of burials was owed to the N.C. Cemetery Commission, not to next of kin); and *Hardin*, 221 N.C. App. at 325-26 (dismissing negligence claim that was based on alleged breach of contractual obligation and violation of funeral regulatory statutes). To circumvent *Birtha* and *Hardin*, Plaintiffs attempt to rely on *Mills v. Cemetery Park Corp.*, 242 N.C. 20 (1955) (Am. Compl., ¶ 143). But the "sound public policy to protect the burying place of the dead referenced

---

[8] *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

in *Mills* (*Id.*, 242 N.C. at 27) is no different than the statutory violations found insufficient in *Birtha* and *Hardin*. Count III should accordingly be dismissed.

### G. Plaintiff fails to state a claim for NIED or IIED.

To state a claim for negligent infliction of emotional distress the plaintiff must plead (among other things) that it was reasonably foreseeable that the defendant's negligent conduct would cause severe emotional distress, and that the conduct did in fact cause the plaintiff severe emotional distress. *Hardin,* 221 N.C. App. at 327. Similarly, a claim for intentional infliction of emotional distress requires "extreme and outrageous conduct" which causes "severe emotional distress." *Guthrie v. Conroy*, 152 N.C. App. 15, 21 (2002); *Waddle v. Sparks,* 331 N.C. 73 (1992) (applying definition of "severe emotional distress" used in NIED to IIED). "In this context, the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 445, 449 (2003).

Here, Plaintiff offers nothing more than conclusory allegations reciting the elements of a cause of action for NIED and IIED. Amend Compl. ¶¶146-149, 165-172. It is well-established under North Carolina law that a plaintiff cannot sustain an NIED or IIED claim merely by alleging that emotional harm is "severe" without "identify[ing] a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Moschos v. Moschos*, 882 S.E.2d 401, 404 (N.C. App. Ct. 2022) (dismissing IIED claim for "fail[ure] to allege sufficient facts concerning the type, manner, or degree of severe emotional distress Plaintiff claims to have experienced"); *Sanders v. Duke Energy Carolinas, LLC*, 2022 WL 282567, at *3 (W.D.N.C. Jan. 31, 2022) (dismissing NIED claim because "there is no factual

13

allegation to support the alleged fact of severe emotional harm . . . other than the generalized, conclusory statement that the harm occurred and was 'reasonably foreseeable'"). Here, Plaintiffs efforts to modify their prior pleadings by claiming that "Plaintiffs and various members of the Class which they represent are engaging upon the establishment of a Mental Health Support Group to assist them in the coping of the loss of their family legacy and history . . ." [Amend. Compl. ⁋166] falls far short of the pleading requirements for NIED and IIED claims. Accordingly, Counts IV and VII should be dismissed.

### H.     Plaintiff fails to state a RICO claim under N.C.G.S. Chapter 75-D1.

Plaintiffs' RICO claims also fail under *Twombly/Iqbal* pleading requirements. Plaintiffs' RICO claim, as amended, still fails to provide any substantive explanation for the basis of the claim. Any added substantive explanation focuses on "its employees," which is fatal to Plaintiffs' RICO claim, as explained below. Absent the non-conspiratorial additions of what employees allegedly did, Plaintiff simply regurgitates elements of a RICO claim in North Carolina. (Am. Compl., ¶ 174, 175, 176, 178, 180.) Plaintiffs' claim remains replete with "wholly conclusory allegations concerning predicate acts are nothing more than mere 'labels and conclusions.'" *Ruston v. United States*, 2012 WL 6608609, at *2 (E.D.N.C. Dec. 18, 2012). Plaintiff's "[c]onclusory allegations of a conspiracy do not demonstrate the 'meeting of the minds' element." *Id*.; *Ostoyic v. Buchanan*, 2020 WL 6276063, at *2 (W.D.N.C. Oct. 26, 2020) ("Absent some factual enhancement, [RICO-based] allegations . . .  are insufficient to satisfy *Twombly*."). "Moreover, there is no proof that the Plaintiffs complied with the statute by 'concurrently notify[ing] the Attorney General in writing of the commencement of the action." *Synergy Fin. LLC v. Zarro,* 329 F. Supp. 2d 701, 704 (W.D.N.C. 2004) (citing N.C. Gen. Stat. § 75D-8(c)) (dismissing NC RICO claim on Rule 12(b)(6) motion to dismiss).

To the extent that Plaintiffs did expand on the factual predicates of the RICO claim, their new allegations establish that the RICO claim is barred by the intra-corporate doctrine. The Amended Complaint's additions focus on what Defendants allegedly told "its employees" to do in furtherance of the wrongful conduct. [Am. Compl. ¶¶ 175 (Defendants "coerce[d]" employees, 177 ("Defendants mandate[d] that its employees"), 179 (Defendants "forbid[] its employees").][9] These new allegations are fatal because "an allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself[,] and is therefore insufficient to establish a claim for civil conspiracy." *Seguro-Suarez by & through Connette v. Key Risk Ins. Co.*, 261 N.C. App. 200, 218 (2018). "The doctrine of intra-corporate immunity provides that because 'at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself." *Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n, Inc.*, 255 N.C. App. 236, 250 (2017); *see also Chrysler Credit Corp. v. Rebhan*, 66 N.C. App. 255, 259 (1984). Because all of the alleged misconduct occurred internally of Defendants, there cannot be a conspiracy and Count VIII claim should be dismissed.

## I.     Plaintiffs fail to state a claim for "Grave Desecration."

Plaintiffs seek to pursue class action relief for desecration of gravesites in Count X of the Amended Complaint.[10]  To state a valid cause of action for wrongful desecration of a gravesite a

---

[9] While Plaintiffs refer to "Defendants," they speak of them in the collective as a single entity, "it". (*See*, *e.g.*, Am. Compl. ¶¶ 115, 120, 121, 144, 177, and 179 ). For example, Plaintiffs contend that "Defendants breached *its* contractual responsibilities," (*id.*, ¶ 137; *see also id.*, ¶ 162). Together, Plaintiffs describe a vertical relationship among Defendants and "its employees," while a conspiracy requires a horizontal (*i.e.*, peer-to-peer) relationship.

[10] A claim for desecration of graves is not a claim that is generally certifiable as a class action because "damages consist largely of mental suffering [and] [t]he damages may vary a great deal," *Perry v. Cullipher*, 69 N.C. App. 761, 763 (1984).

plaintiff must allege that the defendant engaged in some act of "desecration," which has been defined as the defacement, damage, or other mistreatment of the physical area of the decedent's grave site or common areas of the cemetery in a manner that a reasonable person knows will outrage the sensibilities of others (*see Robinson v. Forest Creek Ltd. P'ship*, 213 N.C. App. 593, 597 (2011)), and the claim must be brought within 10 years. *See Robinson v. Wadford* ("*Robinson II*"), 222 N.C. App. 694, 700 (2012) (claim brought after 12 years "was not timely filed and the trial court did not err in granting Defendant's motion to dismiss").

Plaintiffs' allegations acknowledge that Carothers ceased having any involvement in the operation of York Cemetery in 2007. Plaintiffs affirm in ¶ 106 of their Amended Complaint that Carothers sold York Cemetery to StoneMor in 2007.[11] Plaintiffs' effort to circumvent this admission by alleging that, "[u]pon information and belief," Carothers "maintain[ed] certain tracts of York Cemetery, (Am. Compl., ¶ 106), is neither material nor inconsistent with this issue. Owning land is not an act of desecration. *See, e.g., Robinson II*, 222 N.C.App. at 700 (rejecting argument that action accrued when title to land transferred because transfer does not "amount[] to an act of desecration"). Plaintiffs' allegation in ¶ 106 of the Amended Complaint that Carothers retained some portion of land is thus insufficient to establish requisite desecration and also contradicts the terms of the Special Warranty Deed, as set forth above. As Carothers's involvement in the operation of York Cemetery ended prior to 2007, any act of desecration attributed to Carothers necessarily occurred more than 10 years before Plaintiffs commenced this action, and Plaintiffs' claims against Carothers are time-barred as a matter of law. *Id.*

---

[11] To the extent that Plaintiffs invoke the allegations that "Defendants" engaged in misconduct, this simply further demonstrates the impermissible shotgun-nature of the Amended Complaint, as neither the Court nor Defendants can ascertain which Defendant – Carothers or StoneMor – allegedly engaged in the improper acts.

**J.      The putative class claims in the Amended Complaint still cannot satisfy Rule 23 and should be dismissed or stricken, without leave to amend.**

Pursuant to Fed. R. Civ. P. 23(c)(1)(A), a court must make a determination on class certification "at an early practicable time." Rule 23 mandates an early consideration of class certification, because delay in consideration of the issue of class certification would "introduc[e] needless and avoidable complexity into an already complex case." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009). The Supreme Court, in *Gen Tel. Co. of the Southwest v Falcon*, 457 U.S. 147, 160 (1982), has recognized that "sometimes [class certification] issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." Where it is apparent from the face of the complaint that a class action cannot be maintained, as is true here, it is proper to strike or dismiss the class allegations *both before discovery and before the plaintiff moves for certification*. *See Flint v. Ally Fin., Inc.*, 2020 WL 1492701, at **3-5 (W.D.N.C. Mar. 27, 2020) (granting motion to strike class allegations); *Williams v. Potomac Family Dining Grp. Operating Co., LLC,* 2019 WL 5309628, **4-8 (D. Md. Oct. 21, 2019) (same); *Waters v. Electrolux Home Products, Inc.*, 2016 WL 3926431 (N.D. W. Va. July 18, 2016).

When the Court considers a motion to dismiss or strike class allegations prior to discovery, it should be analyzed under "the familiar standard of review for motions to dismiss under Rule 12(b)(6)." *Bigelow v. Syneos Health, LLC,* 2020 WL 5078770 at *4 (E.D.N.C. Aug. 27, 2020); *Williams*, 2019 WL 5309628 at *5.[12] This is Plaintiffs' second shot at alleging their class claims. And as set forth above, the allegations of the Amended Complaint – including the addition of *nine*

---

[12]   Plaintiffs' class allegations must meet pleading standards enunciated in *Twombly* and *Iqbal*. *Scott v. Family Dollar Stores, Inc.,* 733 F.3d 105 (4th Cir. 2013).

*additional class representatives with varying grievances* – only move the needle backward. Plaintiffs again fail, as a matter of law, to adequately allege a class action and only reinforce the fact that this case is wholly unsuited for class treatment. The *very nature* of Plaintiffs' allegations—primarily involving mental distress by those who have allegedly suffered a loss of opportunity to honor their deceased loved ones (Am. Compl. ¶¶15-17; 112)—is inherently individualized and personal. *See Perry v. Culliipher,* 69 N.C. App. 761, 763 (1984) (class certification denied in case involving desecration of grave sites, because the "mental suffering" from putative class members will "vary greatly among the parties.") There is no need for the parties or this Court to waste resources on discovery which will not, under any circumstances, substantiate the purported class.

### i. Plaintiffs' proposed class cannot satisfy the requirements of Rule 23.

Fed. R. Civ. P. 23 requires that a plaintiff meet two rigorous requirements. A plaintiff must first meet the requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality class, and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311 (4th Cir. 2006)); *Flint*, 2020 WL 1492701 at *3. Once these requirements are met, the plaintiff must demonstrate that "questions of law or fact common to the class predominate over any questions affecting individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The allegations of the Amended Complaint fail to meet these requirements.

### 1. Individual factual issues predominate over common issues.

Where resolution of a question "turns on consideration of the individual circumstances of each class member," it is not "common" and class certification is inappropriate. *Flint,* 2020 WL 1492701 at *4; *Rose v. SLM Fin. Corp.,* 254 F.R.D. 269, 272 (W.D.N.C. 2008); *Thorn*, 445 F.3d at 311. The predominance element tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Predominance fails where

resolution of the purported liability to each class member turns on individualized circumstances. *See Lienhart v. Dryvit Sys., Inc*., 255 F.3d 138, 149 (4th Cir. 2001); *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 254 F.R.D. 68, 75 (E.D.N.C. 2008) (no predominance where causation and affirmative defenses would "dominate most every class member's case").

Despite being informed of the numerous flaws in their original class definition, Plaintiffs once again seek to certify a virtually identical class that includes thousands of purchasers of burial rights at York Memorial Cemetery over a span of more than fifty (50) years. Plaintiffs also again allege that the Defendants "failed to disclose and have intentionally concealed **"thousands of material and substantial facts"** from the class members, listing more than **seventy-six (76)** "misdeeds" committed by the Defendants. (Am. Compl. ¶¶ 20 a-dd; 113 a-xxx). The allegations of harm of the ten (10) individual Plaintiffs vary (*see, e.g.,* Am. Compl., ¶¶ 31, 45, 54, 79, 96), and *none* allege that he or she suffered each of these individual harms, let alone how he or she can represent a class of thousands who may or may not have suffered some, all or none of the same harms, and which acts may have been committed by different Defendants. Indeed, it would be impossible for any one class member to suffer each of these injuries, as many of them are contradictory. By way of example, a class member whose family member was buried in an incorrect gravesite (¶ 20 (g)) cannot also be a class member whose family member's grave "cannot be identified" (¶ 20 (j)), or a class member where a body has been located but cannot be identified (¶ 20 (s)), or a class member whose baby was buried on the "hill of babies." (¶ 20 (v)). Further, Plaintiffs allege in the Amended Complaint (at ¶11) that not all of the gravesites have been impacted, conceding that the class includes members who *have suffered no injuries at all*.

Plaintiffs further compound this by adding allegations regarding the purported "reliance" on alleged "misrepresentations" by Defendants, including reliance on Facebook posts as the "sole"

reason for their decisions to purchase burial plots. (Am. Compl., ¶ 19). These issues are necessarily individualized among the thousands of class members, many of whom purchased their plots years before social media existed, or may not have any social media at all or ever seen the alleged posts. *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 341 (4th Cir. 1998) (recognizing reliance as "not readily susceptible to class-wide proof).

Given these highly-fact specific allegations, this Court would be forced to conduct mini-trials for each of the thousands of class members to determine which, if any, of these "misdeeds" they suffered. Nearly every inquiry regarding the proximate cause of each Plaintiff's and the putative class members' alleged injuries will be unique. It is clear from the face of the Amended Complaint that, as a matter of law, Plaintiffs' class cannot be certified.

### 2. The proposed class members' damages are also highly individualized.

As recognized by the court in *Perry,* the very nature of Plaintiffs' claims renders the measure of damages for each individual Plaintiff and putative class member individualized. 69 N.C. App at 763. When damages are highly individualized, it weighs against finding a predominance of issues under Rule 23(b)(3). *Broussard,* 155 F.3d at 342-43; *Talley v. ARINC, Inc.,* 222 F.R.D. 260, 270 (4th Cir. 2004) (reaffirming the well-settled principle that cases requiring individualized proof of damages fail to satisfy the predominance requirement.) Given the widely disparate circumstances of each of the Plaintiffs, not to mention the thousands of putative class members, and the nature of their alleged injuries, damages cannot be ascertained on a class-wide basis. Claims for damages will necessarily focus on facts and issues specific to individuals rather than the class as a whole, including which of Defendants' alleged "wrongful acts" each class member (or his or her family member or "next of kin") was subjected to, and how it affected each class member, financially, emotionally and physically.

This is true especially for Plaintiffs' claims for emotional distress. (Counts IV and VII) The Fourth Circuit has recognized that due to their individualized nature, emotional distress claims "are likely to be so variable and fact-specific that damages issues overwhelm liability, precluding class certification." *Doe v. Chao*, 306 F.2d 170, 183 (4th Cir. 2002), *cert. denied*, 539 U.S. 957 (2003); *See also Allison v. Citgo Petrol Corp.,* 151 F.3d 402, 417 (5th Cir. 1998) emotional damage implicate "the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy."); *Brandner v. Abbott Lab., Inc*, 2012 WL 195540, * 5 (E.D. La. Jan. 23, 2012) (". . . the determination of whether each member suffered emotional distress turns on a highly individualized assessment. . .") Because certification is facially inappropriate, the class allegations of the Amended Complaint should be stricken.

### 3. Each of the Plaintiffs' claims are not typical of those of the putative class members and they are not adequate class representatives.

Rule 23(a)(3) requires that, in order to maintain a class action, a plaintiff must show that her claims "are typical of the claims. . . of the class." A class representative must suffer the same injuries as class members. *Gen. Tel. Co.*, 457 U.S. at 156; *Souter v. Equifax Info. Serv., LLC,* 498 Fed. Appx. 260 (4th Cir. 2012) (typicality "'goes to the heart of a representative[s] ability to represent a class.'"); *In re Cree, Inc. Sec. Litig.,* 219 F.R.D. 369, 372 (M.D.N.C. 2003). The presence of individualized issues makes it difficult for a class representative to demonstrate typicality. *Electrolux,* 2016 WL 3926431 at * 5; *Ross-Randolph v. Allstate Ins. Co.,* 2001 WL 36042162, at *5 (D. Md. May 11, 2001) (no typicality where the court must make "specific individual inquiries as to each of the class plaintiffs regarding the critical issues.") As shown above, even the claims of the named Plaintiffs vary, and they seek to represent a broad class whose circumstances are far different than theirs. Each class member may have suffered different injuries, ranging from lost bodies of family members to the purchase of burial plots in which unknown

bodies were buried. It is simply impossible for Plaintiffs to adequately represent any class member based on his or her own unique set of circumstances. By way of example only, Plaintiff Simpson is not even a member of the class he seeks to represent. He does not allege that he purchased interment rights, entered into any agreement authorizing members of his family to be interred or that he is an "authorized representative" of either of those. Rather, he alleges that he (as an "heir" and an "intended beneficiary") has a "multiplicity" of unnamed family members buried at York. (Am. Compl., ¶ 23). Simpson does not even allege that he was injured in any of the multitude of ways he claims the class members were injured. He simply alleges that there was a "substantial risk" that his (unspecified) family members' final wishes would not be followed. *Id.* at ¶ 26.

    **4.**     **A class action is not a superior method to adjudicate this dispute because the individuals' interest in conducting separate lawsuits is evident by the separate suit that has already been filed.**

As noted above, certification under Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." In evaluating the superiority of a class action, a court should "compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267, 274 (4th Cir. 2010). Rule 23(b)(3)(A)-(D) sets forth a non-exhaustive list of factors pertinent to a court's "close look" at the predominance and superiority criteria, including the interests of class members to bring individual claim, the extent to which any such cases have already been filed and the difficulties in manageability of the case. Where individualized issues overwhelm common issues, as here, the difficulties in managing the class defeat superiority. *Farrar*, 254 F.R.D. at 74, n.4 ("difficulties in managing a class action in which the court would need to address

individual issues over and over again would far outweigh and marginal increase in judicial efficiency that might result from class certification."); *Gresser v. Wells Fargo Bank, N.A.,* No. 12-987, 2014 WL 1320092, *9 (D. Md. March 31, 2014) (individualized inquiries necessary to resolve class members' claims rendered class "unmanageable.") Where individuals have incentives to pursue their own legal interests, a class action is not a superior mechanism to prosecute the case. *See Amchem*, 521 U.S. at 615–16; *Plotnick v. Comp. Sci. Corp. Deferred Comp. Plan for Key Employees,* 2016 WL 1704158, at *10 (E.D. Va. April 26, 2016). Here, it goes without saying that the putative class members will have an interest in pursuing any potential claims based upon the burial and honoring the last wishes of their deceased loved ones. Indeed, Plaintiff's counsel in this case has **already** filed a nearly identical lawsuit in the same state court asserting the same causes of action on behalf of five (5) individual Plaintiffs, styled *Natalia Little et al. v. Carothers Holding Co., LLC et al.,* No. 23-CVS-4924. *See* DE 1-5. The Amended Complaint is a textbook example of a case that is not suitable for class certification.

### ii. Plaintiff's proposed class is also impermissibly overbroad because it includes putative class members that lack standing.

A class definition is over-inclusive if it contains members who, like many of the putative class members in this case, have no claims. *Rosedale v. CarChex, LLC,* 2020 WL 998740, *4 (D. Md. Mar. 2, 2020); *Dykes v. Portfolio Recovery Assoc., LLC*, 2016 WL 346959 *3 (E.D. Va. Jan. 28, 2016) ("Courts have refused to certify a class 'if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.'") In *Rosedale,* Plaintiff sought to certify a class of "purchasers" of vehicle service contracts ("VSCs") from the defendant, claiming that they made misrepresentations in the scope of coverage under the agreements. *Id.* at *4. In granting defendant's motion to dismiss, the court held that plaintiff's class of all "purchasers" was "grossly overbroad" and included purchasers who suffered different injuries

from plaintiff's, or no injuries at all. *Id.* at *5. *See also Kemblesville HHMO Cntr., LLC v. Landhope Realty Co*., 2011 WL 3240779 *5 (E.D. Pa. July 28, 2011).

No discovery is necessary to show that Plaintiffs' proposed class is grossly overbroad and necessarily includes putative members who have suffered injuries different from those of the Plaintiff, or no injuries at all. Indeed, Plaintiffs concede that not all of the gravesites have been impacted by the alleged wrongdoings, and therefore the class includes members without standing. (Am. Compl., ¶ 11). Despite this admission, the class definition includes *all* purchasers of interment rights or who entered into agreements "authorizing" the interment of their family members (or their "authorized representatives") – over a span of half a century – *regardless* of whether they have used or needed the burial services. The vast majority of the "harms" alleged by Plaintiffs necessarily depend upon a putative class member being buried at the cemetery. The class further includes "purchasers" who may be satisfied with where their loved ones are buried. In other words, the class includes thousands of members simply because they "purchased" or "authorized" interment rights, "irrespective of any actual connection to Defendants' activities." *See Kemblesville*, 2011 WL 3240779 at *5. Plaintiff's allegations plainly demonstrate that this lawsuit is ill-suited for adjudication as a class action.

### iii.    Members of the putative class are not "readily identifiable."

An essential prerequisite to certification under Rule 23 is that the class is adequately defined so that the members of the class are "readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (internal citations omitted). In other words, a proposed class definition must be stated in *objectively* definable terms. *EQT*, 764 F.3d at 358. Where it is impossible to identify class members without "extensive and individualized fact-finding or mini-trials," a class cannot be certified. *Id. See also, Krakauer v. Dish Network,  LLC,* 925 F.3d 643,

654-55 (4th Cir. 2019); *Anderson v. Laboratory Corporation of America Holdings,* 2023 WL 1970953 (M.D.N.C. Feb. 13, 2023) (class not ascertainable where plaintiffs "failed to identify an objective and administratively feasible way" to identify class members).

Here, Plaintiffs' allegations demonstrate the breadth of the class (set forth in ¶12), which they claim affects a "substantial population of the African American community in Charlotte-Mecklenburg County, North Carolina" and includes "**the gamut of members of the African American community ranging from prominent historical Civil Rights leaders of the 1960's, to business leaders, as well as educators, cafeteria workers, domestic workers and even infants**." (*Id.* at ¶13) (emphasis added). Plaintiffs further allege that "York Memorial Cemetery, has sold more than 40,000 burial plots." *Id.* at ¶21). This amorphous and wide-ranging class definition is fundamentally and irreparably defective because its members are not "readily identifiable," if they are identifiable at all. Identification of class members would require a multi-pronged, individualized examination for each. Indeed, the class definition provides more questions than answers as to who the class members are. Even if individuals who "purchased" interment rights or entered into agreements "authorizing" interment rights for their "relations" could be identified – which they cannot – the inquiry would not end there. Further inquiry would have to be made as whether any such individuals are still living or deceased and, if any such individuals are deceased, identification of their "authorized representative" or "next of kin." The Amended Complaint does not define who is included in "family members or other relations," or who can be included as an "authorized representative." It is impossible to identify the members of the proposed class, let alone in an objective manner. This defect alone defeats class certification, which cannot be overcome. The class claims should be dismissed or stricken.

Date: June 26, 2023

Respectfully Submitted,

/s/ William M. Butler
Anthony T. Lathrop
N.C. Bar No. 15941
William M. Butler
N.C. Bar No. 49116
**MOORE & VAN ALLEN PLLC**
100 North Tryon Street, Floor 47
Charlotte, NC 28202-4003
Telephone:    (704) 331-2455
Facsimile:     (704) 339-5964
Email: tonylathrop@mvalaw.com
         billbutler@mvalaw.com

         and

WEINBERG WHEELER
HUDGINS GUNN & DIAL, LLC

/s/ Alexander Heydemann

Nicholas P. Panayotopoulos
Georgia Bar No. 560679
(Pro Hac Vice to be filed).
Alexander Heydemann
Florida Bar No. 0111544
(Pro Hac Vice to be filed)
Jennifer Adler
Georgia Bar No. 585635
(Pro Hac Vice to be filed)
3344 Peachtree Rd.
Suite #2400
Atlanta, GA 30326
T. 404-591-9662
F. 404-875-9433
aheydemann@wwhgd.com
jadler@wwhgd.com
dthompson@wwhgd.com

*ATTORNEYS FOR DEFENDANT CAROTHERS*
*HOLDING COMPANY, LLC*