# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

**Civil Action No. 23-cv-00217**

| | |
|---|---|
| **HUBERT SIMPSON, LYNDA MASON, ALLISON MONTGOMERY, PIERRE DAVIS, LAVONNE JONES HAYNES ANDERSON, MARIO BLACK, ANDREA BYERS, BURLIN ALLEN, SR., BURLIN ALLEN, JR., and JACQUELINE W. McCLINTON, individually, and on behalf of themselves and all others similarly situated,** ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF STONEMOR DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT IN PART AND MOTION TO STRIKE OR DISMISS CLASS ALLEGATIONS** |
| **Plaintiffs,** ) ) ) | |
| **v.** ) ) ) | |
| **CAROTHERS HOLDING COMPANY, LLC, *et al.*,** ) ) ) ) | |
| **Defendants.** ) | |

## INTRODUCTION

Plaintiffs bring this putative class action seeking to represent untold and wholly unspecified individuals for alleged conduct relating to gravesites that purportedly occurred at York Memorial Cemetery ("York") from 1969 to present. After the Defendants filed separate motions to dismiss the Complaint filed by Plaintiff Simpson only, Plaintiffs have now filed a First Amended Verified Complaint (hereinafter, the "FAC"), adding nine additional named Plaintiffs. However, the FAC suffers from many of the same deficiencies as the original Complaint. Indeed, similar to the original Complaint, the FAC includes a host of generalized allegations relating to gravesites at York, *e.g.,* improper and unauthorized exploratory digs, the performance of sonograms to locate buried remains, the encroachment of gravesites upon one another, the discovery of remains while

digging sites for new burials, and the puncturing of vaults while probing to identify persons previously buried. However, these generalized allegations allegedly impacting over 40,000 burial plots over the last fifty-plus years are almost entirely unrelated to the alleged facts and harms specific to each of the named Plaintiffs' deceased family members.

The FAC's deficiencies do not stop there. Plaintiffs provide no basis to establish that they have standing to bring the claims asserted, including whether any of them is a proper party to bring claims on behalf of their respective (and sometimes, unidentified) deceased relatives. Additionally, Plaintiffs indiscriminately cast their wide-ranging allegations against all six Defendants, making no effort to identify what specific acts or omissions each Defendant is purportedly responsible for, what role each Defendant took relative to the causes of action asserted, which allegations pertain to each Defendant, or the Defendants' relationship(s) to one another, to Plaintiffs, and/or to Plaintiffs' deceased relatives. These failures not only fall short of the requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure, but also make clear that the FAC fails to state a claim upon which relief can be granted and therefore should be dismissed pursuant to Rule 12(b)(6).

In this regard, similar claims brought by Plaintiffs' counsel relating to the same kinds of alleged conduct at York have been summarily rejected on two occasions. *See Birtha v. StoneMor North Carolina, LLC*, 220 N.C. App. 286 (2012) (affirming Rule 12 dismissal of all claims, including claims for common law negligence, negligence per se, fraud, unfair and deceptive trade practices, and breach of contract) and *Hardin v. York Mem'l Park*, 221 N.C. App. 317 (2012) (affirming Rule 12 dismissal of plaintiffs' claims for negligence, intentional and negligent infliction of emotional distress, unfair and deceptive trade practices, and fraud, and allowing only limited breach of contract claims to proceed, where plaintiffs specifically pled the identity of an individual burial plot purchased for plaintiffs' express benefit that was allegedly resold to another).

The FAC suffers from the same and more deficiencies as the operative pleadings in the *Birtha* and *Hardin* actions and should likewise be dismissed.

In sum, the FAC remains a classic shotgun pleading devoid of factual allegations that would entitle Plaintiffs to relief against any of the Defendants, including the StoneMor Defendants.[1] Accordingly, for the reasons set forth and incorporated herein, Counts I through IX should be dismissed in their entirety and with prejudice; Count X should be dismissed with prejudice as against Plaintiffs Simpson, Mason, Montgomery, Anderson, Allen, Sr., and Allen, Jr.; and all putative class allegations and claims should be struck and dismissed with prejudice.

## ARGUMENT

### A. Plaintiffs' Claims Should Be Dismissed Pursuant to Rules 8(a)(2) and 12(b)(6).

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Courts have construed this Rule to require plaintiffs to plead plausible facts that, if later proved, could entitled them to the relief sought. *Narbona v. Micron Precision LLC*, No. 3:14-cv-00060-MOC-DSC, 2014 WL 1875038, at *1 (W.D.N.C. May 9, 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Similarly, pursuant to Rule 12(b)(6), a plaintiff's complaint is subject to dismissal where it fails to contain sufficient factual matter to state a claim to relief that is plausible on its face. *Boston v. I.C. Sys., Inc.*, No. 3:21-cv-00464-FDW-DSC, 2021 WL 5406882, at *2 (W.D.N.C. Nov. 18, 2021) (courts need not accept as true unwarranted inferences, unreasonable conclusions, or arguments; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Williams v. Charlotte-*

---

[1] The StoneMor Defendants are StoneMor, Inc. (f/k/a StoneMor GP, LLC), StoneMor North Carolina, LLC, StoneMor North Carolina Funeral Services, Inc., StoneMor North Carolina Subsidiary, LLC, and StoneMor Partners, L.P.

*Mecklenburg Hosp. Auth.*, No. 3:20-CV-00242-RJC-DSC, 2020 WL 12918274, at *3 (W.D.N.C. Aug. 19, 2020) ("[w]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief, and therefore should be dismissed." (internal quotations omitted)).

Here, Plaintiffs' wide-reaching class allegations are unrelated to the specific harms allegedly suffered by Plaintiffs' decedents. Furthermore, the FAC is devoid of any specific factual allegations that would plausibly entitle any of the Plaintiffs to relief under at least Counts I through IX of the FAC. Accordingly, Plaintiffs' claims, as outlined herein, should be dismissed for failure to state a claim upon which relief can be granted. *Boston*, 2021 WL 5406882, at *2.

1. **Plaintiffs' Claim under North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA) (Count I) Should be Dismissed.**

a. **Plaintiffs Fail to Meet Rule 9(b) Pleading Requirements.**

To state a proper claim for unfair and/or deceptive trade practices, a plaintiff must show that (i) the defendant committed an unfair or deceptive act or practice, or an unfair method of competition; (ii) in or affecting commerce; (iii) which proximately caused actual injury to the plaintiff. N.C. Gen. Stat. § 75-1.1(a); *see also Birtha*, 220 N.C. App. at 298 (granting Rule 12(b)(6) dismissal of plaintiffs' UDTPA claims on multiple grounds relating to alleged improper burial practices, including that the plaintiffs failed to allege substantial aggravating circumstances to recover under UDTPA); *Hardin*, 221 N.C. App. at 328–29 (similarly dismissing plaintiffs' UDTPA claims). Moreover, where a UDTPA claim is based on alleged misrepresentations or deceptive conduct, a plaintiff must plausibly allege, consistent with the requirements of Rule 9(b), reliance on the alleged misrepresentation to establish the necessary proximate cause between the misrepresentation and the plaintiff's actual injury. *Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 79 (E.D.N.C. 2022) (making clear that "Rule 9(b) applies to unfair and deceptive trade practices

claims based on alleged misrepresentations"); *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020) (dismissing UDTPA claim and noting that "[t]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." (internal quotations omitted)); *Julian v. Wells Fargo Bank, N.A.*, No. 11-CVS-11299, 2012 WL 1857611, at \*\*8–9 (N.C. Super. Ct. May 22, 2012) (dismissing plaintiffs' UDTPA claim where plaintiffs failed to allege, beyond mere conclusory statements, unwarranted deductions of fact and unreasonable inferences, actual reliance on any representations by defendant that proximately caused plaintiffs' alleged injuries); *Botanisol Holdings II, LLC v. Propheter*, No. 21-CVS-102, 2021 WL 4844528, at \*10 (N.C. Super. Ct. Oct. 18, 2021) ("[B]ecause the Chapter 75 claim is premised on deceptive conduct, the heightened pleading standard of Rule 9(b) applies. [] Broad assertions of misconduct against a group of defendants will not suffice.").

Here, while Plaintiffs generally allege a host of "affirmative promises" purportedly made to putative class members and the general public [Dkt. No. 25 (FAC, ¶ 119)], Plaintiffs fail to allege: what affirmative promises were false or deceptive; when such promises were allegedly made, including whether any were made prior to the time Plaintiffs' deceased relatives were buried at York; what specific promises were made to Plaintiffs (or any of their deceased relatives); how such affirmative promises were intended to or did deceive Plaintiffs (or anyone else), including what action or inaction Plaintiffs (or any of their deceased relatives) took in reliance on the purported false or deceptive statements; how any such affirmative promises related to any contractual rights or obligations at issue; what alleged injuries allegedly resulted from any alleged false or deceptive statements; and/or how such deception proximately caused any injuries. [Dkt. No. 25 (FAC, ¶¶ 119–28).] In effect, Plaintiffs allege nothing more than "bad things happened" at

York from 1969 to the present. Accordingly, Plaintiffs' UDTPA claims (Count I) should be dismissed. *Sasso*, 584 F. Supp. 3d at 80 (dismissing plaintiff's UDTPA claim pursuant to Rule 9(b) where plaintiff failed to "plausibly allege when these misrepresentations took place, who made them, or the particularities of the misrepresentations' contents.").[2]

### b. Multiple Plaintiffs' UDTPA Claims Also Are Barred by the Statute of Repose.

Multiple of the Plaintiffs' UDTPA claims fail for the additional reason that they are barred by North Carolina's ten-year statute of repose. N.C. Gen. Stat. § 1-52(16). Pursuant to the allegations in the FAC, Plaintiff Mason's father died (and ostensibly) was buried at York in 1969. [Dkt. No. 25 (FAC, ¶ 29).] Plaintiff Montgomery's son was buried in 1989. (*Id.*, ¶ 36.) Plaintiff Anderson's father and mother were buried in 1965 and 1994, respectively. (*Id.*, ¶¶ 50–51.) Plaintiff Allen, Jr.'s son was buried in 2001. (*Id.*, ¶ 85.) And Plaintiff McClinton's father was buried in 1975. (*Id.*, ¶ 91.)[3] The FAC alleges no improper acts purportedly committed by any of the Defendants relative to these decedents or their gravesites following the alleged burials, each of which occurred more than 10 years prior to the filing of the original Complaint on March 17, 2023.

---

[2] The UDTPA claims likewise fail because each Plaintiff fails to allege any unfair or deceptive act or practice, or unfair method of competition. At most, Plaintiffs allege that "Defendants" promoted the benefits of end-of-life advanced planning but failed to comply with unspecified contractual provisions. Such allegations are insufficient to establish a UDTPA claim. *Tillery Envtl. LLC v. A&D Holdings, Inc.*, 2017 NCBC LEXIS 68, at *9 (N.C. Super. Ct. Aug. 4, 2017) ("North Carolina case law is clear that a willful or intentional breach of contract is not on its own sufficiently unfair or deceptive to support a section 75-1.1 claim."); *Deluca v. River Bluff Holdings II, LLC*, No. 13-CVS-783, 2015 WL 410429, *10 (N.C. Super. Ct. Jan. 28, 2015) ("A breach of contract, even if intentional, does not constitute an unfair or deceptive act absent aggravating circumstances, such as deceptive conduct by the breaching party made with intent to deceive and which has a natural tendency to injure the other."); *Birtha*, 220 N.C. App. at 298.

[3] While Plaintiff McClinton also alleges that she discovered in May 2023 a suspected machine dug a hole between her aunt's headstone and grave, these facts, even accepted as true for purposes of the present Motion, do not constitute an unfair or deceptive practice or an unfair method of competition, and therefore fail to satisfy the elements necessary to support a viable UDTPA claim.

[Dkt No. 1-1, Compl.] Accordingly, these named Plaintiffs' UDTPA claims are barred by the applicable statute of repose and should be dismissed with prejudice. *See Misenheimer v. Burris*, 360 N.C. 620, 623–24 (2006).

### 2. Plaintiffs' Breach of Contract Claims (Count II) Should Be Dismissed.

Plaintiffs' claims for breach of contract (Count II) fail for numerous reasons. Each of the Plaintiffs fails to allege the identity of the specific Defendant or Defendants who purportedly entered into any contractual agreements with one or more of their decedents.[4] Plaintiffs also fail to identify the specific contractual agreement(s) purportedly breached. Moreover, the FAC fails to allege even the basic terms of the alleged contractual agreement(s), much less the specific provisions that purportedly were breached. These failures, which effectively place Defendants on no notice of the nature of the breach of the alleged contracts at issue, are fatal to these claims. *See Birtha*, 220 N.C. App. at 296 ("the breach of contract claims were properly dismissed because the allegations failed to provide even general terms of the contract which were necessary to determine whether a breach occurred").

### a. Eight of the 10 Plaintiffs Lack Standing to Pursue Breach of Contract Claims.

Other than Plaintiffs Allen, Sr. and Montgomery, none of the Plaintiffs alleges that he or she is an actual party (either as an initial signatory or by virtue of assignment) to any contractual agreement with any Defendant. Indeed, the FAC alleges that Plaintiffs' decedents, not Plaintiffs themselves, entered into contractual agreements with "the Defendants." [Dkt. No. 25 (FAC, ¶ 3 "Each of the Plaintiffs [sic] decedents entered into a contract with the Defendants for the purpose

---

[4] As Defendant Carothers Holding Company, LLC ("Carothers") has explained in its Motion to Dismiss the original Complaint, a predecessor of Carothers was responsible for operations at York until at least 2007 before a transaction with a StoneMor entity. (*See* Carothers' Memo of Law [Dkt. No. 11-1], pp. 4–5 & Ex. 1 thereto.)

7

of establishing the final burial site of the individual decedents of the Plaintiffs . . . ."; *id.*, ¶ 4 "[t]he contracts between the decedents of the Plaintiffs and Defendants, [sic] are valid and enforceable"; *id.*, ¶¶ 27, 34, 48, 57, 65, 75, 89, 103 "[n]one of the members of the Plaintiff's family would have ever purchased property, as burial plots . . . .").] Therefore, Plaintiffs Simpson, Mason, Davis, Anderson, Black, Byers, Allen, Jr., and McClinton lack standing to pursue a claim for breach of contract. *Bodnar v. Jackson*, No. 1:14-CV-120, 2014 WL 5426392, at *2 (W.D.N.C. Oct. 23, 2014) (holding that an individual who is neither a party nor a third-party beneficiary to the contract at issue has no standing to enforce its terms or otherwise recover thereunder).[5]

> **b.** **Numerous Plaintiffs' Breach of Contract Claims Also Are Barred by the Applicable Statute of Limitations.**

Pursuant to N.C. Gen. Stat. § 1-52, the applicable statute of limitations for a breach of contract claim is three years. *See also Birtha*, 220 N.C. App. at 294. Although the FAC fails to identify the specific events that purportedly constitute a breach of the unidentified contracts, the FAC generally alleges that the purported breaches occurred on the respective dates of interment, which are identified in the FAC (other than Plaintiff Simpson's relatives' dates of interment). [Dkt. No. 25 (FAC, ¶¶ 33–34 alleging that (i) "[a]t no times *during the burial arrangements or the contractual process* did the Defendants ever disclose to any member of the Plaintiff's family that there was a substantial risk that the final wishes regarding the burial sites of the Plaintiff's family members would not be followed"; and (ii) "[n]one of the members of the Plaintiff's family would

---

[5] Plaintiffs appear to base Count II on allegations that they and the putative class members they seek to represent are intended third-party beneficiaries of the unidentified contractual agreements. [Dkt. No. 25 (FAC, ¶¶ 133-34).] However, because Plaintiffs separately plead a cause of action for breach of contract based on third-party beneficiary status in Count VI, the StoneMor Defendants arguments in Section A.2 address only Plaintiffs' breach of contract claim. The StoneMor Defendants separately address Plaintiffs' third-party beneficiary breach of contract claims (Count VI) in Section A.6.

have ever purchased property, as burial plots, had the facts and circumstances as set forth in this Complaint been disclosed.")] (emphasis added).[6] Taking each in turn, it is clear that many of the Plaintiffs' breach of contract claims are untimely and therefore are time barred.[7]

*Plaintiff Mason.* Although Plaintiff Mason alleges that she became aware in September 2022 that no records exist regarding her father's burial and Defendants know "nothing about the location of her Father's gravesite[,]" (*id.*, ¶¶ 30–31), Plaintiff Mason alleges that her father was buried in 1969. (*Id.*, ¶ 29.) Plaintiff Mason further alleges no acts occurring post-1969 that could possibly support a breach of contract claim. Accordingly, Plaintiff Mason's claim is barred by the applicable statute of limitations. N.C. Gen. Stat. § 1-52; *see also Birtha*, 220 N.C. App. at 295 (affirming dismissal of plaintiffs' breach of contract claims on statute of limitations grounds where plaintiffs filed suit in 2007—the same year they allegedly first discovered purported abuses (including, *e.g.*, the alleged failure to inter decedents in agreed upon locations, the placement of headstones on incorrect gravesites, the unauthorized removal of headstones, and the inability to locate gravesites)—but where decedents were buried in 1968 and 1986, respectively).

*Plaintiff Montgomery*. Although Plaintiff Montgomery alleges that she determined in April 2023 that the location of her son's remains is unknown, [Dkt. No. 25 (FAC, ¶¶ 37–38)], she specifically alleges that her son was buried in 1989. (*Id.*, ¶ 36.) Plaintiff Montgomery alleges no acts occurring post-1989 that could possibly support her breach of contract claim. Accordingly, Plaintiff Montgomery's claim is barred by the applicable statute of limitations. N.C. Gen. Stat. § 1-52; *see also Birtha*, 220 N.C. App. at 295.

---

[6] These same allegations are repeated throughout the FAC with respect to each Plaintiff. [Dkt. No. 25 (FAC, ¶¶ 26–27, 40–41, 47–48, 56–57, 64–65, 74–75, 83–84, 88–89, 102–03).]

[7] Plaintiff Simpson's original complaint was filed in North Carolina state court on March 17, 2023. [Dkt. No. 1-1.]

*Plaintiff Anderson.* Although Plaintiff Anderson alleges that she determined in December 2022 that her father and mother are not buried next to one another and "the gravesite of her mother was unknown[,]" [Dkt. No. 25 (FAC, ¶¶ 53–54)], she further alleges that her father and mother were buried in 1965 and 1994, respectively. (*Id.*, ¶¶ 50–51.) Plaintiff Anderson alleges no acts occurring post-1994 that could possibly support her breach of contract claim. Accordingly, Plaintiff Anderson's claim is barred by the applicable statute of limitations. N.C. Gen. Stat. § 1-52; *see also Birtha*, 220 N.C. App. at 295.

*Plaintiff Allen, Jr.* Although Plaintiff Allen, Jr. alleges that he "has recently become aware" that his son's remains are not located in the correct burial plot, [Dkt. No. 25 (FAC, ¶ 86)], Plaintiff Allen, Jr. further alleges that his son was buried in 2001. (*Id.*, ¶ 85.) Plaintiff Allen, Jr. alleges no acts occurring post-2001 that could possibly support his breach of contract claim. Accordingly, Plaintiff Allen, Jr.'s claim is barred by the applicable statute of limitations. N.C. Gen. Stat. § 1-52; *see also Birtha*, 220 N.C. App. at 295.

*Plaintiffs Black, Byers, and McClinton.* Plaintiffs Black, Byers, and McClinton each allege various wrongs purportedly occurring after their respective family members' burials and which ostensibly are unrelated to their breach of contract claims.[8] Indeed, based on the allegations asserted by these three Plaintiffs (in addition to Plaintiff Davis, who likewise alleges only post-burial wrongs), it is unclear whether they are even asserting claims for breach of contract. To the extent they are, such claims are likewise time barred.

---

[8] Plaintiffs generally describe the scope of the contracts as follows: "All contracts contain the same language regarding specific burial plots, locations of burial plots, and the responsibilities of the Defendant to bury persons in the plots purchased on behalf of members of this Class." [Dkt. No. 25 (FAC, ¶ 135).] But these Plaintiffs do not allege that their respective decedents were buried in the wrong plot or otherwise were buried inconsistent with contractual requirements. Nor do these Plaintiffs allege that the contracts contain any binding obligations of any Defendant relating to post-burial events.

Plaintiff Black alleges that his father was buried at York in May 2019. [Dkt. No. 25 (FAC, ¶ 59).] Although Plaintiff Black alleges that, in April 2022, he "became aware that the temporary marker commemorating his father's burial site is not in the same location where his father was buried[,]" [Dkt. No. 25 (FAC, ¶ 61)], Plaintiff Black fails to identify any contractual provision allegedly breached by this post-burial event. Because more than three years passed following the burial of Plaintiff Black's father in May 2019 and the filing of the original complaint in March 2023, Plaintiff Black's claim for breach of contract, to the extent asserted, is barred by the statute of limitations. N.C. Gen. Stat. § 1-52; *see also Birtha*, 220 N.C. App. at 295.

Plaintiff Byers alleges that her mother was buried in 2017 [Dkt. No. 25 (FAC, ¶ 67)], and she discovered in May 2022 that "the headstone previously located at her mother's burial site to honor her mother's grave had been removed." (*Id.*, ¶¶ 68–69.) Plaintiff Byers fails to identify any contractual provision allegedly breached by this post-burial event. Because more than three years passed following the burial of Plaintiff Byers' mother in 2017 and the filing of the original complaint in March 2023, Plaintiff Byers' claim for breach of contract, to the extent asserted, is barred by the statute of limitations. N.C. Gen. Stat. § 1-52; *see also Birtha*, 220 N.C. App. at 295.

Plaintiff McClinton alleges that her father and aunt were buried in 1975 and 2017, respectively. [Dkt. No. 25 (FAC, ¶¶ 91, 97).] Plaintiff McClinton further alleges that her father's headstone subsequently has been moved from its original location, (*id.*, ¶ 96), and that "a gaping hole" exists between the headstone and grave at her aunt's gravesite, which "hole was not present at the time of her aunt's burial nor has it been present in previous visits to the gravesite by the Plaintiff." (*Id.*, ¶¶ 99–100.) Plaintiff McClinton fails to identify any contractual provision allegedly breached by these post-burial events. Because more than three years passed following the burials of Plaintiff McClinton's father and aunt in 1975 and 2017, respectively, and the filing of the

original complaint in March 2023, Plaintiff McClinton's claim for breach of contract, to the extent asserted, is barred by the statute of limitations. N.C. Gen. Stat. § 1-52; *see also Birtha*, 220 N.C. App. at 295.[9]

### c. Numerous Plaintiffs' Breach of Contract Claims Also Are Barred by the Applicable Statute of Repose.

Similarly, Plaintiffs Mason, Montgomery, Anderson, and Allen, Jr.'s claims for breach of contract also are barred by the applicable ten-year statute of repose, as each fails to allege any acts occurring within ten years of the filing of the original Complaint that could possibly support a breach of contract claim. N.C. Gen. Stat. § 1-52(16); *see also Misenheimer*, 360 N.C. at 623-24.

### 3. Plaintiffs' Claims for Negligence (Count III) Should be Dismissed.

### a. Plaintiffs' Negligence Claims Fail to State a Claim Upon Which Relief can be Granted.

A negligence claim requires a plaintiff to show "(1) the defendant owed the plaintiff a duty of reasonable care, (2) the defendant breached that duty, (3) the defendant's breach was an actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages as the result of the defendant's breach." *Gibson v. Ussery*, 196 N.C. App. 140, 143 (2009). Here, Plaintiffs fail to allege any facts necessary to support a cause of action for negligence. In particular, while Plaintiffs generally reference North Carolina's public policy to "protect the burying places of the dead[,]" [Dkt. No. 25 (FAC, ¶ 140)], Plaintiffs fail to tie this statement of public policy to any duty allegedly

---

[9] Plaintiff Allen, Sr. alleges that Defendants have resold certain burial plots he purchased in 1996 to unidentified third parties, and further alleges that the purported resales occurred "[o]ver the last 20 years." [Dkt. No. 25 (FAC, ¶¶ 77, 79).] While it is impossible to definitively conclude from the face of the FAC which, if not all, of the purported resales occurred more than three years prior to the filing of the original complaint or FAC, the StoneMor Defendants expressly reserve their rights to raise a statute of limitations defense to these claims. *See Hardin*, 221 N.C. App. at 323–24 (affirming trial court's determination that a breach of contract claim for a resold burial plot was barred by the applicable three-year statute of limitations based on the date of resale, and not when plaintiffs subsequently discovered the alleged resale).

owed by the StoneMor Defendants with respect to any specific gravesite. At most, Plaintiffs cite to *Mills v. Cemetery Park Corp.*, 242 N.C. 20 (1955), as support for North Carolina's general common law recognition of sepulcher rights. [Dkt. No. 25 (FAC, ¶ 143).] Yet, *Mills* principally stands for the proposition that courts will not order the disinterment of a body suitably buried absent certain limited and compelling circumstances. 242 N.C. at 26–28 (holding that "[t]he plaintiff has completely failed to allege any compelling reasons to force the individual defendant by injunction to remove the buried body of her deceased husband from the tomb and to force the corporate defendant to disturb the tomb, and restore the Masonic Memorial to its condition before erection of the tomb at its base, and has stated no cause of action against them for those ends.").

Moreover, notwithstanding *Mills*, the North Carolina Court of Appeals has twice rejected similar negligence claims based on nearly identical allegations. In *Birtha*, the plaintiffs asserted both common law negligence and negligence *per se* claims based on allegations that the defendants failed to properly maintain gravesites. 220 N.C. App. at 288, 293. Specifically, the plaintiffs alleged that the defendants placed headstones at the wrong burial plots, removed headstones post-burial, and were unable to locate the plaintiffs' deceased family members' remains. *Id.* at 288. Finding no duty created by statute or otherwise, the court affirmed the Rule 12 dismissal of the plaintiffs' negligence claims. *Id.* at 293–94; *see also Hardin*, 221 N.C. App. at 324–27 (similarly rejecting variety of negligence-based claims relating to alleged resale of burial plots). Having failed to identify any authority that would establish a duty on the part of any of the Defendants, including the StoneMor Defendants, in relation to the specific allegations pled, all of the Plaintiffs' claims for negligence necessarily fail.[10]

---

[10] To the extent Plaintiff Allen, Sr. purports to assert a claim for negligence based on the alleged resale of plots he purchased, such claim fails as a matter of law, as Plaintiff Allen, Sr. alleges no independent duty. *See Hardin*, 221 N.C. App. at 326 (affirming dismissal of negligence claim

### b. Numerous Plaintiffs' Negligence Claims Also Are Barred by the Applicable Statute of Limitations.

Even assuming *arguendo* that any of the Plaintiffs' allegations could support a viable negligence claim, multiple Plaintiffs' claims are time barred. The statute of limitations for negligence claims is three years. N.C. Gen Stat. § 1-52. "A cause of action based on negligence accrues when the wrong giving rise to the right to bring suit is committed, even though the damages at the time be nominal and the injuries cannot be discovered until a later date." *Harrold v. Dowd*, 149 N.C. App. 777, 781 (2002). Here, Plaintiffs Mason, Montgomery, Anderson, Allen, Jr., and McClinton's (to the extent based on her father's burial) claims are time barred for the same reasons outlined in Section A.2.b, *supra*, as these Plaintiffs fail to allege any wrongful acts purportedly occurring within three years of the filing of the original Complaint or FAC. *See Birtha*, 220 N.C. App. at 293 (noting that the discovery rule does not apply, especially where, as here, "Plaintiffs do not allege bodily harm or physical damage to *Plaintiff's* property") (emphasis added).

### 4. Plaintiffs' Claim for Negligent Infliction of Emotional Distress (Count IV) Should Be Dismissed.

To state a claim for negligent infliction of emotional distress, a plaintiff must show that "(1) defendant engaged in negligent conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) defendant's conduct, in fact, caused plaintiff severe emotional distress." *Hardin*, 221 N.C. App. at 327. Here, Plaintiffs fail to allege that they, as opposed to the putative class members they seek to represent, have suffered any form

---

where plaintiffs merely alleged that defendants "breached their duty not to breach their contract."); *see also Asheville Contracting Co. v. Wilson*, 62 N.C. App. 329, 342 (1983) ("Ordinarily, an action in tort must be grounded on a violation of a duty imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties, rather than one based on an agreement between the parties.").

of severe emotional distress as a result of any of the Defendants' alleged negligent conduct. [Dkt. No. 25 (FAC, ¶¶ 147–48).]

Additionally, while Plaintiffs plead in conclusory fashion that putative class members have suffered "severe emotional distress and mental anguish[,]" (*id.*, ¶ 148), the FAC is devoid of any allegations that Plaintiffs or any putative class member have suffered any *emotional or mental disorder*, as required to establish a claim for intentional or negligent infliction of emotional distress. *Hardin*, 221 N.C. App. at 327–28 ("Regarding the third element, our courts have defined severe emotional distress to mean any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so. Phrased differently, a plaintiff must present evidence of diagnosable mental health conditions." (internal citations and quotations omitted)); *Sanders v. Duke Energy Carolinas, LLC*, No. 3:20-CV-00215-KDB-DSC, 2022 WL 282567, at *3 (W.D.N.C. Jan. 31, 2022) (dismissing negligent infliction of emotional distress claim where plaintiffs' complaint included only "vague allegations including 'mental anguish' and 'other various severe conditions'"); *McKinney v. Cleveland Cnty. Bd. of Educ.*, No. 3:20-CV-221-MOC-DSC, 2020 WL 6803846 (W.D.N.C. Nov. 19, 2020) (same); *Fox-Kirk v. Hannon*, 142 N.C. App. 267, 274 (2001) (affirming denial of defendants' motion for directed verdict as to negligent infliction of emotional distress claim where plaintiff alleged and ultimately presented evidence from her psychiatrist of diagnosable mental health conditions). Because Plaintiffs have failed to allege that they specifically suffered any diagnosable mental health condition resulting from any purported conduct by Defendants, Count IV should be dismissed.

5.     **Plaintiffs' Claims for Trespass to Real Property (Count V) Should Be Dismissed.**

Under North Carolina law, a claim for trespass to real property has three elements: (i) "the plaintiff was either actually or constructively in possession of the land at the time the alleged trespass was committed"; (ii) "the defendant made an unauthorized, and therefore an unlawful, entry on the land"; and (iii) "the plaintiff suffered damage by reason of the matter alleged as an invasion of his rights of possession." *Matthews v. Forrest*, 235 N.C. 281, 283 (1952).

Here, each of the Plaintiffs' claims for trespass necessarily fail for one or multiple reasons. First, pursuant to the allegations in the FAC, Plaintiffs Simpson, Mason, Davis, Anderson, Black, Byers, Allen, Jr., and McClinton are not parties to the alleged burial contracts for their respective deceased relatives. [Dkt. No. 25 (FAC, ¶¶ 3–5, 27, 34, 48, 57, 65, 75, 89, 103).] Further, the FAC fails to allege any assignment of the alleged contracts to any of these Plaintiffs, or that any property rights associated with the burial plots were conveyed to any of these Plaintiffs pursuant to the alleged contracts or otherwise. And, while Plaintiffs generally allege that they were in actual or constructive possession of their family members' burial plots, this Court need not accept wholly unsupported and conclusory allegations. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").[11] Accordingly, each of these Plaintiffs, who are nothing more than relatives without any particular standing, has failed to allege any facts that could possibly support the first element of a claim for trespass to real property.

---

[11] Notably, Plaintiffs also fail to identify, even generally, when the alleged "atrocities of trespass" occurred, making Plaintiffs' conclusory and unsupported claims of actual or constructive possession even more specious.

Additionally, Plaintiffs Simpson, Mason, Montgomery, Davis, Anderson, Allen, Sr., and Allen, Jr. fail to allege any facts that would establish an unauthorized entry on the burial sites at issue. Taking each of these Plaintiffs in turn, Plaintiff Simpson alleges no facts specific to him or his unidentified deceased relatives that could support an unauthorized entry on the unidentified burial sites. [Dkt. No. 25 (FAC, ¶¶ 23–28).] Plaintiff Mason alleges only that no records exist relating to her deceased father's burial and the location of his gravesite is unknown. (*Id.*, ¶¶ 29–35.) Plaintiff Montgomery alleges only that the location of her son's remains is unknown. (*Id.*, ¶¶ 36–42.) Plaintiff Davis alleges that the location of his mother's gravesite is unknown and that "the place depicting her gravesite is in a different location than the place in which his mother was buried[,]" (*id.*, ¶¶ 43–49), but otherwise does not allege that his mother's gravesite has been disturbed, altered, or otherwise entered upon. (*Id.*) Plaintiff Anderson alleges only that "her father was buried between other fellow veterans and, that the gravesite of her mother was unknown." (*Id.*, ¶¶ 50–58). However, Plaintiff Anderson does not allege that either of her parent's gravesites has been disturbed, altered, or otherwise entered upon. (*Id.*) Plaintiff Allen, Sr. alleges that he purchased cemetery plots for his family members and that those plots subsequently were resold to unidentified third parties. (*Id.*, ¶¶ 77–84). Plaintiff Allen, Sr. does not, however, allege that any of the purchased plots have been entered upon or that others have been buried in such plots. (*Id.*) Plaintiff Allen, Jr. alleges that his son is buried in a location different from the plots his family members purportedly purchased, (*id.*, ¶¶ 85–90), but does not allege that his son's gravesite has been disturbed, altered, or otherwise entered upon. Accordingly, each of these Plaintiffs has failed to allege any facts that could possibly support the second element of a claim for trespass to real property.

### 6. Plaintiffs' Claims for Breach of Third-Party Beneficiary Contract (Count VI) Should Be Dismissed.

"To establish a claim based on the third party beneficiary contract doctrine, a complaint's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *Hardin*, 221 N.C. App. at 324.

The FAC does not specify which of the Plaintiffs is asserting a claim under Count VI. However, because Plaintiffs Montgomery and Allen, Sr. allege that they contracted directly with one or more of the Defendants, [Dkt. No. 25 (FAC, ¶¶ 41, 77)], the StoneMor Defendants construe Count VI as applying only to the eight remaining Plaintiffs. To the extent Count VI is brought on behalf of Plaintiffs Montgomery and/or Allen, Sr., such claims clearly fail the first element of the cause of action and therefore should be dismissed with prejudice.

Turning to the eight remaining Plaintiffs, the allegations supporting Count VI merely recite the elements of the claim in conclusory fashion without providing requisite factual support, including the identity of the original contracting parties or the terms of those contracts, including in relation to any arguably conferred third-party beneficiary status. *See Cross*, 438 F. Supp. 3d at 585 (granting motion to dismiss and noting that courts "need not accept for purposes of [a Rule 12 motion] such conclusory statement[s] of the elements of the claim. Rather, plaintiffs must allege facts giving rise to a plausible [claim]") (internal citations omitted); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").

Furthermore, although these Plaintiffs generally allege that the contracts "were made to ensure the final resting place and historical legacies of the persons buried for the benefit of their

next of kin[,]" [Dkt. No. 25 (FAC, ¶ 160)], Plaintiffs fail to explain (and there is no basis to understand) how the purported purpose of the contracts was designed to benefit Plaintiffs, as opposed to Plaintiffs' decedents. Counsel for the StoneMor Defendants are aware of only one instance where a North Carolina court has determined that a plaintiff may pursue a third-party beneficiary breach of contract claim in relation to a burial contract. In *Hardin*, the plaintiffs asserted third-party beneficiary breach of contract claims based on allegations that the defendants resold two of three burial plots initially purchased by the plaintiffs' mother for her and her family's use. 221 N.C. App. at 319–20. The first plot was used to bury the plaintiffs' father, and the Court determined that "[the mother] intended to occupy the second plot, so the third plot must have been intended for another family member, such as one of [the mother's] children." *Id.* at 324. Here, Plaintiffs do not allege that any of the alleged contracts were intended to provide them specifically with anything, including, *e.g.*, a burial plot that could be used as their respective final resting place. While Plaintiffs may be relatives of decedents buried at York, mere relative status, without more, cannot confer legal third-party beneficiary status. Accordingly, Plaintiffs fail to allege any facts necessary to support the third element of a third-party beneficiary claim.

Finally, Count VI fails for the same reasons that Count II (breach of contract) fails—namely, the FAC fails to identify any of the contractual provisions at issue or how such provisions allegedly were breached. *See Birtha*, 220 N.C. App. at 296 ("the breach of contract claims were properly dismissed because the allegations failed to provide even general terms of the contract which were necessary to determine whether a breach occurred. [] Plaintiffs also contend that the trial court erred in dismissing their claim for breach of contract based on third-party beneficiary. For the same reasons stated above, we overrule Plaintiffs' third party beneficiary claim.").

For each of these reasons, Plaintiffs' third-party beneficiary breach of contract claims fail to state a claim upon which relief can be granted, and Count VI should therefore be dismissed.

### 7. Plaintiffs' Claims for Intentional Infliction of Emotional Distress (Count VII) Should Be Dismissed.

To state a claim for intentional infliction of emotional distress, a plaintiff must show that the defendant "(1) engaged in extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress." *Boone v. Kabbani*, No. 1:10-CV-1, 2010 WL 11668201, at *2 (M.D.N.C. Oct. 18, 2010). Count VII fails to state a claim for relief for the same reasons Count IV fails, *supra*, Section A.4. Specifically, a plaintiff cannot sustain a claim for intentional (or negligent) infliction of emotional distress by alleging merely that emotional harm is "severe" without also "identify[ing] a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by" appropriately trained professionals. *Moschos v. Moschos*, 882 S.E.2d 401, 404 (N.C. App. Ct. 2022) (affirming dismissal of intentional infliction of emotional distress claim where plaintiff "fail[ed] to allege sufficient facts concerning the type, manner, or degree of severe emotional distress Plaintiff claims to have experienced"); *Sanders*, 2022 WL 282567, at *3 (same). Accordingly, Plaintiffs' claims for intentional infliction of emotional distress (Count VII) fail to state a claim and should be dismissed.

### 8. Plaintiffs' RICO Claims (Count VIII) Should Be Dismissed.

To state a claim under the North Carolina Racketeer Influenced and Corrupt Organizations Act ("NC RICO Act"), "(1) an innocent person must allege (2) an injury or damage to his business or property (3) by reason of two or more acts of organized unlawful activity or conduct, (4) one of which is something other than mail fraud, wire fraud, or fraud in the sale of securities, (5) that resulted in pecuniary gain to the defendants." *Gilmore v. Gilmore*, 229 N.C. App. 347, 356 (2013). Moreover, NC RICO Act claims premised upon fraudulent conduct, like here, [Dkt. No. 25 (FAC,

¶ 182)], must be pled in accordance with Rule 9(b). *Tucker v. Clerk of Court of Forsyth County ex rel. Frye*, No. COA18-1228, 2019 WL 5212741, at *6 (N.C. Ct. App. Oct. 15, 2019).

Plaintiffs fail to allege facts sufficient to satisfy the elements of a claim under the NC RICO Act, much less satisfy the particularized pleading requirements of Rule 9(b). Plaintiffs' claims do not provide any substantive explanation of the basis of their claims. Instead, Plaintiffs simply attempt (but fail) to allege the elements of the cause of action in wholesale and conclusory fashion. In particular, the FAC fails to allege facts sufficient to satisfy both the "injury to business or property" element and the "pecuniary gain to defendants" element.

A showing of injury or damage to one's business or property requires "proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Cullen v. Emanuel & Dunn, PLLC*, No. COA11-921, 2012 WL 3573696, at *10 (N.C. Ct. App. Aug. 21, 2012) (affirming Rule 12 dismissal of plaintiffs' RICO claim where plaintiffs failed to allege sufficient facts of "an injury cognizable under NC RICO"). Here, Plaintiffs have wholly failed to allege any concrete financial injury to any of them that is cognizable under the NC RICO Act.

Additionally, Plaintiffs fail to allege sufficient facts that Defendants' alleged actions resulted in pecuniary gain to Defendants. While Plaintiffs generally allege that Defendants have taken concerted steps to avoid civil liability and any resulting monetary damages flowing therefrom, [Dkt. No. 25 (FAC, ¶ 178)], Plaintiffs have identified no authority supporting the proposition that efforts to avoid contested civil liability would satisfy the pecuniary gain element under the NC RICO Act. *See Gilmore*, 229 N.C. App. at 358 (affirming dismissal of plaintiff's NC RICO Act claim, noting that the aggrieved party must establish a causal connection between the alleged pecuniary gain and the defendant's activities). For each of these reasons, Count VIII should be dismissed.

9. **Plaintiffs' Claims for Specific Performance (Count IX) Should Be Dismissed.**

Plaintiffs' claims for specific performance fail for numerous reasons. As an initial matter, specific performance is an equitable remedy and not a cause of action. *See Everson v. Honacher*, No. 1:06-CV-00772, 2007 WL 5269431, at *1 (M.D.N.C. June 4, 2007) (granting Rule 12 motion to dismiss action for specific performance; "with respect to Plaintiffs' remaining state law claims for 'perjury,' 'unclean hands,' the 'statute of frauds,' and 'specific performance,' the Court notes that none of these constitute causes of action upon which Plaintiffs' lawsuit may be based."); *Hong v. George Goodyear Co.*, 63 N.C. App. 741, 743 (1983) (noting that specific performance is an "equitable remedy"). Understanding that specific performance is a remedy only, because Plaintiffs' claims for breach of contract and breach of third-party beneficiary contract fail for the reasons set forth in Sections A.2. and A.6, *supra*, any claim for specific performance likewise fails as a matter of law. *See Parker v. PNC Bank, Nat. Ass'n*, No. 3:13-CV-300, 2013 WL 6331051, at *4 (W.D.N.C. Dec. 5, 2013) (dismissing claim for specific performance where plaintiff failed to demonstrate that a valid, binding contract existed between the parties; "[b]ecause the Court has determined that there was no such contract, it has nothing to specifically enforce."); *Benjamin v. City of Durham*, 756 S.E.2d 887, 890 (N.C. App. Ct. 2014) ("without evidence of the contract and its terms the trial court could not ascertain 'the acts to be performed' or whether 'the performance rendered was in accord' with those terms. Accordingly, the trial court did not err in dismissing plaintiff's claim for specific performance").

10. **Multiple Plaintiffs' Claims for Wrongful Desecration of Gravesites (Count X) Should Be Dismissed.**

While acknowledging that a claim for wrongful desecration of gravesites is a recognized cause of action, North Carolina courts have not delineated all of the elements necessary to maintain such a claim. *Robinson v. Forest Creek Ltd. P'ship*, 213 N.C. App. 593, 596 (2011); *Robinson v.*

*Wadford*, 222 N.C. App. 694, 699 (2012). Nevertheless, North Carolina courts have made clear that at least "one essential element of such a claim must be that the defendant engaged in some act of desecration." *Robinson*, 213 N.C. App. at 597. Here, Plaintiffs Simpson, Mason, Montgomery, Anderson, Allen, Sr., and Allen, Jr. fail to allege any facts that would support this essential element—namely, that any of the Defendants engaged in acts of desecration relating to their deceased relatives' gravesites.

Taking each of these Plaintiffs in turn, Plaintiff Simpson fails to identify any of his deceased relatives, much less any acts of desecration relating to his relatives' gravesites. [Dkt. No. 25 (FAC, ¶¶ 22–28).] Plaintiff Mason alleges simply that no records of her father's burial exist and that the exact location of his gravesite is unknown, but she alleges no acts of grave desecration. (*Id.*, ¶¶ 29–35.) Similarly, Plaintiffs Montgomery and Anderson similarly allege that the locations of their respective relatives' remains are unknown, but both fail to allege any acts of grave desecration. (*Id.*, ¶¶ 36–42; 50–58.) Plaintiff Allen, Sr. alleges that plots he purchased were resold to third parties, but fails to allege any acts of grave desecration. (*Id.*, ¶¶ 77–84.) And, Plaintiff Allen, Jr. alleges that his son was buried in the wrong location, but he fails to allege any acts of grave desecration. (*Id.*, ¶¶ 85–90.)[12]

Accordingly, Plaintiffs Simpson, Mason, Montgomery, Anderson, Allen, Sr., and Allen, Jr.'s claims for wrongful desecration should be dismissed.

---

[12] Plaintiffs Mason, Montgomery, Anderson, and Allen, Jr.'s claims for wrongful desecration would likewise be barred by North Carolina's ten-year statute of repose. N.C. Gen. Stat. § 1-52(16). Each of these Plaintiff's claims are based on allegations that their relative's remains are either buried in the wrong location or are unknown. But each of their relatives was buried more than ten years prior to the filing of the original and First Amended Complaint, [Dkt. No. 25 (FAC, ¶¶ 29, 36, 50–51, 85)], and these Plaintiffs fail to allege any wrongful acts, much less acts of desecration, occurring after the burials. *See Robinson*, 222 N.C. App. at 700 (affirming Rule 12(b)(6) dismissal of plaintiffs' wrongful desecration claims pursuant to statute of repose where plaintiffs alleged no acts of desecration within ten years of the filing of the complaint).

**B.** **Plaintiffs' Claims Cannot Satisfy the Requirements of Rule 23, and the Putative Class Claims Should Be Dismissed or Stricken, without Leave to Amend.**

The StoneMor Defendants join in and hereby incorporate the arguments set forth in Section J of Defendant Carothers' Memorandum of Law filed in Support of their Motion to Dismiss the FAC. (*See* Carothers' Memo of Law [Dkt. No. 29-1], pp. 17–25.) Plaintiffs' claims cannot satisfy Rule 23's requirements, and the putative class claims and allegations should therefore be dismissed or stricken, without leave to amend.

## CONCLUSION

For the reasons set forth and incorporated herein, Counts I through IX should be dismissed in their entirety and with prejudice, and Count X should be dismissed with prejudice as against Plaintiffs Simpson, Mason, Montgomery, Anderson, Allen, Sr., and Allen, Jr. Additionally, all putative class claims should be struck and dismissed with prejudice, as Plaintiffs have not and cannot satisfy the requirements of Rule 23, and the Court may properly dismiss or strike all class allegations with prejudice and without leave to amend.

Respectfully submitted, this 27th day of June, 2023.


PARKER POE ADAMS & BERNSTEIN LLP


*/s/ Brian S. Cromwell*
Brian S. Cromwell
N.C. State Bar No. 23488
Christopher Henry
N.C. State Bar No. 55995
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: 704.335.9511
Facsimile: 704.334.4706
briancromwell@parkerpoe.com
ARNALL GOLDEN GREGORY LLP

*/s/ Henry M. Perlowski*
Henry M. Perlowski
Georgia Bar No. 572393
(Pro Hac Vice to be filed)
Chesley S. McLeod
Georgia Bar No. 627503
(Pro Hac Vice to be filed)
171 17th Street NW, Suite 2100
Atlanta, GA  30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501
henry.perlowski@agg.com
chesley.mcleod@agg.com

***ATTORNEYS FOR THE STONEMOR DEFENDANTS***