# EXHIBIT B

BK: 08864 PG: 0572/0576 #:0221 16.00

**** NC EXCISE TAX: 224.00 ***

JUDITH A GIBSON REG OF DEEDS MECK NC
FILED FOR REGISTRATION 12/19/96 13:33

MECKLENBURG COUNTY

224.00

DEC 19.96

STATE OF NORTH CAROLINA

Real Estate Excise Tax

Excise Tax $224.00

Tax Lot No. 143-171-02, 143-171-03, 143-171-04 Parcel Identifier No.

Verified by County on the day of , 19

by

Mail after recording to Moore & Van Allen, PLLC (JED), 100 North Tryon Street, Floor 47, Charlotte, NC 28202-4003

This instrument was prepared by Moore & Van Allen, PLLC (JED)

Brief description for the Index: S. Tryon Street - Highway 49

# NORTH CAROLINA GENERAL WARRANTY DEED

THIS DEED made this 18th day of December, 19 96, by and between

| GRANTOR | GRANTEE |
|---|---|
| John H. Griffing, as Trustee under that new Carothers-Williams 1995 Liquidating Trust Agreement dated September 5, 1995 and entered into by J.C. Carothers, Phyllis Carothers, E. Woodrow Carothers, Jr., Brenda Carothers, E. Woodrow Carothers, Sr., Ronald G. Williams and Margarette M. Williams (the Beneficiaries) with John H. Griffing, as Trustee | Carothers Holding Company, Inc., a North Carolina Corporation<br><br>312 West 2nd Avenue<br>Gastonia, NC 28052 |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of Charlotte, Township, Mecklenburg County, North Carolina and more particularly described as follows:

See Exhibit "A" attached hereto and incorporated herein by reference.

N. C. Bar Assoc. Form No. 3 © 1976, Revised © 1977 — James Williams & Co., Inc., Box 127, Yadkinville, N.C. 27055
Printed by Agreement with the N. C. Bar Assoc. — 1981

224/ [illegible]

The property hereinabove described was acquired by Grantor by instrument recorded in Book 8302, Page 497

A map showing the above described property is recorded in Plat Book 838 page 591.

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor is seized of the premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever except for the exceptions hereinafter stated.
Title to the property hereinabove described is subject to the following exceptions:

See Exhibit "B" attached hereto and incorporated herein by reference.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

(Corporate Name)

By:

President

ATTEST:

Secretary (Corporate Seal)

USE BLACK INK ONLY

CAROTHERS-WILLIAMS 1995 LIQUIDATING TRUST
By: [signature] (SEAL)
John H. Griffing, Trustee

(SEAL)

(SEAL)

(SEAL)

SEAL-STAMP: LAURA K. CLONINGER NOTARY PUBLIC GASTON COUNTY, NC

Use Black Ink

NORTH CAROLINA, Gaston County.

I, a Notary Public of the County and State aforesaid, certify that John H. Griffing, Trustee of the Carothers-Williams 1995 Liquidating Trust Grantor, personally appeared before me this day and acknowledged the execution of the foregoing instrument/ on behalf of the Trust. Witness my hand and official stamp or seal, this 18th day of December, 1996.

My commission expires: 6-12-99 Laura K. Cloninger Notary Public

SEAL-STAMP

Use Black Ink

NORTH CAROLINA, County.

I, a Notary Public of the County and State aforesaid, certify that personally came before me this day and acknowledged that he is Secretary of a North Carolina corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its President, sealed with its corporate seal and attested by as its Secretary.

Witness my hand and official stamp or seal, this day of , 19

My commission expires: Notary Public

The foregoing Certificate(s) of

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

REGISTER OF DEEDS FOR COUNTY

By Deputy/Assistant-Register of Deeds

N. C. Bar Assoc. Form No. 3 © 1976, Revised © 1977 – James Williams & Co., Inc., Box 127, Yadkinville, N. C. 27055
Printed by Agreement with the N. C. Bar Assoc. – 1981

EXHIBIT B

1. Taxes for the year 1996, and subsequent years not yet due and payable.

2. Permit(s) to Southern Bell recorded in Book 1018, Page 201; Book 1018, Page 203; and Book 1018, Page 205, Mecklenburg County Registry.

3. Sanitary Sewer Easement recorded in Book 3719, Page 257, Mecklenburg County Registry.

4. Right of way agreement recorded in Book 3071, Page 11, Mecklenburg County Registry.

5. Right of way agreement recorded in Book 3071, Page 13, Mecklenburg County Registry.

6. State Highway Commission Consent Judgments recorded in Book 2732, Pages 11 and 14 and Book 2744, Page 31, Mecklenburg County Registry.

State of North Carolina, County of Mecklenburg
The foregoing certificate(s) of Laura K. Cloninger

Notary(ies) Public is/are certified to be correct. This 19th day of December 19 96

JUDITH A. GIBSON, REGISTER OF DEEDS By Rosalie B. Reese Deputy Register of Deeds

CHAR_1\F:\DOCS\CMB\REALESTA\201196_1

Attachment 2

# EXHIBIT C

2




# NORTH CAROLINA SPECIAL WARRANTY DEED

Excise Tax $ 3,018.00

Recording Time, Book and Page

Tax Map No. ______________________, Parcel Identifier No. 143-18-06; 143-171-04
Verified by ______________________ County on the ______ day of ______________________, 20___, by ______________________

Instrument Prepared by and
After Recording Mail to:

T & C File No.
Grantee's Federal Tax I.D. No.: __________
Location: ___________, North Carolina

Prepared by:

James K. Freeman, Esq.
Blank Rome LLP
18th and Cherry Streets
Philadelphia, PA 19103

After Recording, Mail to:

Adam D. Schneider, Esq.
Land Services USA, Inc.
18th and Arch Streets, Suite 1101
Philadelphia, PA 19103
NCFN07-1948

Brief Description for the Index

Lot No.

Return to:
Zonia N. Veal
First National Financial Title Service, Inc.
3237 Satellite Blvd., Suite 450, Bldg 300
Duluth, GA 30096 H3950-H




Special Warranty Deed - York Memorial Park (Charlotte, NC)
109495.00130/11726774v.2

THIS DEED made this 18th day of December, 2007, but effective as of the 21 day of December, 2007, by and between

| GRANTOR | GRANTEE |
|---|---|
| CAROTHERS HOLDING COMPANY, INC., a North Carolina corporation, successor by merger to CAROTHERS FUNERAL HOMES, INC., a North Carolina corporation<br><br>c/o SCI, Inc.<br>1929 Allen Parkway<br>Houston, TX 77019 | STONEMOR NORTH CAROLINA LLC, a North Carolina limited liability company<br><br>c/o StoneMor Operating LLC,<br>155 Rittenhouse Circle<br>Bristol, PA 19007 |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that Grantor, for a valuable consideration paid by Grantee, the receipt and sufficiency of which are hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto Grantee and its successors and assigns, in fee simple, all that certain lot or parcel of land situated in the City of Charlotte, Township of Charlotte, Mecklenburg County, North Carolina and more particularly described as follows (the "Property"):

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

together with all buildings, improvements and appurtenances thereon and thereto, along with all of Grantor's rights, title and interest, if any, in and to all roadways, streets, alleys, easements and rights of way adjacent to or abutting the Property.

TO HAVE AND TO HOLD the Property and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

This conveyance is made subject to all Permitted Exceptions found in Exhibit "B" hereto.

Grantor covenants with Grantee that the Property is free from all encumbrances made by Grantor other than as set forth above, and that Grantor does warrant and will defend the same to Grantee against the claims and demands of all persons claiming by, through or under Grantor, but against no other.

IN WITNESS WHEREOF, Grantor has executed this instrument as of the date first above written.

**CAROTHERS HOLDING COMPANY, INC.**, a North Carolina corporation

By: ______________________
Name: Michael D. Lehmann
Title: Vice President

CORPORATE SEAL

STATE OF PENNSYLVANIA )
) SS.
COUNTY OF PHILADELPHIA )

I certify that the following person personally appeared before me this day, and (I have personal knowledge of the identity of the signatory) ~~(I have seen satisfactory evidence of the signatory's identity, by a current state or federal identification with the signatory's photograph in the form of a ________________) (a credible witness has sworn to the identity of the signatory)~~; acknowledged to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: Michael D. Lehmann, as Vice President of **CAROTHERS HOLDING COMPANY, INC.**, a North Carolina corporation.

Date: December 18, 2007

[signature]
Notary Public

(official seal)

My commission expires: 5/4/11

NOTARIAL SEAL
ADAM SCHNEIDER, Notary Public
City of Philadelphia, Phila. County
My Commission Expires May 4, 2011

EXHIBIT "A"

LEGAL DESCRIPTION

All that tract or parcel of land lying and being in Mecklenburg County, North Carolina, and being more particularly described as follows:

**TRACT I**

All that certain parcel of land situate, lying and being located in the City of Charlotte, Mecklenburg County, North Carolina, and being more particularly described as follows:

TO FIND THE PLACE AND POINT OF BEGINNING: Begin at an iron pipe set, which is located North 60-22-44 E 149.26 feet from an iron pin found at the southeasterly corner of the property owned (now or formerly) by Ronald F. Mullis as described in Deed Book 4521, Page 85, Mecklenburg County Registry; THE POINT AND PLACE OF BEGINNING; thence from the point and place of beginning: N 30-10-04 West 740.86 feet to an iron pipe found at stones; thence with the northeasterly line of the property owned (now or formerly) by Carothers Funeral Homes, Inc. as recorded in Deed Book 6416, Page 390, Mecklenburg County Registry, N 03-11-39 E 183.45 feet to an iron pipe; continuing with the aforesaid Carothers Funeral Homes, Inc. property line, N 02-43-08 E 181.72 feet to an iron pipe; thence crossing a branch, N 02-43-08 E 190.32 feet to an iron pipe found located in a southwesterly corner of Lot 3, Block E Greenbriar Woods, Sec. 4 as shown on Map Book 11, Page 293, Mecklenburg County Registry; thence continuing with the southwesterly line of the aforesaid Greenbriar Woods S 32-15-00 E 182.63 feet crossing a branch to an iron pipe located at the northwesterly corner of Lot 10, Elliott Acres as shown on Map Book 2369, Page 119, Mecklenburg County Registry; then continuing with aforesaid Lot 10 westerly line, S 32-15-00 E 269.80 feet to an iron pin found in the northwesterly corner of the 50 foot right of way of Clearwater Road, said point also being the northwesterly corner of Lot 9, aforesaid Elliott Acres; thence S 32-15-00 E 199.58 feet to an iron pin found in the southwesterly corner of Lot 9, Elliott Acres as shown on Map Book 2369, Page 119, Mecklenburg County Registry; thence running with the southwesterly line of Lots 2, 3, 4, 5, 6, aforesaid Elliott Acres, S 32-15-00 E 392.81 feet to an iron pin found in the northwesterly corner of the property owned (now or formerly) by B.V. Elliott as described in Deed Book 5857, Page 977, Mecklenburg County Registry; thence S 32-15-00 E 164.49 feet to an iron pipe set in the northern 80 foot right of way margin of N.C. Highway 49 (S. Tryon Street); thence S 32-15-00 E 10.00 feet to the former 60 foot right of way margin; thence S 32-15-00 E 30.03 feet to the centerline of N.C. Highway 49; thence continuing with the centerline of N.C. Highway 49, S. 60-09-51 W 348.30 feet to a point; thence N 30-10-04 W 30.00 feet to a point located at the former 60 foot right of way margin; thence N 30-10-04 W 10.00 feet to an iron pipe set, said point being the PLACE AND POINT OF BEGINNING, containing 335,350 square feet or 7.699 acres as shown on the Survey for Carothers Holding Company, Inc. by Andrew G. Zoutewelle, NCRLS L-3098, dated 6-24-96 and labeled as Tracts 1 and 2 thereon, reference to which survey is hereby made for a more particular description of the property.

LESS AND EXCEPT THOSE PORTIONS TAKEN FOR HIGHWAY PURPOSES, said portions being more particularly described in Consent Judgments recorded in Book 2744, Page 31; Book 2732, Page 11; and Book 2732, Page 14, Mecklenburg County Registry.

**TRACT II**

Beginning at a point in the center line of South Tryon Street (N.C. Highway 49) 80 feet in width, said beginning point being the Southwest corner of lands conveyed to Ronald Mullis by Deed recorded in Book 4521 at Page 85 of the Mecklenburg County Registry and runs thence with the center line of South Tryon Street South 60-47-50 West 733.99 feet to a point thence with the arc of a circular curve having a radius of 5023.58 feet and in a Southwesterly direction an arc distance of 126.10 feet to a point in the center line of South Tryon Street, the same being a common corner of lands conveyed to City of Charlotte by Deed recorded in Book 5136 at Page 491 of the Mecklenburg County Public Registry; thence with the common boundary of City of Charlotte property North 39-03-00 West 835.16 feet to an existing iron; thence South 50-53-20 West 386.72 feet to an existing iron, common boundary of other lands of the City of Charlotte recorded in Deed Book 5015 at Page 490; thence with East boundary of lands of City of Charlotte North 39-21-39 West 1250.54 feet to an iron pin set, common boundary of other lands of City of Charlotte as set forth in Deed recorded in Book 4334 at Page 966, thence North 68-58-13 East 1189.22 feet to an iron, common boundary with lands 8-H Partnership (Deed Book 5764 at Page 427); thence North 17-26-23 East, 63.23 feet; thence with common boundary of lands of Janet Siniard (Deed Book 6139 at Page 904), South 77-24-15 East 39.85 feet to an iron; thence South 55-17-45 East 28.12 feet to an iron; thence North 66-31-15 East 39.43 feet to an iron; thence North 83-00-45 East 19.47 feet to an iron; thence South 45-52-45 East 12.49 feet to an iron; thence South 08-14-15 East 80.14 feet to an iron and common boundary of lands of Robert Dixon (Deed Book 2437, Page 217), thence South 74-09-15 East 28.18 feet; thence South 53-40-25 East 192.60 feet, common boundary of land of Dixon and James Staton (Deed Book 2458, Page 399) thence with South boundary of lands of Staton, John Cumbers and Baxter Reavis, North 58-39-35 East 324.87 feet to an existing iron; thence with South boundary of lands of Georgia Rumfelt, Jerry Kisiah, Paul Ramey, William Ferrell, and Helen Cook, North 83-53-52 East 436.32 feet to an iron in the West boundary of lands of Robert Medlin (Deed Book 5115, Page 397) thence with lands of Sidney Griffith and others (Deed Book 2630 at Page 202) South 03-35-36 West 685.27 feet to an existing iron; thence South 03-26-32 West 254.98 feet to an existing iron, corner of lands of Ronald Mullis (Deed Book 4521, Page 85); thence South 28-11-55 East 565.14 feet to a point in the center line of South Tryon Street (N.C. 49) the Point and Place of Beginning and containing 58.331 acres according to an unrecorded Map of Survey by Robinson and Sawyer, Inc., Engineers and Surveyors, Gastonia, North Carolina, dated June 24, 1990, to which reference is hereby made.

Map/Parcel ID Number: 143-181-06, 143-171-04

A portion of the Property was acquired by Grantor by instruments recorded in **Book 08864, Page 0572/0576, Deed Book 6254, Page 0162, and Deed Book 6416, Page 390.**

A map showing the Property is recorded in **Plat Book ____, Page ____.**

16. Consent Judgment naming State Highway Commission as Plaintiff and Vera Fowler, James H. Fowler and Jewel Fowler as Defendants, dated February 28, 1966, recorded February 28, 1966 in Book 2732, Page 11, aforesaid records.

17. Consent Judgment naming State Highway Commission as Plaintiff and Vera Fowler, James H. Fowler and Jewel Fowler as Defendants, dated February 28, 1966, recorded February 28, 1966 in Book 2732, Page 14, aforesaid records.

18. Consent Judgment naming State Highway Commission as Plaintiff and James H. Fowler and Jewel Fowler as Defendants, dated March 3, 1966, recorded April 16, 1966 in Book 2744, Page 31, aforesaid records.

19. Right of Way Agreement by and between J. H. Fowler and Jewel Fowler and the State of North Carolina recorded February 27, 1969 in Book 3071, Page 11, aforesaid records.

20. Right of Way Agreement by and between J. R. Fowler and Vera Sharon Fowler and the County of Mecklenburg of the State of North Carolina recorded February 27, 1969 in Book 3071, Page 13, aforesaid records.

21. Right of Way Agreement by and between York Memorial Association, Inc. and the City of Charlotte, dated August 13, 1974, recorded November 9, 1974 in Book 3719, Page 231, aforesaid records.

22. Easement Agreement by and between James R. Fowler and Jewel B. Fowler, dated July 2, 1974, recorded November 9, 1974 in Book 3719, page 257, aforesaid records.

23. Solid Waste Disposal Affidavit by York Memorial Association, Inc. dated March 6, 1984, recorded March 14, 1984 in Book 4803, Page 407, aforesaid records.

24. Restrictions, covenants, easements, etc. contained in the Deed recorded in Book 1114, Page 222, aforesaid records.

25. Any rights or claim because of dedication or use of the land as cemetery, including:

    a. rights, interests and easements of any persons who have burial lots, their relatives and the public in the land.

    b. Easements for visitations, use, driveways and access.

26. ALTA/ACSM Land Title Survey prepared for Melrose Abbey Memorial Park & Mortuary Stonemor Operating, LLC, prepared by Michael F. Feldbusch, PLS North Carolina Registration No. L-4451, Job Number SS41794.DWG_JSF, dated September 21, 2007, last revised ____________, 2007, discloses the following:

    a. Electrical line encroaches onto South right-of-way line;

    b. Electrical line along right-of-way not in defined easement.




JUDITH A. GIBSON
REGISTER OF DEEDS, MECKLENBURG
COUNTY & COURTS OFFICE BUILDING
720 EAST FOURTH STREET
CHARLOTTE, NC 28202

## PLEASE RETAIN YELLOW TRAILER PAGE

It is part of the recorded document, and must be submitted with original for re-recording and/or cancellation.

****************************************************************************************************

| | |
|---|---|
| Filed For Registration: | 01/09/2008 10:20 AM |
| Book: | RE 23258 Page: 363-371 |
| Document No.: | 2008004421 |
| | DEED 9 PGS $35.00 |
| NC REAL ESTATE EXCISE TAX: | $3,018.00 |
| Recorder: | LYVANH PHETSARATH |



2008004421

# EXHIBIT D

**YORK MEMORIAL PARK**
5150 York Road • Charlotte, NC 28217 • 704-523-8670

CERTIFICATE OF INTERMENT RIGHTS № 000256

COUNTY OF: Mecklenburg

*KNOW ALL MEN BY THESE PRESENTS:*

That the undersigned, the Grantor, a corporation fully qualified and authorized to transact business in the above-mentioned state, in consideration of payment of the full purchase price, receipt of which is hereby acknowledged, does hereby grant and convey unto

Burlin & Lucille Allen
3009 Burbank Drive Charlotte NC 28216

as Grantee, for interment purposes only, subject to the conditions, reservations and restrictions set forth herein, and the Rules and Regulations and By-Laws of Grantor now existing or which may be hereafter adopted, altered or amended, the following interment rights situated in the above-named cemetery, described as Resurrection Lot 12 B Spaces 1,2,3

according to a map of the said cemetery located in the office of the above-named cemetery.

That this conveyance, and all right, title and interest hereby conveyed in the interment rights above described, is subject to all governing laws and ordinances, and to the following conditions, reservations and restrictions. By acceptance hereof, the Grantee covenants and agrees that:

(a) No transfer, conveyance or assignment of any interest or rights acquired by Grantee shall be valid without the written consent of Grantor and being thereafter recorded on its books.

(b) No inscription, alteration or ornamentation, monument or other memorial, tree, plants, objects or embellishments of any kind shall be placed upon, altered or removed from any property associated with the above-described interment rights by the Grantee without the written consent of Grantor. All grading, landscape work and improvements of any kind, and all care on any property associated with the above-described interment rights, shall be done, all trees and plants of any kind shall be planted, trimmed or removed, and all interments, disinterments and removals shall be made only by Grantor. All interments shall be made subject to the use of the type of outer burial container as shall be designated by Grantor in its Rules and Regulations.

(c) Grantor, at the expense of Grantee and as a charge against the above-described interment rights, may repair or remove any monument or other memorial which is improper or offensive or which has become dangerous or dilapidated; and may remove any tree, flower or plant, or other object or embellishment that becomes unsightly or dangerous.

(d) Grantor shall not be liable for loss or damage caused by an act of God, common enemy, thieves, vandals, strikers, malicious mischief makers, unavoidable accidents, riot or order of military or civil authority, or other acts or events beyond Grantor's control.

(e) The enumeration herein of certain conditions, reservations and restrictions shall not be considered as the only limitations, but the Grantee's interest and rights shall be limited by and subject to the Rules and Regulations and By-Laws of Grantor now existing or which may be by it hereafter adopted either by amendment, alteration or the adoption of new Rules and Regulations and By-Laws. These Rules and Regulations and By-Laws are on file for inspection in Grantor's office and are specifically referred to and incorporated herein as if set forth in full.

(f) The Grantor agrees to provide endowment care as required by applicable law and as defined in its Rules and Regulations, without further charge.

(g) In the event this certificate is issued prior to the time the property associated with the within-described interment rights has been developed, the Grantor may, with the consent of Grantee, and at no increase in price, permanently transfer Grantee's interment rights to reasonably comparable developed interment property, or temporarily transfer such rights to reasonably comparable interment property until such time as construction is completed.

All the above conditions, reservations and restrictions are binding upon Grantee, and Grantee's heirs, devisees, executors, administrators and assigns, and are enforceable only by Grantor or its successors in interest. Nothing herein contained shall be deemed to restrict the use of any portion of the cemetery other than that herein conveyed to Grantee.

IN WITNESS WHEREOF, Grantor has caused this instrument to be executed in its name by its duly authorized representative this 26th day of Nov. 2008

YORK MEMORIAL PARK
CHARLOTTE, NC 28217

By Christina Giordano
Authorized Representative

EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:23-cv-00217-KDB-SCR

HUBERT SIMPSON, LYNDA MASON, ALLISON MONTOMERY, PIERRE DAVIS, LAVONNE JONES HAYNES ANDERSON, MARIO BLACK, ANDREA BYERS, BULIN ALLEN, SR., BURLIN ALLEN, JR., and JACQUELINE W. MCCLINTON, individually, and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CAROTHERS HOLDING COMPANY, LLC Doing business as YORK MEMEORIAL PARK STONEMOR GP, LLC, STONEMOR, NORTH CAROLINA, LLC, STONEMOR NORTH CAROLINA FUNERAL SERVICES, INC., STONEMORE NORTH CAROLINA SUBSIDARY LLC, STONEMOR PARTNERS, LP,

**AFFIDAVIT OF NEELY FRANKIE BINGHAM, JR**

I, **Neely Frankie Bingham**, Jr. being duly sworn and declare that:

1. I am over the age of eighteen (18) years and I am a resident of Lincoln County, North Carolina.

2. I was employed at York Memorial Cemetery from 2001 to 2010.

3. I am personally aware of the fact that it is the common business practice of York Memorial Cemetery to not properly maintain records of the burials and the locations of the burials that have occurred at York Memorial Cemetery.

4. Also, as a common business practice, York Memorial Cemetery does not maintain proper records of the burial plots that have been sold to the consuming public.

5. It is my personal opinion that the failure of York Memorial Cemetery to properly maintain records of the burials that have occurred at York Memorial Cemetery and the burial plots that have been sold at York Memorial Cemetery has impacted and continues to impact all of the gravesites located at York Memorial Cemetery, including those where persons are buried as well as those where persons are to be buried.

6. Further, it is my personal opinion that the failure of York Memorial Cemetery to properly maintain records of the burials at York Cemetery has violated the sepulcher and uninterrupted peace of the repose of the souls who are buried at York Memorial Cemetery.

7. In order to maintain my employment at York Memorial Cemetery, I was directed my supervisors at York Memorial Cemetery, not to disclose to the consuming public the failure of York Cemetery to properly maintain records of the burials that have occurred at York Memorial Cemetery nor the burial plots that York Memorial Cemetery has sold to the consuming public.

Further Affiant Sayeth Naught.

This 27 day of July, 2023.

NEELY FRANKIE BINGHAM, JR.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

Sworn to and subscribed before me this 27th day of July, 2023.

Notary Public

My Commission Expires: May 5, 2026

BRITTNEE SMITH NOTARY PUBLIC MECKLENBURG COUNTY, NC

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:23-cv-00217-KDB-SCR

HUBERT SIMPSON, LYNDA MASON, ALLISON MONTOMERY, PIERRE DAVIS, LAVONNE JONES HAYNES ANDERSON, MARIO BLACK, ANDREA BYERS, BULIN ALLEN, SR., BURLIN ALLEN, JR., and JACQUELINE W. MCCLINTON, individually, and on behalf of themselves and all others similarly situated.

Plaintiffs,

v.

CAROTHERS HOLDING COMPANY, LLC Doing business as YORK MEMORIAL PARK STONEMOR GP, LLC, STONEMOR, NORTH CAROLINA, LLC, STONEMOR NORTH CAROLINA FUNERAL SERVICES, INC., STONEMORE NORTH CAROLINA SUBSIDIARY LLC, STONEMOR PARTNERS, LP,

Defendants.

**AFFIDAVIT OF VERLYN WRIGHT**

I, Verlyn Wright, being duly sworn and declare that:

1. I am over the age of eighteen (18) years and I am a resident of Mecklenburg County, North Carolina.

2. I was employed at York Memorial Cemetery from 2008-2009.

3. I am personally aware of the fact that it is a common business practice of York Memorial Cemetery to not properly maintain records of the burials and the locations of the burials that have occurred at York Memorial Cemetery.

Scanned with CamScanner

4. Also, as a common business practice, York Memorial Cemetery does not maintain proper records of the burial plots that have been sold to the consuming public.

5. It is my personal opinion that the failure of York Memorial Cemetery to properly maintain records of the burials that have occurred at York Memorial Cemetery and the burial plots that have been sold at York Memorial Cemetery has impacted and continues to impact all of the gravesites located at York Memorial Cemetery, including those where persons are buried as well as those where persons are to be buried.

6. Further, it is my personal opinion that the failure of York Memorial Cemetery to properly maintain records of the burials at York Memorial Cemetery has violated the sepulcher and uninterrupted peace of the repose of the souls who are buried at York Memorial Cemetery.

7. In order to maintain my employment at York Memorial Cemetery, I was directed by my supervisors at York Memorial Cemetery, not to disclose to the consuming public the failure of York Memorial Cemetery to properly maintain records of the burials that have occurred at York Memorial Cemetery nor the burial plots that York Memorial Cemetery has sold to the consuming public.

Further Affiant Sayeth Naught.

This 31 day of July, 2023.

[signature]
VERLYN WRIGHT

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

Sworn to and subscribed before me this 31st day of July, 2023.

[signature]
Notary Public

My Commission Expires: May 5, 2026




Scanned with CamScanner

EXHIBIT F

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23 CVS 4923

FILED
2023 MAR 17 P 2:06
MECKLENBURG CO., C.S.C.
BY____

ROBIN MORRIS,
Plaintiff,

v.

CAROTHERS HOLDING COMPANY, LLC, doing business as York Memorial Cemetery, a/k/a York Memorial Park, STONEMOR GP, LLC, STONEMOR NORTH CAROLINA, LLC, STONEMOR NORTH CAROLINA FUNERAL SERVICES, INC., STONEMOR NORTH CAROLINA SUBSIDUARY, LLC, STONEMOR PARTNERS, LP,
Defendants.

**COMPLAINT**
**(JURY TRIAL REQUESTED)**

Plaintiff, complaining of Defendants, alleges and says that:

1. Plaintiff, is over the age of eighteen years and is a resident of the State of South Carolina.
2. The Defendants are the owners and operators of a cemetery located in Charlotte, Mecklenburg County, North Carolina, commonly referred to as York Memorial Park Cemetery, (hereinafter referred to as "York").
3. The Plaintiff became employed at York Cemetery in 2010 as an Account Executive and was later promoted to General Manager which was the position she held when Plaintiff was terminated in 2021.
4. Our Courts have long held that the preservation of the sanctity of grave sites is a proper service of the police power by the State of North Carolina. *Shields v. Harris* 190 N.C. 520, 527, 130 S.E. 189, 192 (1925).

5. As a common law public policy, North Carolina has held in great reverence the resting places of the dead as hallowed ground. *Mills v. Carolina Cemetery Park, Corp.* 242 N.C. 20 (1955)

6. During the course of Plaintiff's employment, the Defendants directed the Plaintiff to make the following false and misleading misrepresentations to customers of York for the purposes of Defendants obtaining pecuniary gain although Defendants knew them to be false and misleading. The statements included but where not limited to, That by:

   a. Choosing and purchasing burial plots will ensure that families will be buried together;

   b. Choosing and purchasing burial plots will give peace of mind in knowing that your family will always be together for generations to come;

   c. Choosing and purchasing burial plots will ensure your legacy and family heritage plans;

   d. Choosing and purchasing burial plots will ensure that financial arrangements have been made to cover your burial costs;

   e. Choosing and purchasing burial plots ensures that arrangements and preparations have been made for end of life services;

   f. Choosing and purchasing burial plots ensures that final services are planned so you are the author of your story;

   g. Choosing and purchasing burial plots ensures that you have planned ahead if a loved one at the time of the painful time of loss of loved ones;

   h. Choosing and purchasing burial plots avoids woes about what loved ones wanted;

   i. Choosing and purchasing burial plots ensures that your final wishes are fulfilled;

j. Choosing and purchasing burial plots gives you peace of mind that that this has been taken care of ahead of time;

k. Choosing and purchasing burial plots ensures that wishes will be followed;

l. Choosing and purchasing burial plots provides instructions on how you will be memorialized;

m. Choosing and purchasing burial plots provides that your family memory will remain alive;

n. Choosing and purchasing burial plots ensures that your preferences will be accommodated.

7. That at all times pertinent and relevant to these transactions the Defendants knew that it was directing Plaintiff to make false representations to the consuming public because Defendants, jointly and severally, had engaged in the following wrongful acts:

(a) desecrating of graves by conducting exploratory digging of graves with and without backhoes in efforts to identify persons buried in grave sites; (b) by failing to obtain authorization or consent of the next of kin of Plaintiffs to conduct exploratory digs with and without backhoes in efforts to locate and identify persons buried in grave sites in violation of North Carolina General Statute § 14-149, et seq.; (c) the cutting of patches of ground no less than three inches by three inches and at least three feet deep from grave sites; (d) failing to obtain authorization or consent of Plaintiffs to remove patches of earth of no less in size of 3 inches by 3 inches by three feet deep in violation of North Carolina General Statute § 14-149, et

seq.; (e). conducting sonograms to locate the buried resulting in the discovery and revelation of graves encroaching other graves; (f). failing to inform Plaintiffs that sonograms reveal that grave sites have been encroached upon by other grave sites; (g) placing markers on the wrong gravesite of the persons identified on the markers because Defendants do not have accurate records to reflect where bodies are buried; (h) failing to inform Plaintiffs that markers are placed on the wrong grave sites; (i). failing to inform Plaintiffs that bodies will not be buried according to the burial sites purchased and identified in the contracts of sale; (j). failing to inform Plaintiffs that the location of the burial sites of their deceased cannot be identified; (k). by digging up bones of deceased persons while digging other graves for burial because bodies have been previously buried in the wrong burial plots; (l). failing to inform the families of the bones which were dug up as to what has taken place; (m). puncturing vaults numerous times while probing to identify persons buried; (n). failing to notify Plaintiffs that vaults of their loved ones have been punctured; (o). double selling grave sites and failing to maintain records of the double sales; (p). failing to inform Plaintiffs of the likelihood that plots purchased may be or had been double sold; (q). failing to maintain records of deeds which correlate with purchased grave sites; (r). failing to disclose to Plaintiffs that records of deeds have not been maintained to correlate the purchased grave sites; (s).

locating buried bodies which cannot be identified because of improper record keeping; (t). failing to inform Plaintiffs that burials cannot be identified at the Cemetery because of poor record keeping; (u). burying babies on top of each other over a period of years, to the extent that an area of the cemetery is commonly referred to among workers as "the hill of babies"; (v). failing to disclose to family members searching for the grave site location of their deceased babies, that babies were buried on top of each other in an area commonly referred to as "the hill of babies"; (w). failing to disclose to family members searching for the location of their deceased babies that the location of the deceased baby could never be determined; (x). double selling tandem sites;(y). failing to disclose to Plaintiffs that tandem grave sites had been double sold; (z) failing to disclose to Plaintiffs that members of the same family would not be placed in tandem burial sites next to each other because tandem sites had been double sold; (aa). discovering grave sites with burials already having taken place while undergoing the process to prepare for the burial of the respective owners of the particular grave sites; (bb). failing to disclose to Plaintiffs of persons that grave sites possessed the burials of bodies which are routinely discovered while undergoing the process to prepare for the burial of respective owners of the particular grave sites; (cc). burying persons in grave sites different from the contracted plots although this practice created

persons not being buried next to their loved ones as contracted; (dd). failing to disclose to Plaintiffs that persons were not buried next to their loved ones as the original contracts allowed.

8. Throughout this period of time the Defendants mandated that Plaintiff make these representations to the customers and families whom Defendants contracted with as a condition of the Plaintiff's continued employment.

9. Throughout this period of time, the Plaintiff repeatedly requested the Defendants to eliminate this condition of employment, however the Defendants refused.

10. The continuous misrepresentations to customers and families whom the Defendants contracted with devastated the Plaintiff to the extent that Plaintiff began experiencing multiple health problems including but not limited to, depression, anxiety, hypertension and cardiovascular and neurology health issues.

11. Among the many demands by Defendants for Plaintiff to misrepresent and conceal the truth from families at Defendants' cemetery on September 30, 2020, another act of concealment took place when the brother of Vanessa Little Mack came to York to visit his sister's grave.

12. Throughout Plaintiff's employment, the Defendants mandated its employees, including Plaintiff, to conceal from the members of the Little Mack family that the location of her remains were unknown. Further, the designated location which had been told to the Little Mack family by Defendants as the gravesite of Vanessa Little Mack family was not her gravesite. In fact, as part of furthering the intentional concealment, the Defendants had caused a headstone for Vanessa Little Mack to knowingly be placed on an empty grave.

13. When Plaintiff determined that Vanessa Little Mack's brother was present to visit her gravesite, Plaintiff became extremely concerned about again directing him to an empty gravesite because she wanted to tell the truth to the family of Vanessa Little Mack.

14. At that time, Plaintiff was advised by her employer to again take him to the empty gravesite and to continue the ongoing misrepresentation to the family of Vanessa Little Mack.

15. During the entire time of Plaintiff's employment with Defendants, the Plaintiff expressed her desperation and expressed to her supervisors continuously of her desire and intentions to tell persons who had burial plots or who were purchasing burial plots the truth about York's failure to ensure that the cemetery plots purchased by and for family members were actually the same or would be the same plots that families were buried in.

16. On September 30, 2020, after the Vanessa Little Mack directive by Plaintiff's supervisor, Plaintiff became increasingly dismayed at the continuous misrepresentations which she, along with all other employees were required to make to families whose loved ones were buried at York, all in violation of North Carolina Public Policy.

17. Plaintiff continued to complain more aggressively about the intentional misrepresentations and violations of North Carolina Public Policy that the Defendants were making to the families of loved ones buried at York especially in staff meetings in the presence of other employees. Plaintiff continuously expressed her desire to be allowed to cease making misrepresentation and concealments of facts to members of the consuming public.

18. The anxiety, mental anguish and psychological suffering which Plaintiff experienced as the result of the demands by Defendants that continuous misrepresentations be made to customers caused the health of Plaintiff to deteriorate causing Plaintiff to seek temporary disability medical leave.

19. Without cause or provocation, the Plaintiff was terminated from employment immediately after returning from temporary disability medical leave, upon the false allegations that Plaintiff was absent from work without leave. The actual reason that Plaintiff was terminated is because Plaintiff aggressively expressed opposition to the condition of employment which included the intentional misrepresentations and concealments to members of the consuming public.

## COUNT I
## WRONGFUL DISCHARGE IN VIOLATION OF NORTH CAROLINA PUBLIC POLICY

20. Paragraphs 1-19 above is realleged and incorporated into this Count by reference.

21. That the wrongful termination of the Plaintiff was a violation of the Public Policy of the State of North Carolina.

22. That the Defendants owed the Plaintiff a duty of care to provide the Plaintiff with a work environment that did not intentionally require and mandate the Plaintiff to violate the Public Policy of the State of North Carolina.

23. That the wrongful termination of the Plaintiff was based upon the Plaintiff's complaints regarding the condition of Plaintiff's employment and continuous misrepresentations to customers in violation of the Public Policy of the State of North Carolina.

24. That the Defendants, jointly and severally, violated this duty of care when they unlawfully terminated the Plaintiff on or about January 18, 2021.

25. That because of the violation of Public Policy of the State of North Carolina, the Plaintiff has suffered damages.

26. The actions of the Defendants are a proximate cause of the damages suffered by the Plaintiff.

27. That the acts of the Defendants were intentional, wanton and willful.

28. That as a result of the wrongful termination of the Plaintiff by the Defendants, the Plaintiff is entitled to receive, actual, special, consequential and punitive damages from the Defendants, in an amount in excess of Twenty-Five Thousand Dollars, ($25,000.00) jointly and severally.

## COUNT II-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

29. Paragraphs 1 through 28 above are realleged and incorporated into this Count by reference.

30. The Plaintiff represents that Defendants, jointly and severally, engaged negligently in conduct as set forth above.

31. The Defendants, jointly and severally, knew or should have known that such conduct was reasonably foreseeable and would cause the Plaintiff to suffer severe emotional and physical distress and mental anguish.

32. The conduct by this Defendants has caused harm to the Plaintiff to suffer severe emotional distress and mental anguish.

33. The Plaintiff suffers actual, special and punitive damages in excess of $25, 000.00, jointly and severally under this Count.

WHEREFORE, the Plaintiff prays for the following relief:

1. Under Count One, monetary relief in excess of Twenty-five Thousand Dollars

($25,000.00) based upon the actual, special and punitive damages;

2. Under Count Two, monetary relief in excess of Twenty-five Thousand Dollars ($25,000.00) based upon the actual, special and punitive damages;
3. Trial by jury;
4. That the costs of this action be taxed against the Defendants;
5. Reasonable attorney fees as allowed by law;
6. For such other and further relief as the Court deems to be fit, just and proper.

This 17th day of March, 2023.

Pamela A. Hunter
715 East 5th Street, Suite 106
Charlotte, North Carolina 28202
704-376-7709

N. Clifton Cannon, Jr.
355 South New Hope Road, Suite B
Post Office Box 551154
Gastonia, North Carolina 28055
704-867-9070

Kimberly Best
Post Office Box 37154
Charlotte, North Carolina 28237

## VERIFICATION

I, ROBIN MORRIS, being duly sworn, depose and say; that I have read the foregoing COMPLAINT, and I know the contents thereof to be true, expect as to those facts alleged to be upon information and belief; and as to those facts, I believe them to be true.

Robin Morris
ROBIN MORRIS

COUNTY OF MECKLENBURG

Subscribed and sworn to before me this 16Th day of March 2023.

Julie H. Morris
NOTARY PUBLIC

1/6/27
MY COMMISSION EXPIRES:

JULIE H MORRIS NOTARY PUBLIC STANLY COUNTY, NC