# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:23-CV-00217-KDB-SCR

| | |
|---|---|
| **HUBERT SIMPSON, ET AL.,** | |
| **Plaintiffs,** | |
| **v.** | **ORDER** |
| **STONEMOR GP, LLC; CAROTHERS HOLDING COMPANY, LLC; STONEMOR NORTH CAROLINA, LLC; STONEMOR PARTNERS, LP; STONEMOR NORTH CAROLINA FUNERAL SERVICES, INC.; AND STONEMOR NORTH CAROLINA SUBSIDIARY, LLC,** | |
| **Defendants.** | |

**THIS MATTER** is before the Court on Defendants' Motions to Dismiss (Doc. Nos. 29, 32) and Plaintiffs' Motion to Certify Class (Doc. No. 30). The Court has carefully considered these motions, the parties' briefs and exhibits, oral argument on the motions from the parties' counsel on December 12, 2023[1] and the Second Amended Complaint ("SAC") (Doc. No. 68). In this case, Plaintiffs assert multiple causes of action on behalf of thousands of putative class members claiming that Defendants committed serious misconduct in operating York Memorial Cemetery, where their "next of kin" are buried (or where they have purchased burial plots). However, despite

---

[1] Following this hearing, the Court granted Plaintiffs' oral motion to file a Second Amended Complaint, to which Defendants' then pending motions to dismiss were deemed to apply. Doc. No. 65. Supplemental briefing on the Parties' motions following the filing of the Second Amended Complaint recently concluded on March 21, 2024.

1

Plaintiffs having now had three opportunities to define one or more viable classes, it is clear that they cannot properly maintain their widely varying claims as a class action under Rule 23 of the Federal Rules of Civil Procedure. Therefore, the Court will deny the Motion to Certify Class.

With this denial of class certification, the lone basis for federal jurisdiction over this very local dispute no longer applies. Accordingly, the Court will remand this matter to the Superior Court of Mecklenburg County, North Carolina, leaving the merits of the Defendants' motions to dismiss to be decided in the state courts, where similar claims related to the same cemetery are pending and were the subject of earlier litigation ultimately resolved in the North Carolina Court of Appeals.

## I.    LEGAL STANDARD

A class action allows representative parties to prosecute not only their own claims, but also the claims of other individuals which present similar issues. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006). Plaintiffs seeking class certification "must affirmatively demonstrate [their] compliance" with Federal Rule of Civil Procedure 23. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts have wide discretion to certify a class based on their familiarity with the issues and consideration of both the potential efficiency and flexibility of a class action and the potential difficulties arising in such litigation. *See, e.g.*, *Brown v. Nucor,*[2] 785 F.3d 895, 921–22 (4th Cir. 2015); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010).

---

[2] Carothers' counsel's quotation from the dissent in this case without informing the Court that it was doing so, and then failing to address this misrepresentation in its Reply brief (after it was pointed out by Plaintiffs), is of significant concern to the Court. Had this matter remained in this Court, this issue would have been addressed with counsel, including consideration of revoking the pro hac vice admission of any counsel responsible for the erroneous filing.

2

Rule 23(a) requires that a prospective class satisfy four prerequisites to ensure that class claims are fairly encompassed by those of the named plaintiffs. *See* Fed. R. Civ. P. 23(a). These prerequisites are often referred to as numerosity, commonality, typicality, and adequacy. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019). The Fourth Circuit has also recognized that Rule 23 "contains an implicit threshold requirement" of "ascertainability" – that the members of a proposed class be "readily identifiable" by way of reference to objective criteria. *See id.* at 654–55.

To satisfy the numerosity requirement, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Commonality requires that a class have "questions of law or fact common to the class" which are capable of classwide resolution, such that the determination of the truth or falsity of the common issue "will resolve an issue that is central to the validity of each one of the claims in one stroke." Fed. R. Civ. P. 23(a)(2); *Dukes,* 564 U.S. at 350. As for typicality, the named plaintiff proposed as the class representative must be "typical" of the class in that the named plaintiff's claims and defenses "are typical of the claims or defenses of the class" so that the prosecution of the claim will "simultaneously tend to advance the interests of the absent class members." Fed. R. Civ. P. 23(a)(3); *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006). Finally, the named plaintiff must "fairly and adequately protect the interests of the class" without a conflict of interest with the absent class members. Fed. R. Civ. P. 23(a)(4); *Ward*, 595 F.3d at 179-80. The adequacy prerequisite also requires consideration of "the competency of class counsel." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

To be maintained as a class action, a case must not only meet the four requirements of Rule 23(a) but it also must fit into one of the four categories of Rule 23(b), and it may fit into more than

one. Fed. R. Civ. P. 23; *Krakauer*, 925 F.3d at 655. In other words, Rule 23 recognizes that there are cases that satisfy the Rule 23(a) criteria—numerous individuals with common questions whose rights are being pursued by an adequate class representative with typical claims—but that are unworthy of class certification on those grounds alone.

Rule 23(b)(1)(A) describes the "rarely used" category of class actions where the prosecution of "separate actions by or against individual members of the class would create a risk of incompatible standards of conduct for the adverse party due to inconsistent or varying adjudications with respect to individual members of the class." *See* 2 William Rubenstein et al., Newberg on Class Actions, § 4:1 (5th ed. 2020) (hereinafter "Newberg"); *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, 2014 WL 7330602, *10 (E.D. La. 2014) (noting that Rule 23(b)(1)(A) category is "rarely utilized" and "does not cover situations in which multiple plaintiffs sue a single defendant for money damages"). Rule 23(b)(1)(B) class actions are appropriate in situations where an individual judgment, while not technically concluding the claims of other members, might do so as a practical matter, for example a suit against a single defendant whose funds are so limited that they are incapable of satisfying all the potential claimants. *See* Fed. R. Civ. P. 23(b)(1)(B). Rule 23(b)(2) authorizes a class action when a party has taken or refused to take action with respect to a class, and "final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole." *See* Fed. R. Civ. P. 23(b)(2). The (b)(2) class action is often referred to as an "injunctive" class suit. *See* Newberg at § 4.1.

Finally, Rule 23(b)(3) permits a class action in all other circumstances where the prerequisites of Rule 23(a) are met, and two additional criteria are satisfied: (1) that questions of law or fact common to members of the class predominate over any questions affecting only individual members and (2) that a class action is superior to other available methods for the fair

4

and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). This is the most common category for money damage cases, especially small claims class actions, and hence is commonly referred to as a "money damages" class action. *See Krakauer*, 925 F.3d at 655 (Rule 23(b)(3) is the "common vehicle" for class actions "which seek damages for widespread wrongful conduct"); Newberg at § 4.1.

Further, although it is Plaintiffs' burden to demonstrate compliance with Rule 23, this Court "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Dukes*, 564 U.S. at 350–51). As Rule 23's criteria are often "enmeshed in the factual and legal issues comprising the plaintiff's cause of action," this analysis may entail some consideration of the merits of the underlying claims. *See Dukes*, 564 U.S. at 351. However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

## II.      FACTS AND PROCEDURAL HISTORY

York Memorial Cemetery (the "Cemetery") is one of the oldest and largest historically African American cemeteries in Charlotte, North Carolina, with approximately 28,000 individuals having been buried there since its founding. SAC at ¶¶ 1, 33. Defendants are current and former owners and operators of the Cemetery (and related entities). *Id*. at ¶¶ 2, 24-30. Nine of the ten named plaintiffs are the alleged "next of kin" of parents, children and other family members buried in the cemetery. Plaintiff Burlin Allen, Sr., the tenth named plaintiff, has purchased grave plots at the cemetery for himself and other family members.

Plaintiffs allege in their verified SAC that Defendants are liable for negligence, breach of contract, breach of fiduciary duty, desecration of gravesites and violation of North Carolina's Unfair and Deceptive Trade Practices Act based on numerous different acts of "egregious treatment of human remains and gravesites" at the Cemetery. *Id*. at ¶ 1. Defendants' alleged wrongful conduct includes the failure to maintain adequate records of burials, burial sites, and contracts; desecration of graves; the losing of deceased bodies; placing markers on the wrong gravesites; failing to bury persons next to their loved ones; the encroachment of graves; contractual breaches pertaining to the sale of burial sites; and false and misleading advertisements since at least 1969 to the present. *See id*. at ¶ 47. Plaintiffs further allege that Defendants intentionally concealed their actions from the Plaintiffs, other individuals whose families are buried at the Cemetery and the community. *Id*. at ¶ 48.

Plaintiffs seek to represent two putative classes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)(A) and 23(b)(3). *Id*. at ¶ 83. The first proposed class is "[a]ll individuals who entered into a contract with Defendants for burial services at York Memorial Cemetery from January 1, 1969, through the date of class certification (the "Contract Holder Class")" and the second is "[a]ll individuals who are next of kin of any individual buried at York Memorial Cemetery from January 1, 1969, through the date of class certification (the "Next of Kin Class")." *Id*. at ¶¶ 84-85. Plaintiffs acknowledge that "the exact number of each Class is currently unknown," but allege that "there are thousands of individual members of the Proposed Classes" and "[f]or purposes of defining the class period, discovery will reveal when the unlawful conduct occurred, as well as Defendants' ongoing efforts to conceal their misconduct and the resulting injuries to class members." *Id*. at ¶¶ 86, 89.

6

This action was filed on March 17, 2023 in Mecklenburg County Superior Court, and was removed to this Court on April 14, 2023 based only on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (a putative large class action satisfying the minimal diversity requirements). *See* Doc. No. 1. Following removal, Defendants moved to dismiss the Complaint, which became moot when the Court allowed Plaintiff to file an Amended Complaint. *See* Doc. Nos. 11, 16, 19. Defendants then moved to dismiss the Amended Complaint, and Plaintiffs moved to certify their proposed class. Doc. Nos. 29-30, 32. At the hearing on those motions, Plaintiffs orally moved to file a Second Amended Complaint, which the Court granted. Doc. No. 65. The Court further ordered that Defendants' motions to dismiss would be "deemed to have been renewed to seek dismissal of the Second Amended Complaint." Doc. No. 65. Supplemental briefing on all of the pending motions has concluded, and they are ripe for resolution.

## III. DISCUSSION

This action raises important issues of intensely local concern, all governed by North Carolina law and, according to Plaintiffs, North Carolina public policy. It was first filed in the state Superior trial court for Mecklenburg County, North Carolina, where the Cemetery is located. But, it was neither the first nor the last case in that court raising claims related to alleged wrongful conduct at the Cemetery. *See Birtha v. StoneMor, North Carolina, LLC*, 220 N.C. App. 286, 298 (2012); *Hardin v. York Memorial Park*, 221 N.C. App. 317, 328 (2012); *Natalie Little, et al. v. Carothers*, *Holding Co., LLC, et al*., 23-cvs-4924 (March 17, 2023, Mecklenburg County North Carolina Superior Court) (pending action alleging similar claims). Thus, much of this dispute is already familiar to the state courts. The only jurisdictional nexus to Federal Court lies in the alleged nature of the case as a class action, and, if it is not a class action, there is a significant question whether this Court should retain jurisdiction. Therefore, the Court will first consider below

7

whether Plaintiffs' claims can properly be maintained as a class action and then, after holding that it cannot, explain why the action will be remanded to state court for further proceedings.

### A. Class Certification

#### 1. Rule 23(a) Factors

##### a) Ascertainability

The initial factor to be considered with respect to certification under Rule 23 is whether the class is adequately defined so that the members of the class are "readily identifiable" through objective criteria. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (internal citations omitted). Where it is impossible to identify class members without "extensive and individualized fact-finding or mini-trials," a class cannot be certified. *Id. See also, Krakauer v. Dish Network, LLC,* 925 F.3d 643, 654-55 (4th Cir. 2019); *Anderson v. Laboratory Corporation of America Holdings,* 2023 WL 1970953 (M.D.N.C. Feb. 13, 2023) (class not ascertainable where plaintiffs "failed to identify an objective and administratively feasible way" to identify class members).

As described above, Plaintiffs seek to represent two broad classes, and for both of them it will be difficult, if not practically impossible, to identify the members of the proposed class. Plaintiffs define the "Contract Holder Class" as including everyone who entered into a contract for burial services at the Cemetery since 1969. However, even if the names of all those who entered into contracts related to the more than 40,000 burial plots at the Cemetery[3] could be found through "business records" (which Plaintiffs allege are either non-existent or unreliable),[4]

_____

[3] Plaintiffs allege that 28,000 persons have been buried at the Cemetery, but "Defendants sold more than 40,000 burial plots." SAC at ¶ 40.

[4] To be clear, the Court does not mean to suggest that Defendants' alleged negligence in maintaining records inures to their benefit in this analysis. (In fact, the allegation makes the Court

8

that would not necessarily identify any specific person to whom Defendants are allegedly liable for *breach* of contract. That is, there is insufficient evidence (beyond the conclusory allegation that the Cemetery's record keeping is such a mess that no one can determine with any certainty where any person is buried) to support a finding that Defendants breached every single contract for the past 55 years. This is particularly true where the Contract Holder Class as defined in the SAC includes many contracting parties (approximately 12,000 according to Plaintiffs' allegations) who have not even used the burial services they contracted to receive. Thus, being able to discern who entered into contracts that might plausibly have been breached over such a long period would be a massive and doubtful undertaking that will not "readily identify" members of Plaintiffs' proposed (breach of) contract class.

Similar concerns extend to Plaintiffs' proposed "Next of Kin Class." This class also reaches back to 1969 and indeed is even broader than the "Contract" class because it presumably includes all those who might claim to be "next of kin" to those buried in the Cemetery. Again, Plaintiff suggests "business records" along with "statutory and common law" definitions might be used to identify class members, but it is unclear if that is practically possible.[5] Moreover, the definition of this class raises the same issue as to how to identify "next of kin" who are not only

---

reluctant to find that the class is not reasonably ascertainable). Rather, given the more than five decades long class period proposed by Plaintiffs, whether any business would maintain accurate contractual records for that long would be uncertain.

[5] In North Carolina, "next of kin" "shall be construed to be to those persons who would take under the law of intestate succession, unless a contrary intention appears by the instrument." N.C. Gen. Stat. § 41-6.1. In effect, North Carolina law makes "next of kin" synonymous with an individual's "heirs." *See Rawls v. Rideout*, 74 N.C. App. 368, 371 (1985). Thus, to determine who any specific decedent's next of kin is for purposes of identifying putative class members, this Court might need to conduct mini probate trials to determine each decedent's heirs under the laws of intestate succession. This only increases the difficulty of determining the members of the putative class. *See Krakauer*, 925 F.3d at 658 (class treatment inappropriate where identifying members of class would require "extensive and individualized fact-finding or mini-trials").

merely related to someone buried at the Cemetery, but actually have a potential legal claim. In sum, the Court finds that defining a class of the "next of kin" of everyone who has been buried at the Cemetery over the past 55 years is not a reasonably "ascertainable" class.

**b)    Numerosity**

Rule 23(a)(1) "requires that a class be so numerous that the joinder of all members is impracticable." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (*quoting* Fed. R. Civ. P. 23(a)(1)). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule, and must do so with evidentiary proof." *Id.* (internal citations omitted.) Thus, to establish numerosity, Plaintiffs must "show that the other class members exist and that their joinder is impracticable; a court may not rely on mere speculation that numerosity has been satisfied." *Yates v. NewRez, LLC*, No. TDC-21-3044, 2023 WL 5108803, at *3 (D. Md. Aug. 9, 2023). However, "as a general guideline. . . a class that encompasses fewer than 20 members will likely not be certified . . . while a class of 40 or more members raises a presumption of impracticability of joinder based on number alone" *In re Zetia,* 7 F. 4th at 234 (quoting 1 *Newberg on Class Actions* §3:12 (5th ed. 2021)). "Plaintiffs need not establish the precise number of class members at the certification stage to satisfy the numerosity requirement so long as they provide a reasonable estimate of the number of class members.'' *Id*.

As discussed elsewhere, it is unclear how many members of the proposed classes share the various specific claims against the Defendants; however, for purposes of this analysis the Court finds that Plaintiffs have alleged sufficient evidence that joinder of all members of the class (if they could be ascertained) would be "impracticable." Given the thousands of graves and the widespread wrongdoing alleged in the affidavits of former employees, it seems likely that the

number of class members would exceed the level (of a few dozen)[6] at which individual joinder would be presumptively impracticable.

### c) Commonality

The commonality requirement of Fed. R. Civ. P. 23(a)(2) requires that Plaintiffs show "that there are questions of law or fact common to the class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Id*. at 349-350 (Noting that "Title VII, for example, can be violated in many ways … the mere claim by employees of the same company that they have suffered a Title VII injury … gives no cause to believe that all their claims can productively be litigated at once."). Thus, the "common" contentions at the heart of a certifiable class must "be of such a nature that [they are] capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350 ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.").

Here, Plaintiffs "commonly" allege that Defendants significantly mishandled the operations of the Cemetery, but they also allege that their mismanagement injured Plaintiffs and the putative classes in myriad, different ways. Thus, issues such as the existence and interpretation of the terms of the Cemetery contracts and the scope of the Defendants' alleged fiduciary and other duties to the classes raise "common" questions and can generate common answers, while the

---

[6] Also, in removing this action Defendant Carothers represented to the Court that the number of proposed class members exceeded 100, as required under CAFA.

overall resolution of any individual class member's claims will likely turn on the individual circumstances of each class member. Therefore, the Court will hold, for the purposes of its Rule 23(a)(2) analysis, that there is a sufficient minimum of "commonality." However, the Court notes that the presence of significant individual issues is highly relevant to its ultimate decision not to certify a class under Rule 23(b)(3). *See Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (stating that in "a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions" (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997))); *Jackson v. Am. Elec. Warfare Assocs., Inc*., No. CV TDC-22-1456, 2024 WL 556230, at *4 (D. Md. Feb. 12, 2024).

### d) Typicality

Rule 23(a)(3) requires that, in order to maintain a class action, a plaintiff must show that his claims "are typical of the claims. . . of the class." Typicality requires that the plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by" proof of the plaintiff's own individual claim. *Deiter v. Microsoft Corp*., 436 F.3d 461, 466-67 (4th Cir. 2006); *Jackson*, 2024 WL 556230, at *4. A class representative must "possess the same interest and suffer the same injury" as the class members. *Gen. Tel. Co.*, 457 U.S. at 156; *Soutter v. Equifax Info. Serv., LLC,* 498 Fed. Appx. 260 (4th Cir. 2012) (typicality "'goes to the heart of a representative[s] ability to represent a class.'"); *Deiter*, 436 F.3d at 467 (class certification will be denied when a variation in claims between the class representative and the putative class members "strikes at the heart of the respective causes of action"). The claims do not have to be factually or legally identical, but the class members' claims should be fairly encompassed by those of the class representative. *Broussard v. Meineke Disc. Muffler*

*Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). "[T]he fact that the named plaintiffs have the same general complaint against the defendant does not render their claims typical." *Waters v. Electrolux Home Prod.*, Inc., No. 5:13CV151, 2016 WL 3926431, at *5 (N.D.W. Va. July 18, 2016).

The presence of individualized issues makes it difficult for a class representative to demonstrate typicality. *Electrolux*, 2016 WL 3926431 at * 5 ("The named plaintiffs are not typical of the proposed classes "because the proposed class members' substantive claims depend on individual permutations .... Each plaintiff must individually prove that he or she experienced personal injuries and/or property damage which was proximately caused by the use of the defendant's products."). In this action, Plaintiffs allege that Defendants' "misconduct is staggering in scope" and have "failed to disclose and have intentionally concealed *thousands of material and substantial facts that relate to grave sites at York Memorial Cemetery*." SAC at ¶ 47 (emphasis added). Then, they allege at least 36 different ways in which Defendants wronged the Plaintiffs and other class members. However, none of the named Plaintiffs was the alleged victim of all of this misconduct nor have Plaintiffs alleged that at least one of them suffered each of the alleged wrongs. Thus, while a few of the Plaintiffs allege they have been personally injured in a few of the ways in which Defendants allegedly hurt class members, the Court cannot conclude that Plaintiffs' claims are "typical" of the broadly alleged claims of the proposed classes sufficiently to find that Plaintiffs have satisfied the requirement of "typicality."[7]

---

[7] For example, Plaintiff, Simpson is not even a member of any class he seeks to represent. He does not allege that he purchased interment rights, entered into any agreement authorizing members of his family to be interred or that he is an "authorized representative" or "next of kin" of his "cousins, aunts, uncles and several other family members" buried at the Cemetery. Simpson also does not specifically allege that he was injured in any of the multitude of ways he claims the class members were injured.

13

### e) Adequacy of Class Representatives

The final requirement of Rule 23(a) is that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Primarily, the adequacy inquiry under Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019) (quoting *Amchem*, 521 U.S. at 625). For a conflict of interest to defeat adequacy, the "conflict must be fundamental." *Id.* Such a conflict does not exist where the class members "share common objectives and the same factual and legal positions" and have "the same interest in establishing the liability" of the defendants. *Id.* The adequacy requirement also requires a finding of "class counsel's competency" to represent the class. *1988 Tr. for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 524 (4th Cir. 2022). "In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *Hewlett v. Premier Salons Int'l Inc.*, 185 F.R.D. 211, 218 (D. Md. 1997).

Here, while the Court finds that Plaintiffs' allegations are not sufficiently "typical" of the classes they seek to represent, Plaintiffs' interests do not appear to be in conflict with other putative class members. Also, the Court finds that class counsel has (and would continue to) competently represent the class. Therefore, the Court concludes that, if the other Rule 23(a) requirements were satisfied (which they are not) then Plaintiffs could fairly and adequately represent the proposed classes.

---

## 2. Rule 23(b) Class Actions

Even though Plaintiffs have failed to meet all the Rule 23(a) prerequisites for class certification, which alone requires the Court to decline to certify a class, the Court will also address Plaintiffs' Rule 23(b) arguments. Plaintiffs seek to pursue a class action under both Rule 23(b)(1)(A) and 23(b)(3). The Court finds that it would be inappropriate to certify a class under either rule.

### a) 23(b)(1)(A) – Risk of Incompatible Standards of Conduct

Plaintiffs seek certification under Rule 23(b)(1)(A). "In essence, Rule 23(b)(1)(A) considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *See Tatum v. R.J. Reynolds Tobacco Co*., 254 F.R.D. 59, 66 (M.D.N.C. 2008). However, beyond arguing that the same contracts apply to all of the Cemetery's gravesites and that Defendants are subject to the same standard of care as cemetery owners (which would of course be true for all cemetery owners or those who are subject to any generally applicable statute), Plaintiffs do not articulate how Defendants would be held to "incompatible standards of conduct" if, in individual actions, some class members proved a breach of contract, statutory violation or common law wrong and others did not. *See* Newberg at § 4.1. (Noting that 23(b)(1) class actions generally do not cover situations in which multiple plaintiffs sue a single defendant for money damages with some plaintiffs prevailing and some losing because the fact that the defendant must pay some claimants but not others does not create the danger at which the Rule is aimed). Indeed, Defendants argue that instead of prejudicing the Defendants, individual actions will allow them to assert individual defenses and that different results as to different class members in individual actions would not necessarily lead to confusion concerning how the Defendants were required to

operate the Cemetery. Accordingly, Plaintiffs cannot properly maintain a Rule 23(b)(1) class action.

**b)      23(b)(3) – Action for Money Damages**

Plaintiffs also seek certification of a class under Rule 23(b)(3). In addition to establishing the requirements of Rule 23(a) have been met, to obtain certification under 23(b)(3) Plaintiffs bear the burden of  showing both that "(1) questions of law and fact common to class members predominate over any questions affecting only individual class members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because the Court finds that the class action proposed by Plaintiffs fails both the prongs of "predominance"  and  "superiority" it will decline to certify a class under Rule 23(b)(3).

First, questions affecting individual class members rather than common questions predominate.  The predominance element tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Predominance fails where resolution of the purported liability to each class member turns on individualized circumstances. *See Lienhart*, 255 F.3d at 149; *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 254 F.R.D. 68, 75 (E.D.N.C. 2008) (no predominance where causation and affirmative defenses would "dominate most every class member's case"). As explained above, while there are some common issues, the need to consider and resolve claims on an individual basis pervades Plaintiffs' claims. The Court will need to determine, for each proposed class member, 1) their relationship with the person buried at the Cemetery; 2) if, how and when[8] Defendants allegedly breached a contract,

---

[8] Defendants have raised numerous defenses related to the statute of repose and statutes of limitations, which would need to be resolved for each class member (particularly as the proposed

16

"desecrated" their buried relative's grave or otherwise harmed the class member; 3) the nature and amount of damages they claim to have suffered; and 4) particularized evidence supporting any claim of reliance on misrepresentations. In other words, even though Defendants may have acted in similarly wrongful ways with respect to many people (and indeed there may well be little dispute that much of the conduct alleged, if it occurred, was wrongful), to determine if any specific class member is entitled to relief (and how much) will require the Court to determine if the wrongful conduct actually happened to their loved one, which would involve the resolution of numerous questions based on a particular grave, etc. Therefore, Plaintiffs cannot satisfy the "predominance" element of a Rule 23(b)(3) class action.

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." In evaluating the superiority of a class action, a court should "compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267, 274 (4th Cir. 2010). Rule 23(b)(3)(A)-(D) sets forth a non-exhaustive list of factors for the Court to consider, including the interests of class members to bring individual claims, the extent to which any such cases have already been filed, the desirability of litigating all the claims in a single forum and the difficulties in manageability of the case.

---

classes begin in 1969 and continue to the present). More generally, notwithstanding evidence of wrongful conduct generally, a class seeking individual monetary damages "cannot be certified ... [if a defendant] will not be entitled to litigate its statutory defenses to individual claims," *Dukes*, 564 U.S. at 367.

Those factors weigh against a finding that a class action would be "superior." In making their allegations, Plaintiffs emphasize the personal and emotional nature of their claims. The Court readily accepts that claims related to the final resting place of a loved one is deeply personal, but this supports a conclusion that each individual may well have an interest in controlling their separate claim. *See Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 678 (D.N.M. 2019) ("The proposed class members' emotional connection to the case may also be relevant: the stronger the attachment, the more reticent the court should be to certify the case."). Next, as noted above, another case asserting nearly identical claims against the same defendants on behalf of five plaintiffs (who are represented by the same counsel as Plaintiffs here) was filed on the same day in the same state court. And, with respect to the third factor, although there would be a benefit in similar claims being resolved in the same forum, it appears that would happen regardless of class certification because individual actions would likely be filed in the same state court that the prior actions involving the Cemetery have been filed.

Finally, for all the reasons discussed above, the prevalence of individual issues, which may even necessitate "mini-trials" or separate adjudications (not to mention the difficulties in determining information related to individual graves), suggests that class litigation would be exceedingly hard to manage. *See Farrar*, 254 F.R.D. at 74, n.4 ("difficulties in managing a class action in which the court would need to address individual issues over and over again would far outweigh any marginal increase in judicial efficiency that might result from class certification."); *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 345 (W.D.N.C. 2020) (concluding that class action was "not a superior framework in which to adjudicate Plaintiffs' money damages claims because of the Defendants' intention to seek an individualized assessment of the right to recover such damages"); *Gresser v. Wells Fargo Bank, N.A.*, No. 12- 987, 2014 WL 1320092, *9

(D. Md. March 31, 2014) (individualized inquiries necessary to resolve class members' claims rendered class "unmanageable."). In sum, the Court finds that a class action under these circumstances would not be "superior" to individual actions.

### B.     Remand of Motions to Dismiss to State Court

As already noted several times, this is an intensely local dispute in which numerous claims are alleged involving North Carolina common law, statutes and public policy. The sole grounds for federal jurisdiction is CAFA, 28 U.S.C. § 1332(d)(2), which gives this Court original jurisdiction over any class action in which the matter in controversy exceeds $5,000,000 and there is "minimal diversity" (any member of a plaintiff class is a citizen of a state different from any defendant). Having now made a final determination that this matter cannot proceed as a class action, jurisdiction cannot be maintained under Section 1332(d). Therefore, the Court must decide whether it will continue to exercise jurisdiction over Plaintiffs' state court claims or remand the action to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded."). Indeed, Defendants acknowledged at oral argument that if no class was certified then the Court had the discretion to send the case back to state court (although, of course, indicating their preference for the Court retaining jurisdiction just long enough to dismiss Plaintiffs' claims). *See* Doc. No. 69 at 69. Because the basis for federal jurisdiction doesn't exist, and the merits of this matter should be resolved in the state courts which are already well acquainted with the very serious allegations underlying this dispute, the Court will remand this matter to the Superior Court for Mecklenburg County, North Carolina.

19

The Fourth Circuit has not decided the questions of whether Article III permits jurisdiction to be conferred on a federal court when an action is merely alleged to fall within CAFA jurisdiction, but has been held not actually to do so. Or, put somewhat differently, *must*[9] a district court, on finding that a case cannot proceed as a class action, still adjudicate state law claims rather than remand them to state court.

A number of district courts have concluded that a determination that a class cannot be certified defeats subject matter jurisdiction under CAFA. *See Rovinelli*, 2021 WL 752822, at *13–16; *Avritt* v. *Reliastar Life Ins. Co.*, No. 07-cv-1817 (JNE/JJG), 2009 WL 1703224, at *1–2 (D. Minn. June 18, 2009); *Muehlbauer* v. *Gen. Motors Corp.*, No. 05 C 2676, 2009 WL 874511, at *9 (N.D. Ill. Mar. 31, 2009); *Salazar* v. *Avis Budget Grp., Inc.*, No. 07-cv-0064-IEG (WMC), 2008 WL 5054108, at *5–6 (S.D. Cal. Nov. 20, 2008); *Jones* v. *Jeld-Wen, Inc.*, No. 07-22328-CIV, 2008 WL 4541016, at *3 (S.D. Fla. Oct. 2, 2008); *Falcon* v. *Philips Elecs. N. Am. Corp.*, 489 F. Supp. 2d 367, 368 (S.D.N.Y. 2007). These courts ground their decisions on the plain language of the statute (CAFA provides original jurisdiction in 28 U.S.C. § 1332(d)(8) "to any class action before or after the entry of a class certification order by the court with respect to that action"), the limited jurisdiction of the federal courts, and a conclusion that "where there is no reasonably foreseeable possibility that the plaintiffs could propose a satisfactory class in the future, there is not and never was CAFA jurisdiction." *See Rovinelli*, 2021 WL 752822 at *16; *Falcon*, 489 F. Supp. 2d at 368 (finding that CAFA jurisdiction is terminated if class certification is denied on a

---

[9] It is clear that district courts can generally retain jurisdiction over state-law claims with minimally diverse parties when the class-action component of the complaint is dismissed after the case is removed to federal court. *See Rovinelli v. Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at *13–16 (D. Mass. Feb. 2, 2021) (collecting cases at n.11).

"basis that precludes even the reasonably foreseeable possibility of subsequent class certification"); *Avritt*, 2009 WL 1703224, at *2 (concluding that, "when class certification has been denied and there is no reasonably foreseeable possibility that a class could ever be certified, jurisdiction under CAFA does not exist").

The Court agrees with these decisions. Where, as here, a class action is merely alleged but will never be certified because of fundamental impediments then the Court's subject matter jurisdiction ought not continue after a final resolution of the question of class certification. Otherwise, actions could be removed and maintained in federal court with no basis other than inadequate allegations of a putative class. *See, e.g.*, *F5 Capital* v. *Pappas*, 856 F.3d 61, 77 n.14 (2d Cir. 2017) ("We do not suggest that any class action pleading – even one lacking a good faith basis in law and fact – can support the continued exercise of CAFA jurisdiction."); *Metz* v. *Unizan Bank*, 649 F.3d 492, 501 n. 4 (6th Cir. 2011) ("Of course, if the jurisdictional allegations are frivolous or defective from the outset, then jurisdiction never existed in the first place, regardless of the plaintiff's invocation of a class action under CAFA."); *Rovinelli*, 2021 WL 752822, at *16.

Moreover, the specific circumstances of this case strongly counsel in favor of remand. Again, this is a matter of particularly local concern involving serious allegations of wrongdoing, governed by state law and alleged state public policy, and similar cases involving the Cemetery are pending and have already been decided in North Carolina's courts. Therefore, the Court will remand this action to state court for further proceedings. With respect to the pending motions to dismiss, the Court will not reach (or express any view on) their merits and deny them as moot. Without federal class action status, there can be no justification for the exercise of further jurisdiction, especially in ruling on whether Plaintiffs' claims should be dismissed or allowed to proceed.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiffs' Motion to Certify Class (Doc. No. 30) is **DENIED;**

2. Defendants' Motions to Dismiss (Doc. Nos. 29, 32) are **DENIED** as moot; and

3. The Clerk is directed to **REMAND** this action to the Superior Court for Mecklenburg County, North Carolina and thereafter close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 28, 2024

Kenneth D. Bell
United States District Judge

22